## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| EDDIE J. HAYNES, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | )CASE NO. 2:06-cv-1093-WKW |
| | ) |
| CITY OF MONTGOMERY, ALABAMA, | ) |
| | ) |
| DEFENDANT. | ) |

## PLAINTIFF'S EXPERT WITNESS DISCLOSURE

Comes now the Plaintiff, Eddie J. Haynes, pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure and Section 8 of the Uniform Scheduling Order entered in this case, and discloses to Defendant to the identities of the following persons whom the Plaintiff may use at trial to present evidence under Rules 702, 703, and 705 of the Federal Rules of Evidence:

1.  Mary House Kessler, Ph.D.
    2610 19th Street South, Homewood, Alabama 35209
    Dr. Kessler is a vocational specialist who has been retained to provide expert testimony in this case. Her written report, prepared and signed by her, containing the information required by Rule 26(a)(2), is attached as Exhibit A.

2.  Dr. Michael Turner
    1600 Forrest Avenue, Montgomery, Alabama 36106
    Dr. Turner has not been retained or specially employed by the Plaintiff to provide expert testimony in this case, so no report is required from Dr. Turner. Dr. Turner is expected to testify in person or by deposition. His deposition has been taken and a transcript of that deposition is available to the Defendant.

3.    Clemmie Palmer, III, MD
      3090 Woodley Road, Suite A, Montgomery, Alabama 36116
      Dr. Palmer is a treating physician of the Plaintiff and has not been retained or
      specially employed to provide expert testimony in this case and, therefore, no
      report is required from Dr. Palmer. Dr. Palmer is expected to testify in
      person or by deposition.

4.    Dr. Thomas Wells
      4294 Lomac Street, Montgomery, Alabama 36106
      Dr. Wells is a treating physician of the Plaintiff and has not been retained or
      specially employed to provide expert testimony in this case and, therefore, no
      report is required from Dr. Wells. Dr. Wells is expected to testify in person
      or by deposition.

5.    Dr. Teresa I. Brown
      348 St. Luke's Drive, Montgomery, Alabama 36117
      Dr. Brown is a treating physician of the Plaintiff and has not been retained or
      specially employed to provide expert testimony in this case and, therefore, no
      report is required from Dr. Brown. Dr. Brown is expected to testify in person
      or by deposition.

/s/ Gerald L. Miller
GERALD L. MILLER (MIL039)
Attorney for Plaintiff

**OF COUNSEL:**
REDDEN, MILLS & CLARK, LLP
505 North 20th Street
940 Financial Center
Birmingham, Alabama 35203
(205) 322-0457

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of October, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Allison H.  Highley
Kimberly O.  Fehl
Assistant City Attorney
City of Montgomery
P.O. Box 1111
Montgomery, Alabama 36101-1111


/s/ Gerald L.  Miller
OF COUNSEL

-3-

MARY HOUSE KESSLER, Ph. D.
Licensed Professional Counselor
Certified Life Care Planner

2610 19th Street South
Homewood, AL 35209
(205) 870-3701
Fax: 879-1658

**HAYNES, EDDIE J.**
**PAGE 1**

DATE:       October 08, 2007

DOE:        September 11, 2007

Mr. Eddie J. Haynes was referred to Mary House Kessler, Ph.D. by Mr. Gerald
L. Miller, of Redden, Mills and Clark, for a Vocational Evaluation. Mr. Miller
requested that I address Mr. Haynes' perceived disability and his ability to
perform his former job as a firefighter.

Mr. Haynes was early for his appointment on September 11, 2007. He was
cooperative throughout the ninety-minute interview.

Mr. Haynes, who is a thirty-seven-year-old man, began taking medication for
his anxiety in 2002. On January 28, 2003, Dr. Clemmie Palmer, III, stated that
Mr. Haynes was able to work on his current medication and was to take his
medication as prescribed. Dr. Palmer said that Mr. Haynes had not had any
side effects from his medications and had no work restrictions. He said that
Mr. Haynes had been his patient since November 14, 2002, and had been stable
on the medication and working full-time without difficulty. On September 13,
2004, Mr. Haynes had a knee injury and was placed on light duty until
December 3, 2004, when he was placed at maximum medical improvement by
Dr. Wells. In a letter of March 4, 2005, Dr. Palmer once again stated that Mr.
Haynes was able to work on his medications, had not experienced side effects,
and was working under no restrictions. He said that Mr. Haynes was able to
perform his duties and was able to work full-time without difficulty. On March
31, 2005, Dr. Michael Turner released Mr. Haynes as physically fit to return
to duty. In his statement, the concerns he apparently had stemmed from the
medications that Mr. Haynes was taking for anxiety and joint pain. Although

