**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

December 4, 2007

## NOTICE OF CORRECTION

**From:    Clerk's Office**

**Case Style: Eddie J. Haynes v. City of Montgomery, Alabama**
**Case Number: 2:06-cv-1093-WKW**

**Pleading : #16 - Memorandum In Support of Motion for Summary Judgment**

**Notice of Correction is being filed this date to advise that the referenced pleading was e-filed on 12/3/2007 with an improperly formatted pdf document attached.**

**The corrected pdf document is attached to this notice.**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EDDIE J. HAYNES, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CASE NO.  2:06cv1093-WKW |
| | ) | |
| | ) | |
| CITY OF MONTGOMERY, | ) | |
| ALABAMA | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR  SUMMARY JUDGMENT</u>

Defendant, City of Montgomery, submits this Memorandum of Law in Support of Summary Judgment with evidentiary submissions, and states unto the Court the following:

## I.

### PROCEDURAL BACKGROUND

Plaintiff, Eddie Haynes ("Haynes"), a former firefighter with the City of Montgomery ("the City") sued the City alleging that he was put on involuntary leave due to medications he was taking, required to undergo a medical examination, and ultimately terminated because he was disabled or considered or perceived to be disabled.

Haynes filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The first Charge of Discrimination was filed on May 9, 2005 alleging discrimination based on race, disability and retaliation and states the particulars as follows:

1

> *I was hired by the above-named employer on April 4, 1990, as a fire*
> *fighter.  Since January 29, 2003, and continuing I have been*
> *subjected to harassment and intimidation due to my being disabled.*
> *My employer has made an issue over the medication that I am*
> *required to take.  I have further been subjected to adverse conditions*
> *of employment because I complained about the unfair treatment of*
> *black employees.  On March 15, 2005, I was forced to take leave*
> *while an investigation is being conducted into my medication.*
>
> *I believe that I am being discriminated against because of my race,*
> *black, my disability and in retaliation for having opposed practices*
> *made unlawful under Title VII of the Civil Rights Act of 1964, as*
> *amended and the American with Disabilities Act of 1990.  White*
> *employees on medication are treated more favorably.*

*(DX 1, Charge of Discrimination No. 130 2005 04376).*

On August 8, 2006, Haynes filed an Amended Charge of Discrimination alleging

discrimination based on race, disability and retaliation and states the following:

> *1.   On May 9, 2005 I filed a Charge of Discrimination, Charge*
> *number 130-2005-04376, against the above employer.  This Charge*
> *is an amendment to, and supplements, that Charge.  I expressly*
> *reallege all allegations made in my previous charge dated May 9,*
> *2005.*
>
> *2.  Since the filing of my original Charge on May 9, 2005 I continued*
> *to be on involuntary leave from my employment until June 14, 2006,*
> *when the employer terminated my employment.*
>
> *3.    believe that I was subjected to discrimination, harassment,*
> *adverse conditions of employment, involuntary leave and termination*
> *in violation of the Americans with Disabilities Act of 1990 because*
> *the employer perceived or regarded me as being disabled.*

*(DX 2, Amended Charge of Discrimination No. 420 2006 04376).*

On November 8, 2006, the U.S. Department of Justice issued a Notice of Right to Sue Letter

on both charges.  *(DX 3, Notice of Rights to Sue, Charge No. 130 2005 04376 and DX 4, Notice of*

*Rights to Sue, Charge No. 420 2006 04376).*     Haynes filed this action on December 8, 2006,

pursuant to the Americans with Disabilities Act ("ADA").  *(Doc. 1).*

On January 2, 2007, the City filed an Answer with Affirmative Defenses *(Doc. 4).* The City contends that Haynes is not disabled nor was he considered and/or perceived to be disabled by anyone.  The City may require fitness for duty assessments to address specific job-related concerns that are consistent with business necessity to perform the duties of a firefighter.  The City also submits that Haynes voluntarily resigned and/or abandoned his job.

## II.

### NARRATIVE STATEMENT OF FACTS

Eddie Haynes was a firefighter assigned to Engine Company 14, a pumper truck, as a driver. *(DX 5, Jordan Affidavit).*   On February 24, 2005, Captain Hackett, in a memo to District Chief Stoudenmier, requested a shift change moving Haynes to "A" shift as an assistant driver rather than remain on "C" shift as the only driver. *(DX 5, Jordan Affidavit).*  Captain Hackett requested the change based on his concern that Haynes was extremely paranoid while driving Engine 14 and could possibly be impaired by the prescription drugs. *(DX 5, Jordan Affidavit).*  Hackett, in his memo, refers to being told that Haynes had in previous years requested to be relieved from driving the truck, but there was no such request in his file. *(DX 5, Jordan Affidavit).* However, there was a memo in administration, regarding a verbal statement made by Haynes to Lt. R. Johnson that he did not feel comfortable driving the truck. *(DX 5, Jordan Affidavit).*

