UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EDDIE J. HAYNES, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-CV-1093-WKW-WC |
| | ) | |
| CITY OF MONTGOMERY, | ) | |
|     Defendant. | ) | |

**DEFENDANT'S MOTION IN LIMINE
TO EXCLUDE PLAINTIFF'S EXPERT REPORT AND TESTIMONY**

COMES NOW Defendant City of Montgomery, pursuant to Rules 401, 402 and 403, Federal Rules of Evidence, and respectfully submits this motion in limine to exclude evidence at trial, along with a memorandum of points and authorities in support thereof.

**I. Motion In Limine**

Defendant moves this Court in limine to exclude from trial both the oral testimony by Mary House Kessler, Ph.D., and the Report of Mary House Kessler, Ph.D. dated October 8, 2007 regarding Eddie J. Haynes. Dr. Kessler is a vocational evaluator designated by Plaintiff as an expert witness.

The grounds for this motion, which are more fully set forth below, are that the report and proposed testimony of Ms. Kessler are irrelevant to the issues in this case and are likely to confuse and mislead the jury. Therefore this evidence should be excluded pursuant to FRE 402, but even if the evidence had some remote relation to the issues, its probative value would be far outweighed by its likely prejudicial effect, and it should, therefore, be excluded under FRE 403.

In support of this motion, Defendant submits the following Memorandum of Points and Authorities.

## II. Memorandum of Points and Authorities

Pursuant to Rule 402, Federal Rules of Evidence, the report and testimony by Dr. Kessler are inadmissible because both are irrelevant to the issues in this case. Alternatively, the evidence should be excluded pursuant to Rule 403, Federal Rules of Evidence, because its probative value is substantially outweighed by dangers of unfair prejudice, confusions of the issues and misleading the jury.

In her evaluation, Dr. Kessler did not consider the NFPA standards used by Defendant in determining fitness for duty. The question in this case is not whether Plaintiff Haynes was, in fact, disabled. It was whether the City perceived Haynes as limited in a major life function.

The City only precluded Haynes from being a firefighter for the City of Montgomery, but Dr. Kessler concludes that the City perceived Haynes as unable to perform any job which exposes him to hazardous conditions, to include his current job of security guard. It is apparent that Dr. Kessler has not reviewed or considered the unique demands of firefighting if she claims that operating a metal detector at a hospital is equivalent to responding to a fire, driving a fire truck and running into a burning house – all activities contemplated by the NFPA standards.

Dr. Kessler's evaluation appears to have been prepared using Social Security Disability criteria and not under the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. Further, because it focuses on whether Haynes is capable of doing his firefighter job, it is very likely to confuse and mislead the jury as to the relevant issues in the case.

Finally, Dr. Kessler did not base her opinions on sufficient information and data. Accordingly, her report and proposed testimony should be excluded under FRE 702.

## A. Background

The essential facts are that Plaintiff Eddie Haynes ("Haynes") worked as a firefighter for the City of Montgomery from April 3, 1990 until he resigned by job abandonment in June 2006. In March 2005, Haynes gave his supervisor a letter indicating that he was taking 9 prescription medications. Upon receipt of this information, the Montgomery Fire Department ("MFD") sent Haynes to Dr. Michael Turner, D.O., for a Fit for Duty Examination pursuant to NFPA 1582.

Dr. Turner conducted an examination and concluded that Haynes was physically fit for duty, but advised the City that an administrative decision would have to be made regarding the prescription drug use due to inconsistencies between what Haynes said he was taking and the way Dr. Palmer had prescribed medications.

The City immediately took administrative action by taking Haynes off the fire line. Haynes was placed on leave until the City could gather enough information to make a final decision with regard to Haynes' employment. Because Dr. Palmer only knew of 3 medications and Haynes identified 9 medications he was taking, the City asked Haynes to put his personal physician in contact with Dr. Turner, so that a medical determination could be made upon full knowledge, which the City would then rely upon in turn to make its decision regarding Haynes' continued employment.

Haynes never arranged to have his physician speak to Dr. Turner. After more than a year had elapsed without any action by Haynes to resolve the issue, the City could not keep Haynes on the payroll. In June 2006, Haynes was told if he did not resolve the issue, he would be deemed to have resigned for job abandonment.

Haynes claims that the City perceived him as disabled, as defined under the Americans with Disabilities Act, and that he was subjected to an impermissible medical evaluation because of this alleged perception.

