IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EDDIE J. HAYNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:06-cv-1093-WKW |
| | ) |
| CITY OF MONTGOMERY, | ) |
| | ) |
| Defendant. | ) |

## COURT'S INSTRUCTIONS TO THE JURY

### Introduction

Members of the Jury:

I will now explain to you the rules of law that you must follow and apply in deciding this case.

When I have finished you will go to the jury room and begin your discussions – what we call your deliberations.

### Consideration Of The Evidence
### Stipulations
### Duty To Follow Instructions
### Governmental Entity or Agency Involved

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

The fact that a governmental entity or agency is involved as a party must not affect your decision in any way. A governmental entity and all other persons stand equal before the

law and must be dealt with as equals in a court of justice. When a governmental entity is involved, of course, it may act only through people as its employees; and, in general, a governmental entity is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of that governmental entity.

In your deliberations you should consider only the evidence – that is, the testimony of the witnesses, the stipulations I read to you, the exhibits that have been admitted in the record, and interrogatories, that is, questions and answers that have been signed and sworn by one of the parties, that have been admitted.

As you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

When the attorneys on both sides stipulate or agree as to the existence of a fact, you must accept the stipulation and regard that fact as proved.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law and the stipulations I read to you, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts. It is your own recollection and interpretation of the evidence that controls.

Anything you may have seen or heard outside the courtroom is not evidence and you must disregard it. Furthermore, you must disregard any evidence to which I sustained an objection.

### Credibility of Witnesses

Now, in saying that you must <u>consider</u> all of the evidence, I do not mean that you must <u>accept</u> all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness's testimony differ from other testimony or other evidence?

### Impeachment Of Witnesses
### Inconsistent Statement

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

3

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

### Expert Witnesses

When knowledge of technical subject matter might be helpful to the jury, a person having special training or experience in that technical field is permitted to state an opinion concerning those technical matters.

Merely because such a witness has expressed an opinion, however, does not mean that you must accept that opinion. The same as with any other witness, it is up to you to decide whether to rely upon it.

### Burden Of Proof
### When There are Multiple Claims or
### When Both Plaintiff and Defendant Have Burden Of Proof

In this case Plaintiff Eddie Haynes is the party asserting claims against the Defendant City of Montgomery. Mr. Haynes is required to prove all of the elements of each of his claims. The City of Montgomery is required to prove its affirmative defenses to those claims. This is sometimes called the "burden of proof" or the "burden of persuasion." Each party asserting a claim or a defense has the responsibility to prove every essential part of the claim or defense by a "preponderance of the evidence."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that a claim or defense is more likely true than not true.

When more than one claim is involved, and when more than one defense is asserted, you should consider each claim and each defense separately; but in deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of a claim or defense by a preponderance of the evidence you should find against the party making that claim or defense.

### Substantive Claims

### Nature of the Claims

As I told before this trial began, this case involves claims under the Americans with Disabilities Act of 1990 or the ADA. Generally, the ADA prohibits employers from discriminating against their employees because of their disabilities. This protection is extended to employees who are not only actually disabled, but also to employees who are regarded as having a disability or perceived to be disabled by their employers. In this case Mr. Haynes claims that the City of Montgomery violated the ADA in three separate ways.

First, Mr. Haynes claims that the City discriminated against him by placing him on involuntary leave, refusing to allow him to come back to work, and then terminating him because the City perceived or regarded him as having a "disability," specifically, possible

side effects from medication he took for Generalized Anxiety Disorder. He does not claim to be actually disabled.

The City denies that it regarded Mr. Haynes as having a disability as defined by the ADA. Specifically, the City contends that Mr. Haynes was not qualified to perform his job and that it did not violate the ADA when it placed him on involuntary leave. The City also contends that the City did not terminate Mr. Haynes but rather Mr. Haynes abandoned his job.

Second, Mr. Haynes claims the City discriminated against him by requiring him to undergo medical examinations that were not job-related and consistent with business necessity. Mr. Haynes contends that the fitness for duty examinations on March 31, 2005, and May 25, 2006, exceeded the scope allowed by the ADA because they were not restricted to his present ability to perform his job. The City denies this claim and contends the examinations were job-related and consistent with business necessity.

Mr. Haynes's third and final claim is that the City violated the ADA by using qualification standards that screen out or tend to screen out persons with disabilities. The ADA makes such standards unlawful unless they are related to the job in question and consistent with business necessity. Mr. Haynes contends the standard used by Dr. Turner and the City violated the ADA because it excluded persons who have the actual ability to do the job of firefighter. The City denies this claim and contends the standards used were job-related and consistent with business necessity.

I will now explain the law applicable to these claims and defenses.

