IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **EDDIE J. HAYNES,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:06-cv-1093-WKW |
| | ) |
| **CITY OF MONTGOMERY, ALABAMA,** | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
### FOR NEW TRIAL OR REMITTITUR

Defendant City of Montgomery ("the City") submits the following Memorandum of Law in Support of Defendant's Motion for New Trial or Remittitur.

### I. INTRODUCTION

1. Plaintiff Eddie Hayne ("Haynes") has alleged that the City violated the Americans with Disabilities Act, 42 U.S.C. §12112, *et. seq,* ("ADA") and perceived him as disabled based on the potential side effects of his medications. On March 27, 2008, the jury returned a verdict in Plaintiff's favor on his "regarded as" and "qualification standards" claims and awarded Plaintiff $90,000.00 in damages for back pay and $270,000.00 for damages for emotional pain and mental suffering. Defendant has filed herewith a Renewed Motion for Judgment as a Matter of Law and incorporates herein by reference the evidence, legal authority and argument contained therein.

### II. STANDARD OF REVIEW

2. Fed. R. Civ. P. 59 gives the trial court discretion to grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). A new trial may be warranted by: (1) prejudicial error of law; (2) a verdict against the weight of the evidence; or (3) an excessive or inadequate jury award. *Copley v.*

*Bax Global, Inc.,* 97 F.Supp.2d 1164, 1169 (S.D. Fla. 2000); *see also* Charles A. Wright, *Law of Federal Courts,* 676-77 (5th ed.1994). Erroneous jury instructions will warrant a new trial if the jury was misled about the correct legal standard or was otherwise inadequately informed regarding the controlling law. *See Broaddus v. Florida Power Corp.,* 145 F. 3d 1283, 1288 (11th Cir. 1998).

3. When it is determined that the damages awarded by a jury are excessive but the finding of liability is supported by the evidence, it is appropriate to order remittitur or a new trial limited to the issue of damages. *Wilson v. Taylor,* 733 F.2d 1539, 1549-50 (11th Cir.1984), *overruled on other grounds byJett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

### III. GROUNDS

4. Defendant submits a number of grounds for its Motion for New Trial or Remittitur. The jury's verdict in this case was contrary to the greater weight of the evidence. The jury clearly disregarded the controlling law and the evidence presented at trial in finding that the City discriminated against Plaintiff in violation of the ADA. The evidence was insufficient to submit the claims to the jury. Also, the damages awarded by this jury are clearly excessive. Plaintiff's counsel made inappropriate prejudicial argument in his closing. The Court's modified jury instructions were likely to mislead the jury, prejudicial to the Defendants, and were given over Defendant's objections.

#### A. JURY VERDICT CONTRARY TO CLEAR WEIGHT OF EVIDENCE

5. It is clear from the verdict that the jury completely disregarded the undisputed evidence and applicable law. The evidence was insufficient to show that Plaintiff was regarded as "disabled" as that term is defined under ADA with respect to working or even with respect to being anything other than a firefighter for the City of Montgomery. The evidence at trial showed only that Plaintiff was taking prescription medications that Dr. Turner deemed unsafe for firefighters under

2

NFPA Standards. Furthermore, the evidence has shown that the City's qualification standards are job related and consistent with business necessity.

6. Plaintiff failed to produce legally sufficient evidence to support the jury's verdict that Plaintiff was regarded by the City as having an impairment that substantially limited his ability to work in a class or broad range of jobs. Nor did Plaintiff refute the business necessity or job-relatedness of the qualification standards used by the City for firefighters. In the absence of any evidence to support Plaintiff's claims, the verdict of the jury is against the weight of the evidence presented at trial.

### (1) "REGARDED AS" CLAIM

7. The evidence at trial showed only that Plaintiff was taking prescription medications that Dr. Turner determined were unsafe for firefighters under NFPA Standards. Specifically, Dr. Turner testified that Lexapro caused impermissible sensitivity to heat. This evidence was insufficient to show that Plaintiff was regarded as "disabled" with respect to working in a class or broad range of jobs. In the absence of such evidence, Plaintiff should not prevail on his claim that the City regarded him as "disabled."