*Exhibit A*

**HAYNES, EDDIE J.**
**PAGE 2**

Mr. Haynes had explained that he did not take any medication except Lexapro
while on duty, Dr. Turner said that Mr. Haynes's logic made no sense to him.
He said that the effects from the medications could carry over into Mr. Haynes'
work and that a drug screen performed would "most likely be positive even
when on duty." A hair analysis drug test was performed on Mr. Haynes on
March 31, 2005, which was negative for all drugs, according to the report. On
April 5, 2005, Dr. Turner determined that the drug screen had been negative.
On April 14, 2005, Dr. Palmer once again stated that Mr. Haynes was able to
work without taking the Valium or Gabitril and could perform his duties in the
current capacity without restrictions.

In his deposition of September 25, 2007, Dr. Turner said that when he
examined Mr. Haynes on March 31, 2005, his physical examination had been
within normal limits and there were no physical limitations at that time. He
stated that he could not release Mr. Haynes to return to his job as a firefighter.
He stated that his concerns about Mr. Haynes, at that time, came from possible
side effects from his medications. He described the side effects to include
increased sweating and dehydration; dizziness; sleepiness or drowsiness; and
disorientation. He also stated that he would not have cleared Mr. Haynes to
drive any type of equipment while taking his medications. Further, he said that
he had concerns about Mr. Haynes working on the fire line while taking the
medications because of the drowsiness, dizziness, sleepiness, and heat-stress
related issues. He stated that his concerns about Mr. Haynes working on the
fire line were because it was a very strenuous job, both physically and
mentally. However, he stated that he could not answer a question regarding
whether Mr. Haynes could perform any type of strenuous job.

Mr. Haynes stated in his interview that he had been taking medication for his
anxiety since 2002. He reported that he was on light duty for his knee pain for
approximately three or four weeks, but his injury had healed and he had been
released to return to full duty as far as his knee injury was concerned.
However, he stated that he was not allowed to return to work unless he was off
of all of his medication for his anxiety.

**HAYNES, EDDIE J.**
**PAGE 3**

At the time of the interview, Mr. Haynes was working for the Jackson Hospital as a security guard. He monitored detectors and checked for weapons as people came into the hospital. He was required to watch hospital monitors and to make rounds. He said that he occasionally had to lift patients and was performing heavy work there.

Concurrent with his work at Jackson Hospital, Mr. Haynes stated that he was working for the Victory Land Dog Track as a security guard approximately fifteen hours a week. Previously, he worked as a security guard at the Senate Building for a year. He also worked for the History and Archives Building in security for three or four months before being transferred to the senate building. He helped build houses for individuals at times after leaving the fire department.

Mr. Haynes worked for the Montgomery Fire Department for fifteen years as a firefighter and first responder. He responded to medic runs, car accidents, gunshot wounds, and all types of medical calls as well as all firefighting calls. He drove the fire truck and never had any accidents. Apparently, no disciplinary actions were ever taken against him in his work. He was responsible for assisting in yard work, cleaning the fire department, and participating in monthly inspections and continuing education. He said that he was required to lift and carry a dummy weighing more than a hundred pounds, climb stairs with it, and perform other tasks in the exercises. He reportedly always passed his exercises and evaluations without difficulty.

The only other type of work that Mr. Haynes reported was that of working in fast food and bagging groceries.

Mr. Haynes continued to have negative drug tests. His psychiatrist reportedly wrote letters indicating that Mr. Haynes was able to work at full duty without restrictions and without difficulty. On February 10, 2005, Mr. Hackett, Captain of the fire department, stated that Mr. Haynes had done a good job that

Case 2:06-cv-01093-WKW-WC     Document 14-2     Filed 10/08/2007     Page 4 of 19

**HAYNES, EDDIE J.**
**PAGE 4**

trimester, worked well with others, and was a good team member. He said that Mr. Haynes' experience was demonstrated on and off the fire scene. On February 24, 2005, Mr. Hackett stated in a letter to Mr. Stoudenmier, District Chief, that firefighter Haynes was alert and did all that he was asked to do around the station. However, Chief Hackett stated that he did not feel confident in Mr. Haynes' mental status when driving the fire engine. He said that Mr. Haynes was overly cautious while driving and his concern could cause a "possible problem in the future."