On March 4, 2005, Haynes sent a memo to District Chief Stoudenmier requesting to be relieved as the primary driver of Engine 14. *(DX 5, Jordan Affidavit).*  Haynes said that he felt like he should inform Stoudenmier of all the prescription medications he was taking – a total of 9 different medications. *(DX 5, Jordan Affidavit).*  Haynes also provided a letter from his psychiatrist,

Dr. Clemmie Palmer, stating that Haynes had no work restrictions and should continue to perform his duties at his current capacity. *(DX 5, Jordan Affidavit).* In his letter, Dr. Palmer cited three medications: Lexapro, Valium and Gabitril. *(DX 5, Jordan Affidavit).*

Haynes' request to be relieved as a driver on Engine 14 and the letter from Dr. Palmer were submitted for review to his superior officers. *(DX 5, Jordan Affidavit).* Assistant Chief C. E. Walker ("Walker"), a black male, is the Assistant Chief of the Fire Suppression Division for the Montgomery Fire Department. *(DX 5, Jordan Affidavit).* M. Jordan ("Jordan"), a black male, was the Deputy Fire Chief for the Montgomery Fire Department and was responsible for handling personnel matters for the Fire Department. *(DX 5, Jordan Affidavit).* Jordan is currently the Fire Chief for the Montgomery Fire Department. *(DX 5, Jordan Affidavit).*

Walker and Jordan met with Haynes to discuss his medications, Haynes' request to be relieved from duty as a driver, and Dr. Palmer's position that Haynes had no work restrictions and should continue performing his duties at his current capacity. *(DX 5, Jordan Affidavit).* After discussing the issue with Haynes, Jordan and the City's risk manager decided that Haynes should go to City physician, Dr. Michael C. Turner, for a "Fit for Duty" assessment to determine the effects of the medications on Haynes as it applied to his job responsibilities as a firefighter and truck driver. *(DX 5, Jordan Affidavit).* Dr. Turner performs the fitness for duty assessments for all new hires and on current Fire Department employees as required by the National Fire Protection Association ("NFPA") standards. *(DX 5, Jordan Affidavit)*

Dr. Turner examined Haynes on March 31, 2005, and determined that Haynes was physically fit for duty. *(DX 6, Turner Depo. p.47, lines 1-23).* However, Dr. Turner's assessment indicated concern regarding safety issues for Haynes while under the influence of the multiple

prescriptions that he was taking. *(DX 6, Turner Depo.  p.47, lines 20-23)*.  More specifically, Dr. Turner stated in his evaluation dated March 31, 2005,   ". . . these medication effects could carry over to his on duty time.  Any drug screen performed would most likely be positive even when on duty.  There are safety issues for him driving a truck and working on the fire line while under the influence of these medications though he claims he does not take while on duty." *(DX 5, Jordan Affidavit and DX 6, Turner Depo. p. 62, lines 9-21)*.  The NFPA standards do not permit Haynes to take these medications and work on the fire line.  *(DX 6, Turner Depo.  p. 63, line 3- p. 64, line 12)*.

The City of Montgomery Fire Department uses National Fire Protection Association Rules and Regulations as a guideline for best practices. *(DX 5, Jordan Affidavit)*. The City follows the standards in Chapter 10, NFPA 1500 *Standard on Fire Department Occupational Safety and Health Program*, which governs Medical and Physical Requirements. NFPA 1500 § 10.1.1 and 10.1.2 require that firefighters be medically evaluated and certified by the fire department physician, and that such medical evaluations must take into account the risks and functions associated with the individual's duties and responsibilities. *(DX 5, Jordan Affidavit)*. NFPA 1500 §10.6 requires that the City have an officially designated physician who guides, directs and advises firefighters with regard to their health, fitness and suitability for various duties. *(DX 5, Jordan Affidavit)*.

The City also follows the standards in NFPA 1582 *Standard on Comprehensive Occupational Medical Program for Fire Departments*, which governs Medical and Physical Requirements. NFPA 1582 governs fit for duty assessments, setting forth the responsibilities of the Department, the City physician and the firefighters. *(DX 5, Jordan Affidavit)*.

NFPA 1582 also sets forth detailed requirements and criteria for the City physician to follow in performing fitness assessments. *(DX 5, Jordan Affidavit)*. Dr. Turner is fully aware of these

5

standards and criteria and uses them in his fit for duty assessments. *(DX 5, Jordan Affidavit).* These criteria are very important in protecting the firefighters themselves, as well as the public at large, from situations where a firefighter's medical condition could affect his or her ability to safely respond to emergency operations. *(DX 5, Jordan Affidavit).* In the line of duty, firefighters are subjected to very high physiological, psychological and environmental demands, and the City has an obligation to ensure that each firefighter is capable of withstanding those pressures unique to emergency response and firefighting. *(DX 5, Jordan Affidavit).*