On October 8, 2007, Plaintiff filed a vocational evaluation (Doc. 14-2) prepared by Mary House Kessler, Ph.D. ("Kessler") based on an evaluation performed on or about September 11, 2007, wherein she was asked perform a Vocational Evaluation to address "Haynes' perceived disability and his ability to perform his former job as a firefighter." (Doc. 14-2, p. 1).

### B. Analysis

Dr. Kessler's report and proposed testimony are not relevant evidence in this case, and as such are not admissible. Even assuming aguendo this evidence is somehow relevant, this evidence should be excluded under FRE 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury. Also, Dr. Kessler's evaluation was not based on sufficient information or data and should therefore be excluded under FRE 702.

#### 1. Relevance

Dr. Kessler was asked to address (a) "Haynes' perceived disability" and (b) "his ability to perform his former job as a firefighter." (Doc. 14-2, p. 1). In any analysis of perceived disability, it would be important to look at the information available to the alleged perceiver as well as any credible evidence relating to their perception. Dr. Kessler appears to be laboring under the misconception that Dr. Michael Turner is an employee and agent of the City of Montgomery. He is not.

Dr. Kessler appears to rely solely on an interview with Haynes, letters from Dr. Palmer and notes and medical records from Dr. Turner's office, to include medical tests and return to work notes. She does not list it in her cited materials, but Dr. Kessler also discusses Dr. Turner's deposition taken in this case. Nowhere in her report does she reference any evidence of a perception held by the City. Dr. Kessler may not substitute her perception of the situation for the City's. Thus, Dr. Kessler's report and proposed testimony do not relate to a fact "that is of consequence to the determination of th[is] action" and are therefore not relevant evidence in this case. FRE 401.

At this point in the proceedings, it is undisputed that Haynes is not actually disabled. The sole issue for the jury is whether the City perceived Haynes as substantially limited in a major life function. Where the major life function is working, the perception must have been that Haynes was unable to do a broad range of jobs. Thus, the salient issue for an expert to address is whether the perceived limitation was broad or narrow. It is impossible to answer this question without an examination of any unique attributes of the subject position – in this case, firefighter.

Dr. Kessler never looks at whether any limitation identified by Dr. Turner was defined by NFPA standards, which closely fit the unique demands of firefighting. Certainly, Dr. Kessler could not argue there are not certain requirements of firefighting unique to that profession that would not apply to any other job. It appears that Dr. Kessler has skipped a step. She begins her analysis with the assumption that the City perceives Haynes as unable to do any job where Haynes may be exposed to hazard – to include any job where he has to drive a vehicle. This conclusion exaggerates and misstates the scope of the City's concerns with Haynes.

The City did not perceive Haynes as unable to do a broad range of jobs. At most, the City perceived Haynes as unable to meet the standards employed by the City of Montgomery in determining whether an individual is able to safely perform the duties of a City of Montgomery firefighter. Put another way, the City determined that Haynes was unable to do one job, that of firefighter for the City of Montgomery.[1]

Dr. Kessler did not review the NFPA standards used by the City of Montgomery Fire Department in evaluating firefighter fitness for duty.

> The NFPA is the preeminent fire code and standards organization in the United States, and NFPA Document 1582 is "a standard that has been adopted by fire fighting organizations throughout the United States." … The National Fire Protection Association [NFPA] is a non-profit organization comprised of fire fighting professionals, occupational specialists, engineers, physicians, and inspectors. The NFPA develops guidelines or standards on numerous topics ranging from building codes and boilers to hazardous materials and protective clothing. The NFPA has developed physical standards for the appointment of firefighters. These standards were the product of consultation between physicians and occupational specialists experienced with the demands and hazards of firefighting … Many of the standards developed by the NFPA are adopted by [the Occupational Safety and Health Administration] and state agencies. It is estimated that several thousand fire departments use the NFPA's standards for hearing.

Carleton v. Commonwealth, 858 N.E.2d 258 (Mass. 2006) (internal citations omitted). The City has provided Dr. Turner these standards by which he is to conduct fitness for duty evaluations. The City and the Fire Department administration are not medical professionals and NFPA standards permit and encourage such administrative decision makers to utilize the expertise of medical professionals in making their decisions on whether any given firefighter should be allowed to work on the fire line.

---

[1] Note that the City's determination only extended to Haynes' ability to fight fires for the City of Montgomery and does not extend to any other municipality.