6

## Americans With Disabilities Act
## ("Regarded As" Having A Disability Claim)

Under the ADA, it is unlawful for an employer, such as the City of Montgomery, to discriminate against an employee by placing that employee on involuntary leave or by terminating that employee because of that employee's disability if the employee is qualified for the job.

In order to prevail on this claim Mr. Haynes must prove each of the following elements by a preponderance of the evidence:

<u>First</u>: That Mr. Haynes had a "disability," as hereafter defined;

<u>Second</u>: That Mr. Haynes was a "qualified individual," as hereafter defined;

<u>Third</u>: That the City of Montgomery made an employment decision that was adverse to Mr. Haynes; and

<u>Fourth</u>: That Mr. Haynes's disability was a substantial or motivating factor that prompted the City of Montgomery to take that action.

I will now define these terms for you.

## Definition of "Disability"

The first element that Mr. Haynes must prove by a preponderance of the evidence is that he had a "disability." An individual with a disability includes a person who is "regarded" as having a physical or mental impairment that substantially limits one or more major life activities. To be "regarded" as having such an impairment means a person who (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as having such a limitation; or (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of

7

others toward such impairment; or (3) does not have an impairment but is treated by an employer as having a substantially limiting impairment.

Mr. Haynes has alleged that the City of Montgomery perceived him to have an impairment that substantially limited Plaintiff's ability to work. Working is a major life activity; however, an inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. To find that the City of Montgomery perceived that Mr. Haynes had an impairment that substantially limited his ability to work requires that you find that Mr. Haynes was perceived to be significantly restricted in the ability to perform *either* a class of jobs *or* a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. Proof of either is enough to establish that Mr. Haynes was perceived as having a substantial limitation in the major life activity of working.

The only question for you is whether the City of Montgomery's perception of Mr. Haynes would, if accurate, constitute a significant barrier to his employment in a class of jobs or a broad range of jobs. An innocent misperception based on nothing more than a mistake of fact as to the severity, or even the existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability.

In deciding whether the City of Montgomery perceived Mr. Haynes's impairment to substantially limit his ability to work, you should consider how the City of Montgomery perceived the nature and severity of the impairment, the expected duration of the impairment, the expected impact of the impairment, and both the positive and negative effects of any

measures that Mr. Haynes was taking to correct or to mitigate the impairment. You may also consider the geographical area to which the individual has reasonable access, the number and types of jobs, if any, utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment or perceived impairment, and the number and types of jobs, if any, not utilizing similar training, knowledge, skills or abilities, within that geographical area from which the individual is also disqualified because of the impairment or perceived impairment.

For this "regarded as" claim, you should not draw any negative inferences from the fact that this claim is not based on an actual disability. The ADA protects persons who are regarded or perceived as having disabilities – even if they do not and never had actual disabilities – to the same extent as it protects persons with actual disabilities. By prohibiting employment decisions based on perceptions of disability, the ADA seeks to prevent employment decisions based on stereotype, fears, or misconceptions based on such things as unsubstantiated concerns about productivity, safety, liability, attendance, and insurance costs.

### Definition of "Qualified Individual"

The second element that Mr. Haynes must prove by a preponderance of the evidence is that he was "qualified" for the job in question at the time of the challenged employment decision notwithstanding his perceived disability. The ADA does not require an employer to hire or retain or promote an individual who cannot perform the job.

In order to prove that he was qualified, Mr. Haynes must establish that (1) he possessed the requisite skill, experience, education, and other job-related requirements of the

9

job in question, and (2) that he was capable of performing all of the essential functions of the job in question with or without reasonable accommodation by the City of Montgomery.

The essential functions of a position are the fundamental job duties of that position. The term "essential functions" does not include the marginal functions of the position. A job duty or function may be considered essential because, among other things, one of the reasons the job exists is to perform that function; or because there are a limited number of employees available among whom the performance of that job function can be distributed; or because the function is highly specialized and the incumbent in the position was hired for his or her expertise or ability to perform that particular function. Evidence of whether a particular function is essential includes, but is not limited to, the employer's own judgment as to which functions are essential; the existence of written job descriptions; the amount of time spent on the job performing the function; the consequences of not requiring the incumbent to perform the function; the work experience of past incumbents in the job; and/or the current work experience of incumbents in similar jobs. The determination of whether an employee could perform the essential functions of the job must be made at the time of the employment decision.

The City of Montgomery asserts that Mr. Haynes was not qualified because he posed a "direct threat." Under the ADA, an employer may exclude someone from a job if that person would pose a direct threat. A direct threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by

reasonable accommodation. To show that he was a qualified individual, Mr. Haynes bears the burden of proving by a preponderance of the evidence that he was not a direct threat.