8. The jury's verdict in this case was contrary to the greater weight of the evidence. The jury clearly disregarded the controlling law and the evidence presented at trial in finding that the City discriminated against Eddie Haynes. There was no evidence at trial presented by Haynes or by the City to support that the City perceived Haynes as being "disabled" in any sense – let alone as that term is defined under ADA. Quite the contrary, the evidence put forth by both parties indicated that Haynes was capable of doing anything he wanted. There was no evidence that, if the City perceived Haynes as having an impairment, then that alleged impairment from prescription side effects was such that, if true, Haynes would have been precluded from any job other than

Montgomery firefighter. A reasonable jury could not have found that Haynes had proved that the perceived impairment would have constituted a "disability" as defined under ADA – an essential element of Plaintiff's case. Further, even assuming this element was proven, Plaintiff did nothing to show the City's stated reasons for the employment actions were discriminatory or illegitimate. Thus, the City is entitled to judgment notwithstanding the verdict, or in the alternative, to a new trial or remittitur.

9. Under the ADA, this Plaintiff must prove the City perceived him as having a physical or mental impairment that substantially limited one or more major life activities. *See Toyota Motor Manufacturing Kentucky, Inc. v. Williams,* 122 S.Ct. 681, 690 (2002); *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 478 (1999). In *Collado v. United Parcel Service, Co.*, 419 F.3d 1143 (11th Cir. 2005), the Eleventh Circuit held:

> Being "regarded as unable to perform only a particular job," however, "is insufficient, as a matter of law, to prove that [the plaintiff] is regarded as substantially limited in the major life activity of working." *Murphy v. United Parcel Serv.,* 527 U.S. 516, 525, 119 S.Ct. 2133, 2139, 144 L.Ed.2d 484 (1999)… "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. Thus, an impairment must ... be perceived to preclude [ ] an individual from more than one type of job, even if the job foreclosed is the individual's job of choice." *Rossbach v. City of Miami,* 371 F.3d 1354, 1359 (11th Cir.2004) (citation omitted).

Also, in *Bridges v. City of Bossier,* 92 F.3d 329 (5th Cir. 1996), the Fifth Circuit held that an applicant who was disqualified from performing firefighting jobs based on mild form of hemophilia was not disabled under the ADA, since field of firefighting jobs was too narrow to constitute "class of jobs" under regulation providing that substantial limit on major life activity of working means significant restriction on ability to perform either class of jobs or broad range of jobs.

10. It is undisputed that Haynes does not have an actual impairment that substantially

limits one or more of his major life activities. Plaintiff never claims, nor does the evidence show, that the Fire Department ever inquired into the underlying conditions for which Haynes was prescribed medications. Plaintiff claimed that the City regarded him as "disabled" solely due to the potential side effects of his medications. However, even if the City regarded Plaintiff as experiencing side effects that rose to the level of a "physical or mental impairment," that is only part of the analysis. Not every impairment substantially limits an individual in his major life activities. Thus, under ADA, Plaintiff still had the burden to prove that the potential side effects were such that, if true, would substantially limit one or more of his major life activities.

11. Where, as here, the major life activity is working, Plaintiff must show that the impairment constitutes a significant restriction on ability to perform either a class or broad range of jobs. Plaintiff was only precluded from being a firefighter for the City of Montgomery, which is too narrow a field to show a substantial limitation on the major life activity of working.