Dr. Palmer, the psychiatrist treating Mr. Haynes, and the psychiatrist who prescribed his medications, has stated several times that Mr. Haynes has no work restrictions and could preform his duties as a firefighter. However, Dr. Turner has reported that although Mr. Haynes was physically fit to return to duty, there were concerns regarding the medications he was taking for anxiety and joint pain. Dr. Turner stated that there were safety issues for Mr. Haynes driving the fire truck and working on the fire line, even though Mr. Haynes had reported that he did not take these medications while on duty. Further, it is my understanding that Mr. Haynes was not allowed to return to his former job of firefighter without a complete release from Dr. Turner.

Mr. Haynes is presently performing work which requires him to work under hazardous conditions as a security officer. He stated that he has had no problems in his work in security, nor did I see any indication that he had encountered any problems in performing his job of firefighter or as a fire truck driver. With his education, experience and training, he has access to approximately four hundred and four thousand, three hundred and sixty two (404,362) jobs within the State of Alabama. Of those jobs, 183,083 jobs require Mr. Haynes to work with exposure to hazardous conditions, operating machinery, hazardous equipment, and/or unprotected heights. The perception of Mr. Haynes' inability to perform work in which he is exposed to work with these conditions restricts him from a broad range of jobs. If Mr. Haynes is perceived as unable to perform hazardous work, he loses access to

**HAYNES, EDDIE J.**
**PAGE 5**


approximately one hundred and eighty-two thousand, eight hundred and fifty-three (182,853) jobs within the State of Alabama. Many of the jobs within the state which Mr. Haynes has been perceived as unable to perform require the same or similar training, education, and experience as his previous work. Representative classes and numbers of the jobs in the state requiring the same or similar training, education, and experience are as follows:

| | |
|---|---|
| law enforcement workers | 4,368 |
| police officers | 8,417 |
| security guards | 10,152 |
| emergency medical techs/paramedics | 1,962 |
| firefighters | 4,776 |

Although Mr. Haynes was perceived as having a disability that precluded him from the classes and ranges of jobs noted, he continues to work in jobs requiring him to be exposed to hazardous conditions. Therefore, the perception of his inability to perform work which exposes him to these conditions, such as driving vehicles and working on the fire lines has precluded him from being able to perform his career which he performed for fifteen (15) years before being denied the opportunity to return to the work he had performed taking the same or similar medications since 1992.

The following data was considered in performing my opinions regarding Mr. Eddie J. Haynes:

information gathered from the 9/11/07 interview with Mr. Haynes;
return-to-work certificates from Dr. Turner;
office notes from Dr. Turner from 2004 through 2006;
letters from Dr. Palmer from 2003 through 2005;
drug testing results on Mr. Haynes from 2002 through 2005;
an MRI from Dr. Hahn taken 11/23/04;
a letter from Mr. Haynes written 03/04/05;

**HAYNES, EDDIE J.**
**PAGE 6**

> a Commendation Record by Capt Hackett regarding Mr. Haynes;
> a letter from Capt. Hackett to District Chief Stoudenmier of 02/24/05;
> letters to Mr. Haynes from the Montgomery Fire & Rescue Dept. written
> in May and June of 2006;
> information from The Dictionary of Occupational Titles, U.S. Dept. Of
> Labor, 1991;
> job data for the State of Alabama from the computer program OASYS;
> job data from the Occupational Employment Quarterly, compiled by
> U.S. Publishing;
> job information from The Classification of Jobs 2000, published by
> Elliott & Fitzpatrick, Inc., 1999.

A copy of my vitae is attached, which gives a listing of publications which I
have authored within the last ten (10) years. A copy of the bill for this
evaluation is also attached, as well as my fee schedule for any future work I
might perform on this case. In addition, I have attached a listing of the cases
in which I have testified at trial or by deposition within the preceding four
years.