Haynes advised Dr. Turner that he did not take his Valium or Gabitril while on duty. *(DX 6, Turner Depo. p.64, lines 13-16).* However, Dr. Turner had to consider how the medication is prescribed. *(DX 6, Turner Depo. p.64, line 17- p. 65, line 18).* Haynes' medication was prescribed for every day. *(DX 6, Turner Depo. p.64, lines 17-23).* Haynes had also voluntarily disclosed medications that he was taking in his memo dated March 4, 2005. *(DX 5, Jordan Affidavit).*

Haynes went on paid leave from March 2005 until May 2005 and then went on unpaid leave because he had used all of his accrued leave. *(DX 5, Jordan Affidavit).* Haynes was always advised that he could return to work once he was certified fit for duty by Dr. Turner. *(DX 5, Jordan Affidavit).* Haynes was asked to have his Dr. Palmer contact Dr. Turner so the two doctors could discuss all nine of the medications Haynes reported taking, versus the three Dr. Palmer mentioned in his letters. *(DX 5, Jordan Affidavit)* Haynes was represented by counsel and in correspondence was also advised that Haynes' physician should contact Dr. Turner so the two doctors could discuss all nine of the medications Haynes reported taking. *(DX 7 A-I, Correspondence Compilation).* Dr. Palmer did not contact Dr. Turner. So, in an effort to help Haynes resolve the prescription medication issue, the City acquired medical authorizations from Haynes in an effort to get all of his

6

medical records from and provide copies to Dr. Palmer and Dr. Turner for their review and discussion. *(DX 7 A-I, Correspondence Compilation)*.

Although Dr. Palmer provided a letter to the City stating that Haynes had no work restrictions or side effects on three medications, Dr. Turner was aware of other medications that Haynes was taking and knew what medications are permitted under NFPA standards. *(DX 5, Jordan Affidavit)*. Dr. Turner advised that Haynes was physically fit for duty, but that the combined effect of the medications he reported taking caused safety concerns and required an administrative decision. *(DX 5, Jordan Affidavit)*.      Haynes was wanted back at work as a firefighter. *(DX 5, Jordan Affidavit)*. Haynes had been with the Department for fifteen years. *(DX 5, Jordan Affidavit)*. The objective in asking him to resolve the medications issue was not to fire Haynes. *(DX 5, Jordan Affidavit)*.   The objective was to get Haynes certified fit for duty and back to work. *(DX 5, Jordan Affidavit)*.   Despite the fact that Haynes refused to complete FMLA paperwork, the Fire Department kept Haynes' position open until June 2006, approximately 14 months.  *(DX 5, Jordan Affidavit)*.

On May 4, 2006, Fire Chief J.W. McKee sent Haynes a letter giving him until May 22, 2006, to resolve the issues of his prescription medication with Dr. Palmer and Dr. Turner to be released fit for duty.  *(DX 5, Jordan Affidavit)*.   Haynes was also told that if he failed to return to work on May 22, 2006, that pursuant to City-County of Montgomery Rules and Regulations, Rule IX, Section I, he would be considered to have resigned from his job as a firefighter.  *(DX 5, Jordan Affidavit)*.

Haynes returned to Dr. Turner on May 25, 2006, for another fit for duty assessment.  *(DX 5, Jordan Affidavit and DX 6, Turner Depo. p. 85, lines 1-3)*.  Haynes was still physically fit for duty. *(DX 6, Turner Depo. p. 86, lines 20-23)*.  However, nothing had changed since the evaluation a year earlier regarding his medications, with the exception that a different muscle relaxer that he was

prescribed.  *(DX 5, Jordan Affidavit and DX 6, Turner Depo. p. 87, lines 1-23).*

Haynes' date of resignation by job abandonment with the City of Montgomery was effective June 16, 2006.  *(DX 8, Montoya Affidavit).*

## III.

### SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of genuine issue of material fact.' *Id.* at 323.  The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing, or pointing out to, the district court that the non-moving party has failed to present evidence in support of some element of the case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

Once the non-moving party has met its burden, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith*

8

*Radio Corp.,* 475 U.S. 574, 586 (1986).

After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), FRCP.  Similarly, the moving party is entitled to summary judgment if the non-moving party has failed to prove the elements of her case or there is the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  *Fitzpatrick v. City of Atlanta,* 2 F. 3d 1112, 1115-16 (11th Cir. 1993).

Conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. *Fed.Rules Civ.Proc.*Rule 56(c).

## IV.

### ARGUMENT

As set out above, Haynes filed a charge of discrimination on May 9, 2005, and an amended charge of discrimination on August 8, 2006, with the EEOC alleging race, disability and retaliation discrimination dating back to January 29, 2003.  The Complaint states that the suit is authorized and instituted pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C.§12101 *et seq.* and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  *(Doc. 1, ¶ 3).*  However, the allegations in the Complaint are claims of discrimination based on disability only.   There are no race based claims of discrimination or allegations of discrimination that occurred prior to March 15, 2005.   The Complaint basically alleges violations of Haynes rights pursuant to the Americans with Disabilities Act.