The only reference attributable to the City was from a February 24, 2005 memorandum from Haynes' supervisor Captain Hackett to District Chief Stoudenmier wherein Hackett stated he did not feel confident in Haynes' mental status when driving the fire engine because Haynes was overly cautious while driving. Again, driving a 35,000 pound fire truck averaging 60 miles per hours in densely populated urban and residential areas is a job duty unique to firefighting. The concerns expressed in this memorandum do not indicate a perception that Haynes is limited from a broad class of jobs, or even a broad range of tasks. Captain Hackett was concerned about Haynes' ability to drive a fire truck safely in an emergency.

Evidence which is not relevant is not admissible. FRE 402. Dr. Kessler's report and proposed oral testimony are not relevant to the issues pending at trial. Accordingly they should be excluded from trial.

**2. Danger of Confusion of the Issues or Misleading the Jury**

Even if it is relevant, the evidence should be excluded because its probative value is substantially outweighed by the danger of confusion of the issues and misleading the jury. FRE 403. The issue in the case is whether the City perceived Haynes as limited in a major life function. The issue is not whether Haynes is in fact so limited. This will likely be a difficult distinction for the jury to make, and if the subject evidence is not excluded, the danger of confusion of the issues and misleading the jury is significant.

Dr. Kessler does make a blanket conclusion that the City perceived Haynes to be unable to perform any job where he would be exposed to any hazard, to include any job that involved driving a vehicle. As stated elsewhere herein, it appears that Dr. Kessler misunderstood Dr. Turner's role in making fitness determinations, and limits her review

to Dr. Turner's medical opinion, disregarding what conclusions were drawn therefrom by the City. Again, the relevant inquiry is whether the City perceived Haynes as having a physical or mental impairment that substantially limits one or more of the major life activities. 42 U.S.C. §12102. Dr. Kessler's report addresses different issues than whether the City perceived a disability as defined under the ADA and is therefore highly likely to confuse or mislead the jury, even if accompanied by a limiting instruction. It should therefore be excluded at trial.

### 3. Insufficient Facts or Data

Under FRE 702, Dr. Kessler can only testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FRE 702.

Dr. Kessler can show neither the perception of a disability nor can she evaluate whether Haynes could safely perform his firefighting job at the relevant time. Dr. Kessler was hired 30 months after Dr. Turner expressed concerns about the discrepancy between what Dr. Palmer said Haynes was taking and what Haynes self-identified he was taking.

The issue in this case with regard to Haynes' ability to perform his firefighting functions cannot be resolved by Haynes' own claims that he is capable along with results from drug tests that do not test for the drugs in question and letters from a psychiatrist that only addressed a fraction of the medications Haynes said he was taking.

With regard to any perception of disability, Dr. Kessler relies on a single memorandum from the Fire Department that does not indicate perception of a disability as defined under the Americans with Disabilities Act. In fact, nowhere in her report does

Dr. Kessler refer to or discuss the Americans with Disabilities Act, perhaps because her experience has been performing vocational evaluations for Social Security Disability purposes. In fact, in this case, Dr. Kessler appears to have applied a Social Security Disability analysis, which involves a different set of criteria than an ADA perceived disability analysis.

Also, Dr. Kessler cannot reasonably evaluate Haynes' "ability to perform his former job as a firefighter" without considering the NFPA standards as applied by the City of Montgomery in defining the requirements for the position. Therefore, Dr. Kessler's testimony is not based on sufficient facts or data, and should not be considered by the jury in this case.

WHEREFORE, for the reasons set forth herein, Defendant respectfully moves this Court to exclude the proposed testimony and report of Dr. Mary House Kessler, Ph.D.

Respectfully submitted this 10th day of March 2008.

/s/ Allison H. Highley
Allison H. Highley (HIG024)
Kimberly O. Fehl (FEH001)
Attorneys for Defendant

OF COUNSEL:
Legal Department
City of Montgomery
Post Office Box 1111
Montgomery, Alabama  36101-1111
(334) 241-2050 Telephone
(334) 241-2310 Facsimile

CERTIFICATE OF SERVICE

I hereby certify that foregoing has been served upon the following by e-filing and first class United States Mail on this 10th day of March 2008:

> Gerald L. Miller
> Keith Edward Brashier
> REDDEN, MILLS & CLARK, LLP
> 940 Financial Center
> 505 North 20"' Street
> Birmingham, Alabama 35203

/s/ Allison H. Highley
Of Counsel