The City of Montgomery's determination that Mr. Haynes posed a direct threat is required to be based on an individualized assessment of Mr. Haynes's present ability to safely perform the essential functions of the job as a firefighter. This individualized assessment is required to be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether Mr. Haynes posed a direct threat, the City of Montgomery must have considered (1) the duration of the risk, (2) the nature and severity of the potential harm, (3) the likelihood that the potential harm will occur, and (4) the imminence of the potential harm.

The City claims that it relied on Dr. Turner to determine whether Mr. Haynes was qualified to return to work. You must consider whether the City's reliance on Dr. Turner's reports was reasonable under the circumstances. An employer can reasonably rely on a physician's opinion when it is based on an individualized examination of the employee's condition and is supported by the most current medical knowledge and the best available objective evidence. A physician's opinion that is based on preconceived notions of a person with a purported disability and made without an individualized examination of the person is not a reasonable basis for an employment decision. In other words, unreasonable reliance on a physician's opinion can be sufficient to demonstrate that discrimination – that is, the perception of disability – was a substantial and motivating factor for the City of Montgomery's employment actions with respect to Mr. Haynes.

## Adverse Employment Decision

The third element that Mr. Haynes must prove by a preponderance of the evidence is that the City of Montgomery made an employment decision that was adverse to Mr. Haynes. Here, Mr. Haynes claims there were two adverse employment decisions: first, that the City of Montgomery placed him on involuntary leave and did not allow him to return to work, and, second, that the City of Montgomery terminated his employment.

The parties agree that the City's decision to place Mr. Haynes on involuntary leave and refusal to allow him to come back to work was because of medications he was taking and their possible side effects. Therefore, you do not need to decide whether the City placed Mr. Haynes on involuntary leave and prevented Mr. Haynes from returning to work because of his medications and their possible side effects. The City admits that there was no other reason for its action.

However, with respect to the claim of termination, you must decide whether the City of Montgomery terminated Mr. Haynes's employment or whether Mr. Haynes abandoned his job. If you find that Mr. Haynes abandoned his job, you must find for the City of Montgomery on the claim of termination.

## Definition of "Substantial or Motivating Factor"

Finally, the fourth element that Mr. Haynes must prove by a preponderance of the evidence is that Mr. Haynes's perceived disability was a substantial or motivating factor that prompted the City of Montgomery to make employment decisions that were adverse to Mr. Haynes.

It is not necessary for Mr. Haynes to prove that the perceived disability was the sole or exclusive reason for the City of Montgomery's employment decisions. It is sufficient if Mr. Haynes proves that the perceived disability was a determining factor that made a difference in the employer's decision.

You should be mindful, however, that the law applicable to this case requires only that an employer not discriminate against an employee because of the employee's perceived disability. So far as you are concerned in this case, an employer may place on leave or terminate or otherwise adversely affect an employee for any other reason, good or bad, fair or unfair, and you must not second guess that decision or permit any sympathy for the employee to lead you to substitute your own judgment for that of the City of Montgomery even though you personally may not approve of the action taken and would have acted differently under the circumstances.

In summary, if you find that Mr. Haynes has proved all four of the elements on this "regarded as" claim, then you must return a verdict in favor of Mr. Haynes. If you find that Mr. Haynes has not proved all four of the elements, then you must return a verdict in favor of the City of Montgomery.

**Americans With Disabilities Act**
**(Medical Examinations Claim)**

The second claim of Mr. Haynes can be referred to as a medical examinations claim. Mr. Haynes claims that the City of Montgomery discriminated against him by requiring him to undergo medical examinations – that is, the fitness for duty examinations on March 31, 2005, and May 25, 2006 – that were not job-related and consistent with business necessity.

Under the ADA, it is unlawful for an employer to require an employee to undergo a medical examination or to answer inquiries as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such an examination or inquiry is shown to be job-related and consistent with business necessity.

In order to prevail on this claim Mr. Haynes must prove by a preponderance of the evidence that the City of Montgomery required him either to undergo a medical examination or to answer inquiries as to whether he was disabled or as to the nature or severity of his disability.

The City of Montgomery has asserted the affirmative defense of business necessity; that is, any medical examination or inquiry that was conducted on Mr. Haynes was job-related and consistent with business necessity. In order to prove the affirmative defense of business necessity, the City of Montgomery must prove the following elements by a preponderance of the evidence:

**First:**   The medical examination or inquiry was required to determine whether Mr. Haynes could at that time perform the essential functions of the job of firefighter;

**Second:**   The City of Montgomery had a legitimate, non-discriminatory reason to question Mr. Haynes's capacity to perform the essential functions of the job at that time; and

**Third:**   The medical examination or inquiry must have been narrowly tailored to address the City of Montgomery's reason to question Mr. Haynes's capacity and must have been no broader or more intrusive than necessary.