12. Haynes claimed that upon being advised of his prescription medications, the City of Montgomery violated ADA by placing him on involuntary leave from his job as firefighter and terminating him approximately fifteen months later. The undisputed facts and the evidence at trial are insufficient to establish a claim of discrimination in violation of ADA, because he never showed that the allegedly perceived impairment would have been a significant restriction on his ability to perform a class or broad range of jobs. The only evidence Plaintiff presented on this element was the testimony of an expert who admitted that she did not review the NFPA standards used by Dr. Turner in his fit for duty exams, did not review the essential job functions of a firefighter, and presupposed the ultimate issue that the City regarded Plaintiff as unable to do any job that involved some degree of danger, to include jobs that involved climbing ladders over 6 feet tall. This testimony was not salient on the issue of whether the potential side effects, if Haynes were truly experiencing

them, would preclude Haynes from working in a class or broad range of jobs.

13. At trial, Plaintiff failed to offer any evidence that the City regarded him as being substantially limited in a major life activity. There was no testimony by the Plaintiff or his witnesses that Plaintiff had any physical or mental limitations. In fact, Plaintiff's trial testimony and all other testimony affirmatively foreclosed his ADA claim by showing that no one considered him limited or impaired because of his prescription medication.

14. The record reflects that Plaintiff was not actually "disabled." Plaintiff testified that since his employment with the City of Montgomery has ended, he is under no medical restrictions and has continued to work. The evidence at trial showed that other firefighters considered Haynes a good firefighter and very physically fit. This testimony is contrary to Haynes' contention that the City regarded him as having an impairment that substantially limited his ability to perform a class or broad range of jobs. Haynes cannot prove that the City so regarded him, because it did not regard him as "disabled" as defined by ADA.

15. Plaintiff testified that he was probably the healthiest firefighter with the Montgomery Fire Department and could perform all of the functions of a firefighter. Plaintiff also called as witnesses multiple other firefighters who testified that Plaintiff was a good firefighter and performed the job duties of a firefighter. The evidence put forth by both parties showed that Plaintiff suffered from no apparent impairment.

16. Chief Jordan testified that he had no knowledge that Plaintiff had been taking similar medications prior to March 2005. Chief Jordan also testified that while he did not understand all of the medications listed by Plaintiff in his March 4th memo, his concerns were (1) that he perceived Plaintiff's memo as a request to be relieved from a job duty, (2) the multiple number of medications that Plaintiff had identified in his memo that he was taking, and (3) the fact that his personal

physician's letter had only identified three medications.

17.     Assuming arguendo that Plaintiff did make a prima facie case by proving all the elements, then under the McDonnell Douglas framework, the burden of production shifts to the defendant who must articulate a legitimate non-discriminatory reason for the challenged employment decision, but the plaintiff then bears the ultimate burden of persuasion that the defendant's proffered reason is a pretext for discrimination. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322 (11th Cir. 1999).

18.     At trial the City gave its legitimate non-discriminatory reasons for its decision to suspend and ultimately terminate Haynes. The City was put on notice of a potentially serious risk to Haynes and the public at large by Haynes' March 2005 memo asking to be relieved from being the primary driver of the fire truck and listing a number of medications he was taking. The City perceived this as notice that Haynes himself felt his medications were compromising his ability to drive, raising a red flag and prompting the City to put Haynes on leave until he was declared fit for duty. The City has a legitimate interest in protecting its firefighters and the public at large from known risks. Plaintiff has shown no evidence that the City's decision to place him on leave was discriminatory. To the contrary, the evidence showed that all unranked firefighters are subject to the same standards that were applied in this case and that many other firefighters have been ordered to submit to fit for duty examinations. When Haynes refused for 15 months to comply with the City's request to have his personal physician work out a way Haynes could be in compliance with the standards, the City had no choice but to deem Haynes as having abandoned his job so they could free up the manpower position to hire another firefighter.

19.     The City has therefore shown legitimate, non-discriminatory reasons for its employment decisions, and the burden shifts to Plaintiff to show pretext. Plaintiff offered no

evidence of pretext, nor did he claim the employment actions were pretextual. Accordingly, Plaintiff's "regarded as" claim must fail under controlling law because he did not prove all of the elements of his claim, or assuming Plaintiff had made a prima facie case with respect to the elements, he failed to show that the City's stated reasons were pretextual. Therefore, as a matter of law, a judgment is due to be entered in favor of the Defendant on all claims because the Plaintiff has not shown that he is entitled to protection under the ADA.