*Mary House Kessler, Ph.D.*

Mary House Kessler, Ph.D.
Vocational Specialist

MHK/bcs

As of January 1, 2002, the following fee schedule is in effect for services
of Mary House Kessler, Ph.D.

| | |
|---|---|
| Complete vocational analysis (includes a vocational disability rating) | $895.00 |
| Regular fee (hourly) | $125.00 |
| Time in depositions and trials (hourly or for any part of an hour) | $200.00 |
| Mileage (per mile) | $ .75 |
| Copies (per page) | $ .60 |

MARY HOUSE KESSLER, Ph. D.
Licensed Professional Counselor
Certified Life Care Planner

VITAE

2610 19th Street South
Homewood, AL 35209
(205) 870-3701
Fax: 879-1658

| | | |
|---|---|---|
| EDUCATION: | Ph.D.: | University of South Carolina, 1978 |
| | Major: | Counselor Education with emphasis in Rehabilitation Counseling |
| | Cognate: | Special Education |
| | | |
| | M.Ed.: | University of South Carolina, 1974 |
| | Major: | Counselor Education |
| | | |
| | B. A.: | St. Andrews Presbyterian College, 1967 |
| | Major: | Psychology |

Completed 140 hours of post-graduate training in Life Care Planning through the University of Florida and Intellicus, 1993-1995

WORK EXPERIENCE:

Vocational Expert for Social Security Administration, Bureau of Hearings and Appeals, April 1980 to June 1983 and July 2004 to present. Duties include: knowledge of current jobs in state; job analysis; and federal hearing testimony as a vocational expert.

Licensed Professional Counselor with emphasis in brief therapy, August 1997 to present. Includes counseling for situational changes and creating options.

Vocational Specialist and Life Care Planner, Private Practice, February 1985 to present. Services include: complete vocational analysis (with a vocational disability rating, if desired); life care plans for individuals with catastrophic injuries; consultation with attorneys and insurance adjusters; personal counseling; report writing; depositions; and court testimony when required.

Rehabilitation Specialist, C.A.R.E. Clinic, Lakeshore Rehabilitation Hospital, September 1983 to February 1985. Duties included: coordination of complete medical and vocational evaluation of clients at Lakeshore Hospital; writing and submitting the evaluation report; and court testimony when required.

Mary House Kessler, Ph.D.
Page Two

**WORK EXPERIENCE:**
(Continued)

Coordinator of Research and Materials Development, School
Advisory Council Assistance Project, University of South
Carolina, September 1980 to May 1983. Responsibilities
included: developing and submitting training and research
grants; planning and implementing research projects;
statewide consultation with school administrators, teachers,
and parents; coordinating and managing professional
publication activities; designing instruments and tabulating
results of evaluation of all project training; conducting
training statewide; attending professional meetings; and
editing the School Advisory Council News.

Adjunct Instructor, College of Education, University of South
Carolina, 1977 to 1980-81. Courses taught included:
Introduction to Rehabilitation Counseling; Communication
Skills; Introduction to Educational Psychology; and
Educational Measurement.

Coordinator, Pacific Rehabilitation Continuing Education
Program, January 1979 to February 1980. Responsibilities
included: development of long-term training grant for the
Department of Vocational Rehabilitation in Hawaii, Guam
and Trust Territory of the Pacific; direction and management
of the program; assessing rehabilitation continuing education
needs; developing, administering, and evaluating the program;
planning and implementing the development of the Resource
Lab for rehabilitation services; and supervising the program
personnel.

Instructor, Department of Education, University of South
Carolina, September 1978 to December 1978. Worked with
the Assistant Dean of Academic Affairs, Dr. John Dolly.
Responsibilities included: scheduling for the College of
Education; assistance with research grant development;
development and implementation of College of Education
participating in university-wide activities; and faculty meeting
attendance.

Mary House Kessler. Ph.D.
Page Three

**WORK EXPERIENCE:**
(Continued)

Graduate Assistant. University of South Carolina, 1977 to 1978. Responsibilities included: assistance with education and training in the Rehabilitation Service Work Evaluation Laboratory; compiling and giving presentations on work evaluation to classes in the College of Education; and establishing a library of available materials on work evaluation and adjustment.

Vocational Rehabilitation Counselor, South Carolina Department of Vocational Rehabilitation, Columbia, South Carolina, October 1968 to January 1977. Responsibilities included: vocational and personal rehabilitation counseling; writing plans for clients' rehabilitation process; vocational surveys; job placement; follow-up; and attending both hospital and vocational rehabilitation treatment teams and staff meetings.