Haynes contends the City considered and/or perceived him to have disability and violated the Americans with Disabilities Act by putting him on voluntary leave and requiring him to undergo a medical evaluation or fitness for duty examination.

9

Generally, an individual who seeks to make a claim under the ADA that he was discriminated against in the terms, conditions, and privileges of employment must show that he was a qualified individual with a disability and that his employer intentionally discriminated against him because of the disability. *See, e.g., Cash v. Smith,* 231 F.3d 1301, 1305 (11th Cir. 2000) ( "In order to establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate that [he] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [his] disability.").

If an ADA plaintiff can satisfy a prima facie case of discrimination, then the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973), comes into play. *See Carlson v. Liberty Mut. Ins. Co.,* No. 06-15417, 2007 WL 1632267, (11th Cir. June 7, 2007) (unpublished op.) (holding that burden-shifting analysis of *McDonnell Douglas Corp.* applies in ADA cases). Under this standard, the burden would shift to the defendant employer to offer a legitimate, nondiscriminatory reason for its employment decision. If it does so, the burden shifts back to the plaintiff to show that the proffered reason for the employer's decision was pretextual.

However, Haynes' claims are not only those of a general discrimination case, but one made pursuant to 42 U.S.C.A. § 12112(b)(6), under which an employer may use qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity.  42 U.S.C.A. § 12112(b)(6).

Claims brought pursuant to § 12112(b)(6) are treated as disparate impact claims. *See Davidson v. America Online, Inc.,* 337 F.3d 1179, 1189 (10th Cir. 2003) (describing claims brought under § 12112(b)(6) as claims brought under a disparate impact theory); *Erickson v. Bd. of*

10

*Governors,* 207 F.3d 945, 949 (7th Cir. 2000) (explaining that § 12112(b)(6) defines criteria with disparate impacts as discrimination); *Boersig v. Union Elec. Co.,* 219 F.3d 816, 822 (8th Cir. 2000) (discussing § 12112(b)(6) claim as "invoking a disparate impact theory of ADA liability"); *Gonzales v. City of New Braunfels, Tx.,* 176 F.3d 834, 839 (5th Cir. 1999) (noting that the disparate impact theory of discrimination "has been adopted entirely by the ADA" and citing to § § 12112(b)(3) & (6)); *Matthews v. Commonwealth Edison Co.,* 128 F.3d 1194, 1196 (7th Cir. 1997) (noting that disparate impact approach to proving discrimination is applicable to cases under the ADA and citing to § 12112(b)(6)); *and Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1179 n. 5 (6th Cir.1996) (describing § 12112(b)(6) cases as "analytically similar to Title VII disparate impact claims").

Under a disparate impact challenge to an employer's action, the plaintiff in an ADA case need not prove that the employer intended to discriminate. *Erickson,* 207 F.3d at 950. Instead, the ADA places the burden on the employer to show that its practice is "job-related for the position in question and is consistent with business necessity." 42 U.S.C.A. § 12112(b)(6) (West 2005); *Erickson,* 207 F.3d at 950. The Court of Appeals for the Fifth Circuit has explained that a plaintiff makes out an ADA claim of disparate impact discrimination by (1) identifying the challenged employment practice or policy, and pinpointing the employer's use of it; (2) demonstrating an adverse impact on himself or a group that falls within the protections of the ADA; and (3) demonstrating a causal relationship between the challenged practice and the disparate impact. *Gonzales,* 176 F.3d at 839 n. 26. The Court of Appeals for the Sixth Circuit has explained that in disparate impact cases, the employer bears the burden of proving that a particular job requirement is necessary, while the disabled individual always bears the burden of proving that he is "otherwise qualified" for the position in question. *Monette,* 90 F.3d at 1184.

11

### A.    HAYNES IS NOT AN INDIVIDUAL WITH A DISABILITY

The ADA defines the term "disability" with respect to an individual as follows: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(2). Given the foregoing definition, an individual who seeks to state a claim under the ADA "must have an actual disability (subsection (A) [of 42 U.S.C.A. § 12102(2) ] ), have a record of a disability (subsection (B)), or be regarded as having one (subsection (C))." *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 478, 119 S.Ct. 2139, 2144 (1999).

In this case, although Haynes makes general allegations of a disability, there is no record of a physical or mental impairment that substantially limits one or more of the major life activities. Furthermore, Haynes does not argue that he has a physical or mental impairment that substantially limits one or more of the major life activities.  Haynes contends that he was not disabled.  Rather, Haynes contends he has a disability as defined by the Act because Defendants regarded him as having a physical limitation that substantially limits a major life activity.

However, Haynes must fail on his claim for discrimination under ADA.  Haynes does not have a disability.  Taking medication is not a disability.  Haynes was not subjected to unlawful discrimination. Haynes was merely required to meet the fitness for duty standards for a firefighter.