If you find that Mr. Haynes proved by a preponderance of the evidence that the City of Montgomery required him either to undergo a medical examination or to answer inquiries

14

as to whether he was disabled or as to the nature or severity of his disability, your verdict on this claim must be for Mr. Haynes, unless you also find that the City of Montgomery has proved by a preponderance of the evidence all of the elements of the affirmative defense of business necessity, in which case you should find for the City of Montgomery.

### Americans With Disabilities Act
### (Qualification Standards Claim)

The third claim of Mr. Haynes is that the City violated the ADA by using qualification standards that screen out or tend to screen out persons with disabilities. Qualification standards means the personal and professional attributes including the skill, experience, education, physical, medical, safety, and other requirements established by an employer as requirements which an individual must meet in order to be eligible for the position held.

Under the ADA, an employer may lawfully use qualification standards that screen out or tend to screen out an individual with a disability if the standards are shown to be job-related for the position in question and are consistent with business necessity.

In order to prevail on this claim, Mr. Haynes must prove each of the following elements by a preponderance of the evidence:

**First**:    That Mr. Haynes had a "disability," as has already been defined;

**Second**:   That Mr. Haynes was a "qualified individual," as has already been defined; and

**Third**:    That the City of Montgomery used a qualification standard that screens out or tends to screen out individuals with disabilities and, as a direct result, Mr. Haynes was placed on involuntary leave or terminated from his employment.

If you find these elements have been proved, your verdict on this claim must be for Mr. Haynes on this qualification standards claim, unless you also find that the City of Montgomery has proved by a preponderance of the evidence the affirmative defense of business necessity, in which case you should find for the City of Montgomery.

When an employer uses a qualification standard because of safety concerns, an employer may present the business necessity defense only when the individual poses a direct threat to the health and safety of the individual and others. As I said before, direct threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation.

In order to prove the business necessity defense on this qualification standards claim, the City of Montgomery must prove by a preponderance of the evidence that Mr. Haynes was a direct threat as determined by the City and the physician it contracted with to perform fitness for duty examinations, Dr. Turner, after conducting an individualized assessment of Mr. Haynes's actual present ability to safely perform the job of firefighter.

### Damages

If you find in favor of Mr. Haynes and against the City of Montgomery, on any of the three claims, you must then decide the issue of Mr. Haynes's damages.

In considering the issue of Mr. Haynes's damages, you are instructed that you should assess the amount you find to be justified by a preponderance of the evidence as full, just, and reasonable compensation for all of Mr. Haynes's damages, no more and no less, that he suffered as a result of the City of Montgomery's violation of the ADA. These damages are

not allowed as a punishment and must not be imposed or increased to penalize the City of Montgomery. Also, these damages must not be based on speculation or guesswork because it is only actual damages that are recoverable.

On the other hand, these damages are not restricted to actual loss of time or money; they cover both the mental and physical aspects of injury – tangible and intangible. Thus, no evidence of the value of such intangible things as emotional pain and mental anguish has been or need be introduced. In that respect it is not value you are trying to determine, but an amount that will fairly compensate Mr. Haynes for those claims of damage. There is no exact standard to be applied; any such award should be fair and just in the light of the evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence, and no others:

(a)   Net lost wages and benefits to the date of trial, also known as "back pay"; and

(b)   Emotional pain and mental anguish.

You must consider these two components separately.

First, if you find in favor of Mr. Haynes, you must determine the amount of "back pay" to award Mr. Haynes. "Back pay" is the amount that reasonably compensates Mr. Haynes for any lost wages and employment benefits from the time he was placed on leave through the date of your verdict, taking into consideration any increases in salary and benefits that Mr. Haynes would have received had he been allowed to work. You must reduce any back pay award by the amount of any earnings and related benefits he actually received

during that period. In determining back pay and damages, all uncertainties are to be resolved in favor of the injured party, Mr. Haynes.

You must not deduct from Mr. Haynes's back pay the taxes he would have had to pay on his salary if he had not been placed on leave, since Mr. Haynes will be required to pay taxes on the amount you award as back pay. Otherwise, he will have effectively been taxed twice on that back pay.

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages – that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.

So if you should find from a preponderance of the evidence that Mr. Haynes failed to seek out or take advantage of a business or employment opportunity that was reasonably available under all the circumstances shown by the evidence, then you should reduce the amount of Mr. Haynes's damages by the amount that could have been reasonably realized if Mr. Haynes had taken advantage of such opportunity.

### Duty To Deliberate

Of course, the fact that I have given you instructions concerning the issue of Mr. Haynes's damages should not be interpreted in any way as an indication that I believe that Mr. Haynes should, or should not, prevail in this case.

Any verdict you reach in the jury room must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

### Election of Foreperson
### Explanation of Verdict Forms

When you go to the jury room you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared for your convenience. I will explain the verdict form for you now.

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.