### (2) QUALIFICATION STANDARDS CLAIM

20.     ADA permits an employer to use qualification standards that screen out or tend to screen out individuals with a disability where it is shown that the standards are job-related and consistent with business necessity. At trial, the Defendant showed the business necessity of mitigating the safety risk to the firefighters and the public at large. Further, the standards employed by the City are narrowly tailored to the essential job functions and incumbent dangers of firefighting. Plaintiff did not claim or prove that the NFPA standards were not related to the job of firefighting. Thus Defendant has shown that the qualification standards used by the City of Montgomery for firefighters are job related and consistent with business necessity.

21.     The ADA does not require employers make exceptions for an employee when doing so could place the safety of that employee and others at risk. Nor does the ADA require an employer to take a chance that an individual is fit for duty when medical or scientific studies have already determined that a firefighter on the same medications is not fit for duty. A lack of unfortunate incidents in the past is not sufficient to show that a qualification standard is not a job necessity.

22.     The jury found that the medical examination was job related and consistent with business necessity, but found that the qualification standard used in the medical examination was

not. Logically, if the medical examination is job related and consistent with business necessity, the qualification standard upon which the examination is based must also be job related and consistent with business necessity. The two are inexorably intertwined.

23. Further, Plaintiff has argued only that the standards do not supersede the ADA, but has produced no evidence or authority that rebuts Defendant's position that its standards are job-related and consistent with business necessity. Defendant has never contended that the standards supersede ADA but that ADA permits the City to use qualification standards. It is uncontested that the City's standards do, in fact, screen out individuals with disabilities, as well as individuals with certain impairments that do not rise to the level of "disabilities" as that term is defined under ADA. However, the City has shown that the application of these standards are job-related and consistent with business necessity and that performance of the job cannot be accomplished by reasonable accommodation – which is a defense under 42 U.S.C. § 12113. Plaintiff never argued or submitted evidence that the standards used by the City were not job related or consistent with business necessity.

24. Chief Jordan testified that under his administration, as well as previous administrations, firefighters for the City of Montgomery have been required to meet the medical standards set out in Chapter 6 for new hires and Chapter 9 for incumbent employees of NFPA 1582. The NFPA standards are industry specific and developed by an association of professionals that address the physical, physiological, intellectual and psychological demands of the occupation of firefighting. The ADA does not require employers make exceptions for an employee when doing so could place the safety of that employee and others at risk. Nor does the ADA require an employer to take a chance that an individual is fit for duty when medical or scientific studies have already determined that a firefighter on the same medications is not fit for duty. The standard itself

represents the findings of professional experts that these conditions are dangerous to firefighters and the City is allowed to rely on these findings, just as it is allowed to rely on the professional findings of a medical doctor, like Dr. Turner.

25. The qualification standards are job related and consistent with business necessity is a defense to Plaintiff's discrimination claim. The City applied its medical qualification standards consistently to all firefighters, as can be seen by the fit for duty evaluations of other firefighters that were put into evidence. If anything, Plaintiff received more leeway than other in that the City kept him on the payroll for over a year and tried to assist him in getting his medication issues resolved so that he could return to work fit for duty.

26. Because the City has shown its application of its qualification standards are job related and consistent with business necessity, Plaintiff's "qualification standards" claim fails under controlling law, and therefore, as a matter of law, a judgment is due to be entered in favor of the Defendant on this claim.

### (3) BURDEN SHIFTING ANALYSIS

27. Assuming *arguendo* that Plaintiff did make a prima facie case by proving all the elements, then under the McDonnell Douglas framework, the burden of production shifts to the defendant who must articulate a legitimate non-discriminatory reason for the challenged employment decision, but the plaintiff then bears the ultimate burden of persuasion that the defendant's proffered reason is a pretext for discrimination. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322 (11th Cir. 1999).