Vocational Rehabilitation Evaluator, South Carolina Department of Vocational Rehabilitation, Columbia, South Carolina, September 1967 to September 1968. Duties included: group and individual vocational and psychological testing; writing work evaluation reports; and attending vocational rehabilitation staff meetings.

**PUBLICATIONS:**

Kessler, Mary S. Anxiety and the work-handicapped individual's pursuit of work. Carolina Counselor. Columbia, SC: University of South Carolina, 1978.

Kessler, Mary S. and Milligan W. Lloyd. Effect of age and disability-onset on self-esteem and anxiety in wheelchair-bound individuals. Rehabilitation Psychology, 1979, 26 (3) 105-112.

Kessler, Mary House and McClam, Tricia. High anxiety, low self-esteem; Some techniques for helping. Education Unlimited, 1981, 3 (4), 17 - 18.

Mary House Kessler, Ph.D.
Page Four

PUBLICATIONS:
(Continued)

McClam, Tricia and Kessler, Mary House. Human services programs: A look at graduates. Journal of College Placement, 1982, 62 (2), 44 - 46.

Jackson, Mary C. and Kessler, Mary House. School Advisory Councils: A bridge between school and community. Journal of Educational Communication, 1983, 6 (2), 18 - 19.

Jackson, Mary C. and Kessler, Mary House. Citizen participation in education. In G. Miller and G. Nemeth (Eds.) A Consumer's Guide to the Public Schools. Springfield, IL: Charles C. Thomas, 1983.

Kessler, Mary House (Ed.) School Advisory Council News. Published five times yearly, 1981 - 1983.

McClam, Tricia and Kessler, Mary House. Relationship between anxiety and attitudes toward disabled persons. Human Service Education, 1987, 8 (2), 37 - 43.

Kessler, Mary House. (1993, April). Physical impairment. Benefits Bugle: Alabama State Bar Workers' Compensation Law Section Newsletter. 2, 1. p.1.

Kessler, Mary House. Diversifying Rehabilitation Services. The Rehabilitation Professional, 1995, 3 (4), 8 and 23.

Kessler, Mary House. (1996, September). Credential for Vocational Experts. Benefits Bugle: Alabama State Bar Workers' Compensation Law Section Newsletter. 6,1. p. 2 & 3.

LICENSES AND
CERTIFICATIONS:

Became Licensed Professional Counselor in the State of Alabama in 1983. Licensed by the Alabama Board of Examiners in Counseling. #433

Mary House Kessler, Ph.D.
Page Five

**LICENSES AND**
**CERTIFICATIONS:**
(Continued)

Became Certified Rehabilitation Counselor in 1975/84.
Certified by the National Commission on Rehabilitation
Counselor Certification. #18071

Became Certified Disability Management Specialist in 1985.
Certified by the National Disability Management Specialists
Commission. #01727

Became Certified Life Care Planner in 1996. Certified by the
Commission on Health Care Certification. #0053

Became Certified Practitioner of Neuro-Linguistic
Programming in 2001. Certified by the American Board of
Neuro-Linguistic Programming.

Became certified in Clinical Hypnosis in 2006. Certified by
the American Society of Clinical Hypnosis. #R9270

**PROFESSIONAL**
**ORGANIZATIONS:**

Member of: National Rehabilitation Association, Alabama
Rehabilitation Association, Workers' Compensation Claims
Association of Alabama, Amputee Coalition of America,
International Association of Rehabilitation Professional,
Alabama Association of Rehabilitation Professionals,
International Association for Regression Research and
Therapies, and American Society of Clinical Hypnosis.

**COMMITTEE**
**SERVICES:**

Served as Vice President of AARPPS in 1985. In this
position I was responsible for coordinating our monthly
meetings and speakers.

Served as chairperson of the Ethics and Standards Committee
of AARPPS, 1983 to 1988. During that time, I helped to
formulate the procedures to be used by the organization in the
event of ethical charges.

Mary House Kessler, Ph.D.
Page Six

COMMITTEE
SERVICE:
(Continued):

Served as chairperson of AARPPS Research and Training Committee in 1991 and 1992. In this capacity, I coordinated our annual seminar.