Under ADA, "[W]hen the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires ... that plaintiffs allege that they are unable to work in a broad class of jobs." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (quoting *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)); *see also Santiago Clemente v. Executive Airlines,* 213 F.3d 25, 32 (1st Cir. 2000) (stating that "to be substantially limited in the major life activity of working, [the plaintiff]

must be precluded from more than a particular job.")

When a plaintiff claims that the major life activity is working, the regulations are more specific about the meaning of "substantially." The plaintiff must be able to prove that he was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Case law has emphasized that the plaintiff must be precluded from more than one particular task or type of job to rise to the level of "substantially" limited. *See Sutton v. United Air Lines,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Cash v. Smith,* 231 F.3d 1301, 1306 (11th Cir. 2000).

It is clear from his EEOC charges and the Complaint that Haynes is confused on his standing as an individual with a disability as defined by the ADA. In the first EEOC charge Haynes claims that he has a disability. In the second EEOC charge, Haynes claims that the City regarded or perceived him to have a disability. In the Complaint, Haynes has alleged it all. However, Haynes was neither disabled nor regarded as disabled. As such, Haynes cannot sustain a suit under the provisions of the ADA.

In the first charge filed with the EEOC field in May 2005, Haynes contends that he is disabled however does not identify a disability.

> *Since January 29, 2003, and continuing I have been subjected to harassment and intimidation due to my being disabled. My employer has made an issue over the medication that I am required to take. I have further been subjected to adverse conditions of employment because I complained about the unfair treatment of black employees. On March 15, 2005, I was forced to take leave while an investigation is being conducted into my medication.*
>
> *I believe that I am being discriminated against because of my race, black, my disability and in retaliation for having opposed practices made unlawful under Title VII of the Civil Rights Act of 1964, as*

> *amended and the American with Disabilities Act of 1990. White employees on medication are treated more favorably.*

*(DX 1, Charge of Discrimination No. 130 2005 04376).*

In the Complaint, Haynes alleges:

> Defendant discriminated against Plaintiff by placing Plaintiff on involuntary leave on or about March 15, 2005 because Plaintiff has a record of having a physical or mental impairment that substantially limited one or more of his major life activities, or because Plaintiff was regarded by Defendant as having a mental or physical impairment that substantially limits or limited one or more of him major life activities, or because Plaintiff has a physical or mental impairment that substantially limits or limited one or more of his major life activities. *(Doc. 1, ¶¶ 9&14).*

Haynes alleges no specific physical or mental impairment in the EEOC charge or the Complaint. From the EEOC charge, Haynes appears to base his claim of discrimination on the fact that he is black and taking medication. There is no mention of harassment or intimidation or discrimination of any type in his memo submitted on March 4, 2005, requesting that he no longer be the driver for Truck 14, nor is there any mention of a physical or mental impairment in that memo.

Additionally, Haynes alleges that the City refused to allow him to come back to work despite letters from Haynes' doctor stating that he was capable of working in his current capacity *(Doc. 1, ¶ 6)*, thereby suggesting that the use of corrective measures to any disability he thinks he might have would eliminate any limitations on performing his job. When corrective measures will allow an individual whose impairment might constitute a disability to function identically to individuals without a similar impairment, then that person is not disabled within the meaning of the ADA. *See Sutton v. United Airlines, Inc.,* 527 U.S. 471, 488-89, 119 S.Ct. 2139, 2149 (1999) (holding that "disability under the Act is to be determined with reference to corrective measures," and petitioners whose visual limitations could be corrected with corrective lenses could not state a claim that they

were substantially limited in any major life activity).

Haynes has not identified any physical or mental impairment that will allow him to succeed as an individual with a disability protected by the ADA.  Haynes does not have a physical or mental impairment that substantially limits or limited one or more of his major life activities nor is there a record of Haynes having a physical or mental impairment that substantially limited one or more of his major life activities.  Therefore, Haynes is not disabled under the ADA.

### B.    HAYNES WAS NOT PERCEIVED AS DISABLED

Because Haynes does not have an actual disability, Haynes' claim to the protections of the ADA hinges upon whether he can show that the City "regarded" him as having an impairment that substantially limits one or more of his major life activities.

Haynes filed an Amended Charge of Discrimination on August 8, 2006 alleging discrimination because the City perceived or regarded him as being disabled.