28. At trial the City gave its legitimate non-discriminatory reasons for it decision to suspend and ultimately terminate Haynes. The City was put on notice of a potentially serious risk to Haynes and the public at large by Haynes' March 2005 memo wherein he asked to be relieved from

driving the fire truck and listing a number of medications he was taking. The City perceived this as notice that Haynes himself felt his medications were compromising his ability to drive, raising a red flag and prompting the City to put Haynes on leave until he was declared fit for duty. The City has a legitimate interest in protecting its firefighters and the public at large from known risks. Plaintiff has shown no evidence that the City's decision to place him on leave was discriminatory. To the contrary, the evidence showed that all unranked firefighters are subject to the same standards that were applied in this case and that many other firefighters have been ordered to submit to fit for duty examinations. When Haynes refused for 15 months to comply with the City's request to have his personal physician work out a way Haynes could be in compliance with the standards, the City had no choice but to deem Haynes as having abandoned his job so they could free up the manpower position to hire another firefighter.

29.     The City has therefore shown legitimate, non-discriminatory reasons for its employment decisions, and the burden shifts to Plaintiff to show pretext. Plaintiff offered no evidence of pretext, nor did he claim the employment actions were pretextual. Accordingly, Plaintiff's "regarded as" claim must fail under controlling law because he did not prove all of the elements of his claim, or assuming Plaintiff had made a prima facie case with respect to the elements, he failed to show that the City's stated reasons were pretextual. Therefore, as a matter of law, a judgment is due to be entered in favor of the Defendant on all claims because the Plaintiff has not shown that he is entitled to protection under the ADA.

## B. JURY AWARD EXCESSIVE

30.     The jury's award of a total of $360,000 in damages was excessive and not supported by the evidence presented at trial. A court can order a new trial or a remittitur when a damage award is not justified by the evidence. *Frederick v. Kirby Tankships Inc.*, 205 F.3d 1277, 1284 (11th Cir.

2000). Indeed, "all damage awards [must] be supported by substantial evidence." *Hughes v. Regents of University of Colorado*, 967 F. Supp. 431, 437 (D. Col. 1996). Additionally, "whether a jury award is excessive is a question of law" to be decided by the Court. *Saleh v. Upadhyay*, 2001 WL 585085 (4th Cir. 2001).

31.    If the Court considers this damage award excessive, it has discretion to offer a remittitur, requiring the Plaintiff to choose between the reduction of an excessive verdict and a new trial. *Moses v. K-Mart Corp.*, 905 F. Supp. 1054, 1057 (S.D. Fla. 1995) *aff'd by* 119 F.3d 10 (11th Cir. 1997); *see also Johansen v Combustion Eng'g*, 170 F.3d 1320, 1328 (11th Cir. 1999). If the Plaintiff refuses the remittitur, the court must grant the new trial. *Copley,* 97 F. Supp.2d at 1168. A careful review of the evidence and a comparison of damages awarded in similar cases clearly show that the damages awarded to Plaintiff were grossly excessive and not supported by the evidence.

32.    The Plaintiff has erroneously contended throughout this case and the trial that it was the City's responsibility to rehabilitate Plaintiff through Dr. Turner so Plaintiff could return to work as a Montgomery firefighter. The Fire Department administration determined that Plaintiff was not fit for duty and informed Plaintiff of its reasons and what needed to be done before Plaintiff could return to work. The keys were always in Plaintiff's proverbial hand, yet Plaintiff did not make reasonable efforts to return to work. The City is entitled to a reduction in the back pay award to March 2005, but at the latest August 2005, when Plaintiff's counsel was advised in writing what needed to occur before Haynes could be returned to work.

### (1) BACK PAY

33.    There was no legally sufficient evidence to support the jury's verdict as to the "regarded as" claim or to refute the business necessity or job-relatedness of the City's qualification standards for firefighters. Since he was placed on leave in 2005, Plaintiff has known what he needed

to do if he wanted to return to work as a firefighter, but has steadfastly refused to do so.