Served as Co-chairperson of AARPPS Fund Raising Committee in 1996.

Served as member of the Scholarship Committee for Kids' Chance from 1993 to 2005.

PRESENTATIONS:

Have made presentations about vocational rehabilitation to the following: UAB graduate-level Introduction to Rehabilitation class, 1985; Rives and Peterson Law Firm, 1987; Underwriters Adjusting Company Seminar for Claims Representatives, 1987; Bessemer Bar Association Seminar, 1988; Alabama Hospital Association Fund Workers' Compensation in Alabama Seminar, 1990; Alabama Bar Institute's Arguing Damages Seminar, 1992; three seminars give by Alabama Department of Industrial Relations, 1995; Life Care Planning Conference, 1996; Workers' Compensation for the General Practitioner, 1997, 1998 and 1999; the Vocational Evaluation and Counseling Seminar of NARPPS, 1997; and AARPPS, 1998; Case Management Society of America, 2005.

CONTINUING
EDUCATION:

Have attended programs and seminars for continuing education units each year. Some of the seminars include: Vocational Expertise/Labor Market Access and Wage Loss, 1985; An Integrated Approach to Rehabilitation of Industrially Injured Individuals - Hand Amputee and Back, 1985; Workers' Compensation in Alabama - Insurance, Rehabilitation and the Future, 1986; Life Care Planning for Catastrophic Injuries and Innovations in Private Practice, 1987; Labor Market Access Plus, 1989; Wage Loss, 1989; Advanced Life Care Planning for Traumatic Head Injury, 1989; Post-Traumatic Stress Disorder, 1990; Cumulative

Mary House Kessler, Ph.D.
Page Seven

CONTINUING
EDUCATION:
(Continued)

Trauma Disorders, 1991; Reflex Sympathetic Dystrophy, 1992; Managing Chronic Pain, 1993; The Use of Pump Implants and Stimulators for Chronic Pain, 1993; Ethics in Rehabilitation, 1995; Brief Counseling 1995; Rehabilitation Technology, 1996; Life Care Planning Conference, 1996 and 1997; Brief Therapy Training, 1997, 2000, and 2001; Regression Therapy Training, 1997 and 1999; Transformational Hypnotherapy Training, 1997; Death and Dying, 1999; Understanding Anger, 1999; Life Care Planning Seminars, 1996 through 2000; Issues in Chronic Opioid Therapy in the Pain Patient, 2001; Special Advanced Forensic Program, 2001; Stress and Disease, 2001; Advanced Neuro-Linguistic Programming, 2001; Hypnotherapy, 2001; Time Line Therapy, 2001; Ethics and the Therapeutic Relationship, 2001; Case Management and Rehabilitation Update, 2002; Reaching the Gold Standards in Pain Practice, 2002; Assessment and Management Issues in Chronic Pain, 2002; Pain Management in Primary Care Medicine, 2003; AARP Annual Seminar, 2004 - 2006; American Society of Clinical Hypnosis Training - Basic, Intermediate and Advanced, 2005 and 2006; Life Care Planning: Clinical Application Review, 2006; Hypnosis and the Medical Practice, 2006.

2007

## DEPOSITIONS

SHORNEL STRINGER*  
JOE BONE  
LEE GEORGE*  
MALLOY CHANDLER  
DIANE SMITH

Elizabeth French  
Randy Meyers  
Leah Taylor  
J. R. Parker  
Joseph Jackson

## TRIALS

CONWAY BROOKS*  
STAN BOWEN

James Walsh  
Howard Warren

*Life Care Plan

## 2006

<u>DEPOSITIONS</u>

| | |
|---|---|
| JAMES CRANFORD | Donald Rhea |
| SAM SWEET | Frank Burge |
| KYLE SPATES | Chris Cochran |
| LEE GEORGE* | Leah Taylor |
| DANIEL WILLIAMS | Frank Burge |
| RAY SHIVER | Frank Burge |
| DANNY CROCKER | Tucker Burge |
| PJ RUSSELL | Tucker Burge |
| GARY COSBY | Frank Burge |

<u>TRIALS</u>

| | |
|---|---|
| KENNETH OKOROSKI | Frank Burge |
| GARY GLASS | Frank Burge |
| WILLIAM GREESON | Frank Burge |
| JAMES BRYANT | Frank Burge |
| ARTHUR WARD | Richard Baker |
| DANIEL B. WILLIAMS | Frank Burge |
| LEE GEORGE* | Leah Taylor |