> *1. On May 9, 2005 I filed a Charge of Discrimination, Charge number 130-2005-04376, against the above employer.  This Charge is an amendment to, and supplements, that Charge.  I expressly reallege all allegations made in my previous charge dated May 9, 2005.*
>
> *2. Since the filing of my original Charge on May 9, 2005 I continued to be on involuntary leave from my employment until June 14, 2006, when the employer terminated my employment.*
>
> *3.    believe that I was subjected to discrimination, harassment, adverse conditions of employment, involuntary leave and termination in violation of the Americans with Disabilities Act of 1990 because the employer perceived or regarded me as being disabled.*

*(DX 2, Amended Charge of Discrimination No. 420 2006 04376).*

Again, in his Complaint Haynes alleges:

> Defendant discriminated against Plaintiff by placing Plaintiff on involuntary leave on or about March 15, 2005 because Plaintiff has a

15

record of having a physical or mental impairment that substantially limited one or more of his major life activities, or because Plaintiff was regarded by Defendant as having a mental or physical impairment that substantially limits or limited one or more of him major life activities, or because Plaintiff has a physical or mental impairment that substantially limits or limited one or more of his major life activities. *(Doc. 1, ¶¶ 9&14).*

42 U.S.C. § 12102(2)(C) provides that having a disability includes being regarded as having a physical or mental impairment that substantially limits one or more of the major life activities of such individual. *Sutton,* 527 U.S. at 489. The Supreme Court outlined two ways an individual could fit within this provision:

(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or

(2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

*Id.* at 489, 119 S.Ct. 2139.

To show that he was regarded as substantially limited in his ability to work, Haynes must "prove that [defendant] considered [him] as 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes compared to the average person having comparable training, skills and abilities.' " *Cash v. Smith,* 231 F.3d 1301, 1306 (11th Cir.2000)

Thus, Haynes must demonstrate that the City had regarded him as either having a substantially limiting impairment that he did not have or that he had a substantially limiting impairment, when, in fact, the impairment is not so limiting. Haynes can do neither. Haynes does not have a physical or mental impairment and cannot show that the City perceived him to have a physical or mental impairment in the present case. The City never inquired as to why Haynes was

16

taking the medications.   The only issue relevant to the fitness for duty exam was Haynes' use of certain medications not permitted by the NFPA standards while on duty as a firefighter.

At best, Haynes' only evidence is that the City could have regarded him as substantially impaired in major life activity pertains to the life activity of working as a firefighter.   The life activity of working as a firefighter is not a broad range of jobs.   So, even if Haynes argued the City perceived him to be substantially impaired from working as a firefighter, his claim would fail under ADA.

Haynes was put on leave in March 2005 and remained on leave until June 2006.   There was never any reason that Haynes was not allowed to return to work other than not being certified fit for duty based on NFPA standards. *(DX 5, Jordan Affidavit).*

Haynes was never perceived or considered to be disabled.   Two years before he asked to be relieved from driving duty, Haynes advised his supervisors in January 2003 that he was on medication.  *(DX 5, Jordan Affidavit).*   On that same day, Haynes was relieved from duty at 0900 hours and was allowed to return to work on the same shift at 1700 hours with a letter from Dr. Palmer that Haynes was able to work on the medications.  *(DX 5, Jordan Affidavit).*   It was not until Haynes requested to be relieved from duty as primary driver from Truck 14 that he was sent for a fit for duty assessment.  *(DX 5, Jordan Affidavit).*   Haynes, by the request in his memo, was putting the Fire Department on notice that he thought he may not be able to perform his duties as a firefighter. The subsequent fitness for duty assessment indicated that some of the medications Haynes was taking were not compliant with NFPA standards.

Haynes was asked to have his personal physician contact Dr. Turner so the two doctors could discuss all nine of the medications Haynes reported taking, versus the three Dr. Palmer mentioned in his letters.  *(DX 5, Jordan Affidavit)*   Haynes' attorney was also advised that Haynes' personal

physician should contact Dr. Turner so the two doctors could discuss all nine of the medications Haynes reported taking. *(DX 7 A-I, Correspondence Compilation).*

Although Dr. Palmer provided a letter to the City stating that Haynes had no work restrictions or side effects on three medications, Haynes provided Dr. Turner with other medications that he was taking and Dr. Turner knew what medications are permitted under NFPA standards. *(DX 5, Jordan Affidavit).* Dr. Turner advised that Haynes was physically fit for duty, but that the combined effect of the medications he reported taking caused safety concerns and required an administrative decision. *(DX 5, Jordan Affidavit).* The City wanted Haynes to be able to return to work as a firefighter but only if it was safe for him and the public to do so. *(DX 5, Jordan Affidavit).*

Haynes' position was held open for fifteen months. Haynes was always advised that he could return to work once he was certified fit for duty by Dr. Turner. *(DX 5, Jordan Affidavit).*

The City never perceived Haynes to be disabled. The underlying condition that required medication was never at issue. The sole issue was whether the medications Haynes was using were acceptable for a firefighter by NFPA standards. Haynes has not identified any physical or mental impairment that he claims the City perceived him to have that will allow him to succeed as an individual with a disability protected by the ADA.

For the foregoing reasons, Haynes has failed to establish the first element of a prima facie case under the ADA by failing to come forward with evidence demonstrating that he is in the class of persons protected by the ADA. Therefore, Summary Judgment in favor of Defendant City of Montgomery is proper and all claims should be dismissed.