34.     The award of economic damages in the amount of $90,000 is contrary to the great weight of the evidence and clearly beyond the maximum possible award supported by the evidence in the record. *Warren v. Ford Motor Credit Co.*, 693 F.2d 1373 (11th Cir. 1982) (standard for determining excessiveness looks to whether the award "exceeds the maximum limit of a reasonable range within which the jury may properly operate").

35.     Plaintiff's own testimony established that he failed to mitigate his damages. While Plaintiff was told that he could not return to work as a firefighter until his medication issues were resolved and was cleared for duty by Dr. Turner, Plaintiff made no effort to do so. Plaintiff's fit for duty examination was completed by Dr. Turner on March 31, 2005. At trial, Chief Jordan and Chief C. E. Walker testified that they thought that Plaintiff would quickly resolve the matter regarding prescription medications and return to work quickly.

36.     Plaintiff chose never to follow the administration's directive to get his doctor in touch with the City doctor so that he could be returned to work. By doing so, Plaintiff was building the damages and attorneys fees. "A Title VII plaintiff can recover back pay only for the period that plaintiff is available and willing to accept substantially equivalent employment elsewhere; courts excluded periods where a plaintiff is unavailable to work…from a back pay award." *Lathem v. Dept. of Children & Youth Servs.*, 172 F.3d 786, 793094 (11th Cir. 1999). Although he testified that fighting fires is all he has ever known or wanted, Plaintiff never applied for a firefighting position with any other department. Thus, Plaintiff was effectively unavailable and unwilling to accept substantially equivalent employment and he should not be entitled to back pay. Under federal law, if "an employer proves that the employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable work." *Weaver v. Casa*

*Gallardo, Inc,* 922 F.2d. 1515, 1527 (11th Cir. 1991) (*abrogated by statute on other grounds*).

      37.    Also, Plaintiff was represented by counsel as early as approximately three months after he was put on leave. Plaintiff's counsel was advised in writing as early as August 2005 of the reasons Plaintiff had been put on leave and what Plaintiff needed to do in order to return to work. *(Defendant's Trial Exhibit 5).* As late as May 2006, Defendant advised Plaintiff that he needed to get his medication issue resolved. (*Defendant's Trial Exhibit 9*). Defendant attempted to help Plaintiff but Plaintiff did nothing to help himself. Again, Plaintiff ignored the City's request.

      38.    The City went to extraordinary lengths to try and help Plaintiff by trying to collect all of the medical records to submit to Dr. Turner for further review of his prescriptions. *(Defendant's Trial Exhibit 5 and Plaintiff's Trial Exhibit 31).* On August 9, 2005, Plaintiff's counsel returned the medical releases signed by Plaintiff on August 8, 2005. *(Plaintiff's Trial Exhibit 31).* The releases are very specific regarding their intent. *(Plaintiff's Trial Exhibit 31).* The Plaintiff has erroneously contended throughout this case and at trial that it was the City's responsibility to rehabilitate Plaintiff to return him to work as a firefighter but has submitted no authority that claim.

      39.    At trial Plaintiff testified that his memo was not written to request to be relieved from driving the truck but in response to the administration's request that he advise them of his medications. Notwithstanding the plain meaning of the memo, Plaintiff at least had knowledge of how the City understood the memo. Plaintiff did not make reasonable efforts to return to his job as a firefighter. Therefore, the City is entitled to a reduction in the back pay award to March 2005, and at the latest August 2005, when Plaintiff's attorney was given written notice of how his client could return to work.

### (2) EMOTIONAL PAIN AND MENTAL ANGUISH

      40.    For the same reasons stated above, the $270,000 award for Plaintiff's emotional

distress also bears no relation to the evidence and greatly exceeds the upper limit that the jury could reasonably find. *Copley*, 97 F. Supp.2d at 1168 (holding that $150,000 "may be viewed as a benchmark figure, above which awards of compensatory damages for mental anguish become suspect").