* Life Care Plan

TRIALS 2005

CLAIMANT:
JENEESIA WALKER
JOHN CARDWELL
RICHARD HARDY

REFERRAL SOURCE:
Josh Wright
Don Lang
Kendall Dunson

DEPOSITIONS 2005

CLAIMANT:
DAVID BARNES
STEVE LAMPLEY
RUSHIE HALL*
GEORGE BANKSTON
JENEESIA WALKER
GLENN TOLBERT*
NANCY HESTER
RENAE REYNOLDS*
PHILLIP VASCOCU
YVONNE GRAHAM*
WILLIE STABLER*
WILLIAM GIBBS*
JAMES BRYANT
LAUREEN HOBBS
DAVID JORDAN
LEE GEORGE*
ANTHONY SIMERI
WILLIAM GREESON

REFERRAL SOURCE:
Dykes Barber
Dykes Barber
Mike Bradley
Chris Keith
Josh Wright
Margie Alford
Howard Warren
Jeff Kirby
Mark Stephens
Dana Taunton
Leigh Forstman
Frank Hanson
Frank Burge
Kirk Davenport
Chris Keith
Jarrod Nichols
Tucker Burge
Frank Burge

*Life Care Plans

## 2004

**TRIALS**

| CLAIMANT | REFERRAL SOURCE |
| --- | --- |
| MARK FALUKNER | Clark Carpenter |
| JAMES MILAM | Robert C. King |
| DONALD MCINNISH | E. L. Brobston |
| DEBBIE ROBERSON | Carter Clay |
| ROBERT TANKSLEY | Marsh Acker |
| PATRICIA MCGUFFIE | Mike Bradley |

**DEPOSITIONS**

| CLAIMANT | REFERRAL SOURCE |
| --- | --- |
| CURTIS HEARD | Chad Godwin |
| DAVID KILGORE | Audrey Channell |
| ROCHELLE SPARKS | Julia Cochrun |
| GILMARA DESOUZA* | Dana Taunton |
| LAMAR WILKERSON | Rufus Smith |
| RICHARD HARDY | Kendall Dunson |
| HARRELL STIGALL | Frank Burge |
| PATRICIA GARRETT | Deb Mattison |
| LAWARRON PHILLIPS* | James A. Harris III |
| CORNELIUS HARRIS* | James A. Harris III |
| LASHUNDRA HARRIS * | James A. Harris III |
| LASHONE HARRIS* | James A. Harris III |
| RANDY O'NEAL | James Wettermark |
| RICKY MAZE | Mark Stephens |
| JOHN WHITE | John Wright |

*Life Care Plans

**2003**

## DEPOSITIONS

CLAIMANT                        REFERRAL SOURCE

COLEMAN, THOMAS            JOEL ALEXANDER
SEALE, TESSA                    PATRICK LAVETTE
SOLOMON, TERRY              DYKES BARBER
SARTINO, PETER                MARK STEPHENS
CROOK, BRENDA*              DAVID BYRNE
DAVIS, LOUISE*                DAVID BYRNE
JOHNSON, CURTIS*            DAVID BYRNE
REED, FLORA*                   DAVID BYRNE
THOMASON, JANNIE*         DAVID BYRNE
SMITH, JACOB*                  KIRK MCCOMBS
MEARS, MICHAEL              JOSEPH BUFFINGTON
OKELLO, BEATRICE           KAREN FARLEY
BLACKWELL, COREY*         TERRELL WYNN
FAULKNER, MARK             CLARK CARPENTER
SMITH, LORETTA*             CARTER CLAY
GRIFFIN, RICHARD           CHRIS KEITH
POORE, JULIE                    WILLIAM R. LEWIS
KEITH AUTRY                    TUCKER BURGE
CRUCE, JAMES                  DYKES BARBER
BOGAN, ARDEN                 TUCKER BURGE

## TRIALS
CLAIMANT                        REFERRAL SOURCE

REEDER, OTIS                    CHRIS KEITH
DRINGENBURG, CURT        JAMES WETTERMARK
SEAY, ROBERT                   MARK STEPHENS
DAVIS, BOBBY RAY            DONALD LANG
*Life Care Plans