C.    **FITNESS FOR DUTY IS JOB RELATED BUSINESS NECESSITY**

If the Court determines that Haynes is an individual with a disability recognized under ADA,

the Court must next consider whether the City's protocol regarding the fit for duty assessment is "job-related for the position in question and is consistent with business necessity."42 U.S.C.A. § 12112(b)(6).

In *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849 (1971), the Supreme Court held that the business necessity defense in Title VII cases "placed on the employer the burden of showing that any given requirement must have a manifest relationship to the employment in question."*Id.* at 432, 91 S.Ct. at 854. With regard to employment tests, the Court also stated that with Title VII, Congress has commanded "that any tests used must measure the person for the job and not the person in the abstract." *Id.*at 436, 91 S.Ct. at 856.

In *Walker v. Jefferson County Home,* 726 F.2d 1554, 1558 (11th Cir. 1984), the Eleventh Circuit stated:

> In determining whether the employer has met its burden, the court looks at the amount of skill required for the position and the economic and human risks involved. "When a job requires a small amount of skill and training and the consequences of hiring an unqualified applicant are insignificant, the courts should examine closely any pre-employment standard or criteria which discriminate against minorities. In such a case, the employer should have a heavy burden to demonstrate to the court's satisfaction that his employment criteria are job-related."*Spurlock v. United Air Lines, Inc.,* 475 F.2d 216, 219 (10th Cir. 1972).

In *Spurlock v. United Air Lines, Inc.,* 475 F.2d 216, 219 (10th Cir. 1972), the Tenth Circuit considered risks to public health and safety when considering whether a particular standard is justified by business necessity and noted, "when ... the human risks involved in hiring an unqualified applicant are great, the employer bears a correspondingly lighter burden to show that his employment criteria are job-related." *Id.* at 219.With respect to the importance of the airline flight officer position, the court added, "The public interest clearly lies in having the most highly qualified

persons available to pilot airliners. The courts, therefore, should proceed with great caution before requiring an employer to lower his pre-employment standards for such a job." *Id.*

The same reasoning is applicable in the present case. The NFPA standards provide guidelines for medical care for both candidates seeking to become a firefighter and incumbents currently performing the task of firefighter. An incumbent firefighter is required to "[r]eport to the fire department physician any medical condition that could interfere with the ability of the individual to safely perform essential job tasks, such as illness or injury, use of prescription or nonprescription drugs, and pregnancy," NFPA §4.3(4).

The City follows the standards in NFPA 1582 *Standard on Comprehensive Occupational Medical Program for Fire Departments*, which governs Medical and Physical Requirements. NFPA 1582 governs the "Fit for Duty" assessments, setting forth the responsibilities of the Department, the City physician and the firefighters. *(DX 5, Jordan Affidavit).*

NFPA 1582 also sets forth detailed requirements and criteria for the City physician to follow in performing fitness assessments. *(DX 5, Jordan Affidavit).* These criteria are very important in protecting the firefighters themselves, as well as the public at large, from situations where a firefighter's medical condition could affect their ability to safely respond to emergency operations. *(DX 5, Jordan Affidavit).* In the line of duty, firefighters are subjected to very high physiological, psychological and environmental demands, and the City has an obligation to ensure that each firefighter is capable of withstanding those pressures unique to emergency response and firefighting. *(DX 5, Jordan Affidavit).*

Chapter 9 of NFPA 1582 gives the fire department physician detailed standards for determining fitness for duty. Dr. Turner, as the Montgomery Fire Department physician, is required under NFPA 1582, to carefully evaluate every firefighter's ability to safely perform his essential job

20

tasks in light of any medications that firefighter is taking. Here, Dr. Turner received information that Firefighter Haynes had asked to be relieved of driving responsibilities because of the nine medications he was taking. Dr. Turner conducted a medical examination pursuant to NFPA 1582, and determined that Haynes was physically fit but expressed concern that his medications might affect his ability to safely perform his job duties. Dr. Turner needed additional information from Dr. Palmer about why Dr. Palmer only listed three medications for Haynes, and the inconsistencies between how the medications were prescribed by Dr. Palmer, Dr. Palmer's letter stating Haynes was compliant, and how often Haynes reported he was taking them.

In *Watson v. City of Miami Beach*, 177 F.3d 932 (11th Cir. 1999)*, Watson had been a police officer with the City of Miami Beach since 1984. In May or June 1995, the Commander of the Administration Bureau became increasingly concerned about what he perceived to be Watson's display of unusually defensive and antagonistic behavior towards his co-workers and supervisors. As a result, he began an investigation. Based on the investigation of Watson's pattern of conduct, the City relieved Watson of duty with pay and required him to undergo a fitness for duty evaluation.