41.  To determine whether a damage award is not supported by the evidence, and, therefore, excessive, a court should consider the size of the award, the relationship between the award and the evidence presented at trial and damages awarded in similar cases. *Copley*, 97 F.Supp.2d at 1172; *see also Wulf*, 883 F.2d at 875 (in determining whether damages award is excessive, courts should compare damages award to damages awarded in similar cases.)

42.  "Excessiveness refers not merely to the amount of the verdict but to whether, in light of all the facts and circumstances, the verdict appears to have been the product of passion, prejudice, mistake or consideration of improper factors rather than a measured assessment of the degree of injury suffered by the Plaintiff." *Moss v. Stockard*, 580 A.2d 1011, 1035 (D.C. Cir. 1990). "[I]f it should clearly appear that the jury has committed a gross error, or has acted from improper motives, or has given damages excessive in relation to the person or the injury, it is as much the duty of the court to interfere, to prevent the wrong, as in any other case." *Louison v. Crockett*, 546 A.2d 400, 406 (D.C. Cir. 1988).

43.  Based on the evidence, an award of $270,000 is clearly excessive and should be vacated, or in the very least remitted.

### C. IMPROPER ARGUMENT IN CLOSING

44.  Plaintiff's counsel made improper allegations in closing remarks inferring that Captain B.S. Hackett had some animosity toward Eddie Haynes. In effect, Plaintiff's counsel argued in closing that Captain Hackett "had it out" for Eddie Haynes, despite there having been no evidence

on this point. Although counsel for the City objected, the prejudicial effect of the improper and false allegation made by Plaintiff's counsel could not be cured by the Court sustaining the objection and is grounds alone for a new trial.

45. Previously, Plaintiff had submitted as a proposed trial exhibit, an undated memo from Eddie Haynes to Sgt. Hartwell for "Character Commits" allegedly regarding an incident that Haynes said occurred in September 2004. Defendant objected to the exhibit and the Court excluded the exhibit from evidence. During the hearing on evidentiary objections, Plaintiff 's counsel suggested to the Court that the memo from Haynes to Hartwell would help the jury understand why Hackett wrote the memo requesting that Haynes be reassigned to another shift so that he would not have to be the primary driver for Engine 14. Other than Plaintiff's counsel's interpretation of this exhibit, there has been absolutely nothing in this case to suggest that Captain Hackett had any ill will toward Eddie Haynes. In fact, Haynes' declaration submitted with the response to summary judgment suggests that Hackett stood up for Haynes with the Fire Department administration.

46. Although not in evidence, Plaintiff's counsel argued in closing arguments that Hackett had it out for Haynes. Although counsel for the City objected, the prejudicial effect of the improper and false allegation made by Plaintiff's counsel could not be cured by the Court sustaining the objection. Counsel's conduct is grounds for a new trial.

### D. ERRONEOUS JURY INSTRUCTIONS

47. It is well established under the law that erroneous jury instructions can provide grounds for a new trial. *Goodgame v. American Cast Iron Pipe Co.,* 75 F. 3d 1516 (11th Cir. 1996) ("A new trial is the remedy of this court generally orders when it reverses based on incorrect jury instructions"). Erroneous jury instructions will warrant a new trial if the jury was misled about the correct legal standard or was otherwise inadequately informed regarding the controlling law. *See*

*Broaddus v. Florida Power Corp.,* 145 F. 3d 1283, 1288 (11th Cir. 1998).

48.     In this case, Defendant objected to a number of modifications to pattern jury instructions that had been made by the Court, for the most part taken from Plaintiff's proposed instructions. Defendant objected to the Court's italicization of certain words that were not italicized in the pattern instructions and which tended to emphasize a distinction that was not emphasized in the original to Defendant's prejudice.