Watson sued the City of Miami Beach under ADA. The United States District Court granted the City summary judgment and Watson appealed. The Court of Appeals, Black, Circuit Judge, held that: (1) officer failed to establish that city regarded him as having a mental impairment, and thus that it violated ADA by relieving him from duty pending a fitness for duty examination, and (2) assuming ADA's prohibition against certain medical inquiries and examinations applied to nondisabled employees, fitness for duty and tuberculosis examinations that officer was required to undergo were job-related and consistent with business necessity, and thus did not violate ADA.

In the present case, Haynes requested to be relieved from one of his primary job duties. It was not until that time that he was required to undergo a fitness for duty examination. Under NFPA

1582, the standards employed by the department physician are objective and clear. The reasons for performing these medical evaluations are explicitly set out, further assisting the department physician in tailoring his assessment closely to the essential job duties of firefighters.

There has been no discrimination against Haynes.  Haynes cannot impose his opinion, a vocational expert opinion, or the opinion of his private physician to refute Dr. Turner's knowledge of the fit for duty requirements as it relates to NFPA guidelines followed by the City of Montgomery Fire Department.  The Fire Department follows national standards and applies the requirements equally to all firefighter candidates and incumbent firefighters.  "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'" *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991).

Assuming arguendo, that Haynes has made a prima facie showing as an individual with a disability under ADA, the City has shown that the fit for duty examination challenged by Haynes was job-related for the position of firefighter and consistent with business necessity.

### D.    HAYNES VOLUNTARILY RESIGNED AND/OR ABANDONED HIS JOB

After approximately fourteen months on leave, Haynes was advised that if he failed to return to work on May 22, 2006, that pursuant to Montgomery City-County Rules and Regulations, Rule IX, Section I, he would be considered to have resigned from his job as a firefighter.

Montgomery City-County Rules and Regulations, Rule IX, Section 1 states as follows:

> Any employee wishing to leave the classified service in good standing shall file with the appointing authority, at least one week before leaving, a written resignation stating the effective date of the resignation and the reason for leaving. Such notice shall be promptly reported to the Personnel Director. The number of days less than seven (7) given as notice of resignation may be subtracted from accrued vacation leave and failure to comply with the procedures may be the cause for denying the person future employment. Unauthorized or unreported absence from work for a period of three

(3) days or more may be considered by the appointing authority as a
resignation.

*(DX 8, Montoya Affidavit).*  Haynes did not comply and was deemed to have resigned by job
abandonment on June 14, 2006. *(DX 8, Montoya Affidavit).*

## V.

### CONCLUSION

Conclusory allegations cannot interpose genuine issues of material fact into the litigation so
as to preclude entry of summary judgment. *Fed.Rules Civ.Proc.*Rule 56(c).

Haynes has not identified any physical or mental impairment that will allow him to succeed
as an individual with a disability protected by the ADA.  Haynes does not have a physical or mental
impairment that substantially limits or limited one or more of his major life activities nor is there a
record of Haynes having a physical or mental impairment that substantially limited one or more of
his major life activities.

Haynes was never perceived to be disabled.  The underlying condition that required
medication was never at issue.  The only issue was whether the medications Haynes was using were
permitted by NFPA standards.  Haynes has not identified any physical or mental impairment that
will allow him to succeed as an individual with a disability protected by the ADA.  Therefore,
Haynes cannot demonstrate a prima facie case under the ADA showing that he is in the class of
persons protected by the ADA.

Haynes requested to be relieved from one of his primary job duties.  It was not until that time
that he was required to undergo a fitness for duty examination.  Under NFPA 1582, the standards
employed by the department physician are objective and clear. The reasons for performing these
medical evaluations are explicitly set out, further assisting the department physician in tailoring his

23

assessment closely to the essential job duties of firefighters.

Haynes cannot impose his opinion, a vocational expert opinion, or the opinion of his private physician to refute Dr. Turner's knowledge of the fit for duty requirements as it relates to NFPA guidelines followed by the City of Montgomery Fire Department.  The Fire Department follows national standards and applies the requirements equally to all firefighter candidates and incumbent firefighters.  "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions'." *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991).

Assuming arguendo, that Haynes has made a prima facie showing as an individual with a disability under ADA, the City has shown that the fit for duty examination challenged by Haynes was job-related for the position of firefighter and consistent with business necessity.

Therefore, Defendant's Motion for Summary Judgment is due to granted.

Submitted this 3rd day of December, 2007.

/s/Kimberly O. Fehl
Kimberly O. Fehl (FEH001)
Allison H. Highley (HIG024
Attorneys for City of Montgomery

OF COUNSEL:
City of Montgomery
Legal Division
Post Office Box 1111
Montgomery, AL  36101-1111
334.241.2050
FAX 334.241.2310

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that foregoing has been served upon the following by electronic filing/notification through CM/ECF with United States District Court Middle District of Alabama on this 3rd day of December, 2007:

> Gerald L. Miller, Esq.
> *REDDEN, MILLS, & CLARK*
> 940 Financial Center
> 505 North 20th Street
> Birmingham, AL  35203

> <u>/s/ Kimberly O. Fehl</u>
> Of Counsel