49.     Defendant also objected to the addition of language that "proof of either is enough to establish that Mr. Haynes was perceived as having a substantial limitation in the major life activity of working," and that "An innocent misperception based on nothing more than a mistake of fact as to the severity, or even the existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability" where there was no reason to add the language and the language favored the Plaintiff and prejudiced the Defendant.

50.     Defendant also objected to the addition of a paragraph concerning the reasonableness of relying on a physician's opinion, including a sentence that said "In other words, unreasonable reliance on a physician's opinion can be sufficient to demonstrate that discrimination – that is, the perception of a disability – was a substantial and motivating factor for the City of Montgomery's employment actions with respect to Mr. Haynes" because it was based on a 6th Circuit case and unduly emphasized a position in Plaintiff's favor to the prejudice of Defendant.

51.     These instructions were given over Defendant's objections, prejudicing Defendant because of the likelihood that the jury would be misled or persuaded in favor of the Plaintiff, and Defendant is entitled to a new trial.

## IV. REMITTITUR

52.     Courts in the Eleventh Circuit have repeatedly recognized that remittitur is

particularly appropriate where there is a large, intangible damage verdict, like that present here, that primarily compensates the plaintiff for pain and suffering. In *Copley*, this Court explained that while in employment cases, the Eleventh Circuit has approved awards for mental anguish or emotional distress as high as $150,000. It is very rare, however, for any award of non-economic compensatory damages above that amount to stand." *Copley*, 97 F. Supp.2d at 1172. In *Copley*, the plaintiff claimed that he was discriminatorily terminated due to his ancestry and national origin. The jury returned a verdict in favor of the plaintiff and awarded him $479,692.00 for emotional pain and mental anguish and $1,000,000 in punitive damages. *Copley,* 97 F. Supp.2d at 1166, 1171. After considering the evidence, this Court concluded that while the plaintiff no doubt suffered severe emotional distress as a result of his termination, the evidence did not reflect any type of extraordinary psychological injury to justify an award of nearly $500,000. *Id*. at 1172. Accordingly, this Court reduced plaintiff's award for mental pain and suffering by $379,692. *Id.* at 1172.

53.     Likewise, the evidence in this case simply does not support the jury's award of $270,000 in damages for emotional distress and mental anguish. Unlike Copley, Haynes refused to comply with the request of his employer, which could have ended this matter without the stress and expense of litigation three years ago. Defendant's request to Plaintiff regarding resolution of his medication issue was not actionable under ADA. Without proof of an unlawful or otherwise improper request by Defendant employer, Plaintiff should have complied with the request of Defendant. Refusal to do so resulted in the failure of Plaintiff to mitigate his damages. Plaintiff should not be entitled to damages for pain and suffering he could have reduced or abated.

54.     Plaintiff failed to produce any evidence that would support an award of damages well in excess of other damage awards in the Eleventh Circuit for mental anguish and emotional distress.

Remittitur of the damages awarded by the jury for emotional pain and suffering is proper, or in the alternative, the Court should grant a new trial.

## V. CONCLUSION

For the reasons set forth above, this Court should enter judgment in Defendant's favor as a matter of law, or in the alternative should grant Defendant a new trial or remittitur of the damages awarded by the jury.

Respectfully submitted this 9th day of May, 2008.

/s/ Kimberly O. Fehl                .
Kimberly O. Fehl (FEH001)
Allison H. Highley (HIG024)
Attorneys for City of Montgomery

OF COUNSEL:
City of Montgomery
Legal Department
Post Office Box 1111
Montgomery, AL 36101-1111
(334) 241-2050 Telephone
(334) 241-2310 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that foregoing has been served upon the following by electronic filing and notification through CM/ECF with United States District Court Middle District of Alabama on this 9th day of May, 2008:

Gerald L. Miller, Esq.
Keith Brashiers, Esq.
REDDEN, MILLS, & CLARK
940 Financial Center
505 North 20th Street
Birmingham, AL  35203

/s/Kimberly O. Fehl                .
Of Counsel