**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **EDDIE J. HAYNES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. 2:06-cv-1093-WKW** |
| | ) |
| **CITY OF MONTGOMERY, ALABAMA,** | ) |
| | ) |
| **Defendant.** | ) |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW**</u>

Defendant City of Montgomery ("the City") submits the following Memorandum of Law in

Support of Defendant's Renewed Motion for Judgment as a Matter of Law.

### I. INTRODUCTION

1.       Plaintiff Eddie Hayne ("Haynes") has alleged that the City violated the Americans

with Disabilities Act, 42 U.S.C. §12112, *et. seq,* ("ADA") perceived him as disabled based on the

potential side effects of his medications. On March 27, 2008, the jury returned a verdict in Plaintiff's

favor on his "regarded as" and "qualification standards" claims and awarded Plaintiff $90,000.00 in

damages for back pay and $270,000.00 for damages for emotional pain and mental suffering.

Defendant has filed herewith a Renewed Motion for Judgment as a Matter of Law and incorporates

herein by reference the evidence, legal authority and argument contained therein.

### II. STANDARD OF REVIEW

2.       Fed. R. Civ. P. 50 governs motions for judgment as a matter of law in jury trials. This

rule allows the trial court to remove issues from the jury's consideration "when the facts are

sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440,

1

120 S.Ct. 1011, 1016-17, 145 L.Ed.2d 958 (2000). Judgment as a matter of law after the verdict "may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 739 (11th Cir.1995).

3.      There was no legally sufficient evidentiary basis for a reasonable jury to find for Haynes on the issues presented. Therefore, because Plaintiff's claims cannot succeed under controlling law, a judgment is due to be entered in favor of the City as a matter of law.

4.      Under Rule 50(b), where the Court does not grant a motion for judgment as a matter of law made at the close of all evidence, it is deemed to have submitted the action to the jury subject to the Court's later deciding the legal questions raised by the motion. Fed. R. Civ. Proc. 50(b). The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment and may join a Rule 59 motion for new trial. *Id.* Defendants moved for judgment as a matter of law at the conclusion of both Plaintiff's case and the close of all evidence. The Court did not grant either motion.

5.      As a jury verdict was returned in this case, the Court may now *inter alia* direct entry of judgment as a matter of law or order a new trial. Accordingly, the City respectfully joins its Motion for New Trial or Remittitur, filed separately herein, as an alternative request for relief as permitted by Fed. R. Civ. P. 50(b).

## III. GROUNDS

6.      Defendant submits that there was no legally sufficient evidentiary basis for a reasonable jury to find for Haynes on the issues presented, and states the following grounds.

## A. "REGARDED AS" CLAIM

2

7.    Under the ADA "disability" is a term of art, defined with respect to an individual as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual … or being regarded as having such an impairment." 42 U.S.C. § 12102(2). Thus, an individual seeking to state a claim under the ADA "must have an actual disability … or be regarded as having one." *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 478, 119 S.Ct. 2139, 2144 (1999). Thus, Plaintiff had the burden to prove that (1) the City regarded him (2) as having an impairment (3) that substantially limits one or more of his major life activities. If, as here, Plaintiff cannot prove all three elements, then his "regarded as" claim must fail as a matter of law.

8.    <u>Plaintiff's Alleged Impairment Does Not Substantially Limit Major Life Functions</u>. It is useful to begin with the exact nature of the alleged impairment. It is undisputed that Haynes does not have an actual impairment that substantially limits one or more of his major life activities. Plaintiff never claims, nor does the evidence show, that the Fire Department ever inquired into the underlying conditions for which Haynes was prescribed medications. Plaintiff claimed that the City regarded him as "disabled" solely due to the potential side effects of his medications.

9.    However, even if the City regarded Plaintiff as experiencing side effects that rose to the level of a "physical or mental impairment," that is only part of the analysis. Not every impairment substantially limits an individual in his major life activities. The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual. 29 C.F.R. § 1630.2(j) (App.).  *See also O'Neal v. Atlanta Gas and Light Co*., 968 F.Supp. 721, (S. D. Ga. 1997) *affirmed* 122 F.3d 1079 (A former employee failed to establish that his nerve problem or stress disorder substantially limited major life activity at time of his discharge and, therefore, failed

to show that he had "disability" within meaning of ADA; former employee did not allege that he was unable to care for himself or that he was unable to perform any physical task, former employee conceded that he had been able to continue working as service technician, only difficulty former employee had experienced with his job had been working "on call" shifts, and former employee did not identify any class of jobs that his alleged impairment had restricted his ability to perform.); *Boutin v. Home Depot U.S.A.*, Inc., D.Mass.2007, 490 F.Supp.2d 98 (Employee with depression and anxiety disorder failed to establish that he was "substantially limited" in a "major life activity" so as to satisfy ADA definition of "disability"; at most, employee felt a diminished inclination or ability to socialize as a result of his depression, but those effects were "intermittent."); *Parker v. City of Williamsport*, M.D.Pa.2005, 406 F.Supp.2d 534 (Terminated firefighter was not substantially impaired in major life activity of working, so as to establish disabled status under ADA as required for suit claiming that termination violated ADA, when only impairment was occasional panic attack.). Thus, under ADA, Plaintiff still had the burden to prove that the potential side effects were such that, if true, would substantially limit one or more of his major life activities.

10.    Where, as here, the major life activity is working, Plaintiff must show that the impairment constitutes a significant restriction on ability to perform either a class or broad range of jobs. In *Collado v. United Parcel Service, Co*., 419 F.3d 1143 (11th Cir. 2005), the Eleventh Circuit held:

> Being "regarded as unable to perform only a particular job," however, "is insufficient, as a matter of law, to prove that [the plaintiff] is regarded as substantially limited in the major life activity of working." *Murphy v. United Parcel Serv.,* 527 U.S. 516, 525, 119 S.Ct. 2133, 2139, 144 L.Ed.2d 484 (1999). Collado had to prove that UPS considered him "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i); *see also Cash,* 231 F.3d at 1306. "The

4

> inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. Thus, an impairment must ... be perceived to preclude [ ] an individual from more than one type of job, even if the job foreclosed is the individual's job of choice." *Rossbach v. City of Miami,* 371 F.3d 1354, 1359 (11th Cir.2004) (citation omitted).

Likewise, in *Bridges v. City of Bossier,* 92 F.3d 329 (5ᵗʰ 1996) the Fifth Circuit affirmed the District Court in granting summary judgment for the City and held that an applicant who was disqualified from performing firefighting jobs based on mild form of hemophilia was not disabled under the ADA, since field of firefighting jobs was too narrow to constitute "class of jobs" under regulation providing that substantial limit on major life activity of working means significant restriction on ability to perform either class of jobs or broad range of jobs. The evidence shows that Plaintiff was only precluded from being a firefighter for the City of Montgomery, which is too narrow a field to show a substantial limitation on the major life activity of working.

      11.    <u>Firefighting is Not a Class or Broad Range of Jobs</u>. Firefighting is not a class or broad range of jobs under ADA. *Bridges v. City of Bossier*, 92 F. 3d 329 (5th Cir. 1996) *cert. denied* 519 U.S. 1093, 117 S. Ct. 770, 136 L.Ed.2d 715 ("An applicant was not disabled under the ADA, since field of firefighting jobs was too narrow to constitute "class of jobs" under regulation providing that substantial limit on major life activity of working means significant restriction on ability to perform either class of jobs or broad range of jobs."). *See also Equal Employment Opportunity Commission v. Schneider National, Inc*., 481 F.3d 507 (7th Cir. 2007) (driving a truck for truck companies that had safety standards higher for drivers than the minimum required by the federal government was too esoteric a capability to be judged a "major" life activity under ADA and employer did not violate ADA when discharged driver employee).

At trial, Plaintiff produced no evidence that the City perceived him as unable to do any job. The City did not even perceive him as unable to do his own job, or Haynes would have been terminated right away. Plaintiff was put on leave to get his prescription medication issue resolved before being able to return to work as a firefighter for the City of Montgomery. A single job cannot qualify as a class or broad range of jobs. Thus, Plaintiff has failed to meet the burden of proof for his claim under ADA that the City regarded Plaintiff as "disabled."

The only testimony submitted by Plaintiff related to whether the City perceived him as disabled and unable to work a broad range of jobs was by Plaintiff's expert, Dr. Mary House Kessler. The only evidence Plaintiff presented on this element was the testimony of an expert who admitted that she did not review the NFPA standards used by Dr. Turner in his fit for duty exams, did not review the essential job functions of a firefighter, and presupposed the ultimate issue that the City regarded Plaintiff as unable to do any job that involved some degree of danger, to include jobs that involved climbing ladders over 6 feet tall. This testimony was not salient on the issue of whether the potential side effects, if Haynes were truly experiencing them, would preclude Haynes from working in a class or broad range of jobs.

12.    <u>The City had No Reason to Regard Plaintiff as "Disabled" under ADA</u>. The record reflects that Plaintiff was not actually "disabled." Plaintiff testified that since his employment with the City of Montgomery has ended, he is under no medical restrictions and has continued to work. The evidence at trial showed that other firefighters considered Haynes a good firefighter and very physically fit. This testimony is contrary to Haynes' contention that the City regarded him as having an impairment that substantially limited his ability to perform a class or broad range of jobs.

13.    Also, Chief M. Jordan, Assistant Chief C.E. Walker and District Chief B.S. Hackett

6

testified that Plaintiff was a good firefighter.  Chief Jordan testified that he did not think that Plaintiff was disabled.  After meeting with Plaintiff regarding his March 4, 2005, Chief Jordan and Chief Walker told Plaintiff he could return to work as a firefighter when he got his medication issue resolved through Dr. Turner.  Chief Jordan and Chief Walker both testified that they thought that Plaintiff would resolve the matter and return to work quickly.  However, Plaintiff *chose* never to follow the administration's directive and was ultimately deemed resigned for job abandonment more than a year later.

14.    There was no testimony to support that Plaintiff suffered an impairment that substantially limited Plaintiff in any way or in Plaintiff's ability to do anything.   Plaintiff and his witnesses testified that he had no limitations and could perform the duties of a firefighter.  Plaintiff testified that he was probably the healthiest firefighter for the City of Montgomery.  Therefore Plaintiff, through his case in chief, foreclosed a valid "regarded as" disabled claim under ADA.

15.    Haynes cannot prove that the City so regarded him, because it did not regard him as "disabled" as defined by ADA.  Therefore, at trial Plaintiff failed to meet his burden to prove that the City violated the ADA. The ADA very specifically defines the elements Plaintiff must prove to show he is protected under that Act, and Plaintiff has failed to prove those elements. There is no legally sufficient evidentiary basis for a reasonable jury to find for the Plaintiff on the issues presented.

16.    <u>Plaintiff Fails Under Burden Shifting Analysis</u>. Assuming arguendo that Plaintiff did make a prima facie case by proving all the elements, then under the McDonnell Douglas framework, the burden of production shifts to the defendant who must articulate a legitimate non-discriminatory reason for the challenged employment decision, but the plaintiff then bears the ultimate burden of

persuasion that the defendant's proffered reason is a pretext for discrimination. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322 (11th Cir. 1999).

17.    At trial the City gave its legitimate non-discriminatory reasons for to Haynes allegation that the City put him on involuntary leave and ultimately terminate Haynes. The City was put on notice of a potentially serious risk to Haynes and the public at large by Haynes' March 2005 memo. The City perceived this as notice that Haynes himself felt his medications were compromising his ability to drive, raising a red flag and prompting the City to put Haynes on leave until he was declared fit for duty.

18.    The City of Montgomery has a legitimate, non-discriminatory reason for its employment decisions here – to minimize the risk firefighters pose to their fellow firefighters and to the public at large. There has been no testimony to suggest that the City of Montgomery perceived Plaintiff as being disabled, mistakenly or not, but Dr. Turner gave his professional medical opinion that there were safety concerns due to Plaintiff's medications, based on his knowledge of NFPA medical standards and the essential job functions of a firefighter.  With that notice, the City is simply unable to overlook Plaintiff's issues if that means risking the life of Plaintiff or others.

19.    Chief Jordan testified that he had no knowledge that Plaintiff had been taking similar medications prior to March 2005.  Chief Jordan also testified that while he did not understand all of the medications listed by Plaintiff in his March 4th memo, his concerns were (1) that he perceived Plaintiff's memo as a request to be relieved from a job duty, (2) the multiple number of medications that Plaintiff had identified in his memo that he was taking, and (3) the fact that his personal physician's letter had only identified three medications.

20.    Once the City gave a non-discriminatory business related reason for its actions, the

8

burden shifted to the Plaintiff to show pretext. Plaintiff provided no evidence to support a finding of pretext. Moreover, Plaintiff's evidence at trial demonstrated that the City was treating Plaintiff the same as other firefighters in requiring him to be medically qualified as a firefighter based on the medical standards in NFPA.

21.     Plaintiff has shown no evidence that the City's decision to place him on leave was discriminatory. To the contrary, the evidence showed that all unranked firefighters are subject to the same standards that were applied in this case and that many other firefighters have been ordered to submit to fit for duty examinations. When Haynes refused for 15 months to comply with the City's request to have his personal physician work out a way Haynes could be in compliance with the standards, the City had no choice but to deem Haynes as having abandoned his job so they could free up the manpower position to hire another firefighter.

22.     The City has therefore shown legitimate, non-discriminatory reasons for its employment decisions, and the burden shifts to Plaintiff to show pretext. Haynes submitted nothing to indicate that he was disabled or that the City did or had any reason to perceive as having a "disability" as that term is defined under the ADA. Plaintiff offered no evidence of pretext, nor did he claim the employment actions were pretextual. Accordingly, Plaintiff's "regarded as" claim must fail under controlling law because he did not prove all of the elements of his claim. However assuming Plaintiff had submitted evidence to prove his "regarded as" claim, Plaintiff failed to show that the City's stated reasons were pretextual. Therefore, as a matter of law, a judgment is due to be entered in favor of the Defendant on all claims because the Plaintiff has not shown that he is entitled to protection under the ADA.

23.     The City showed at trial the business necessity of mitigating the risk to the

firefighters and the public at large. Thus the City has met its burden and articulated a legitimate non-discriminatory business claim that the City regarded Plaintiff as disabled must fail.

## B. QUALIFICATION STANDARDS CLAIM

24.    ADA permits an employer to use qualification standards that screen out or tend to screen out individuals with a disability where it is shown that the standards are job-related and consistent with business necessity. At trial, the Defendant showed the business necessity of mitigating the safety risk to the firefighters and the public at large. Further, the standards employed by the City are narrowly tailored to the essential functions and incumbent dangers of firefighting. Plaintiff did not claim or prove that the NFPA standards were not related to the job of firefighting. Thus Defendant has shown that the qualification standards used by the City of Montgomery for firefighters are job related and consistent with business necessity.

25.    The ADA does not require employers make exceptions for an employee when doing so could place the safety of that employee and others at risk.  Nor does the ADA require an employer to take a chance that an individual is fit for duty when medical or scientific studies have already determined that a firefighter on the same medications is not fit for duty. A lack of unfortunate incidents in the past is not sufficient to show that a qualification standard is not a job necessity.

26.    The City's Standards are Job Related and Consistent with Business Necessity. Chief M. Jordan testified that under his administration, as well as previous administrations, firefighters for the City of Montgomery are required to meet the medical standards set out in Chapter 6 for new hires and Chapter 9 for incumbent employees of NFPA 1582. The prohibition under those standards of certain prescription medications is job related and consistent with business necessity because of

10

the dangers inherent in and unique to firefighting.

27.    The NFPA is the preeminent fire code and standards organization in the United States and NFPA Document 1582 is "a standard that has been adopted by fire fighting organizations throughout the United States." *Sicard v. Sioux City*, 950 F.Supp. 1420, 1425 (N.D.Iowa 1996).

> The National Fire Protection Association [NFPA] is a non-profit organization comprised of fire fighting professionals, occupational specialists, engineers, physicians, and inspectors. The NFPA develops guidelines or standards on numerous topics ranging from building codes and boilers to hazardous materials and protective clothing. The NFPA has developed physical standards for the appointment of firefighters. These standards were the product of consultation between physicians and occupational specialists experienced with the demands and hazards of firefighting.... Many of the standards developed by the NFPA are adopted by [the Occupational Safety and Health Administration] and state agencies….*Nagel v. Boston Fire Dept*, 18 M.D.L.R. 221, 222 (Oct. 18, 1996).  See *Miller v. Sioux Gateway Fire Dept.* 497 N.W. 2d 838, 842 (Iowa 1993).

*Carleton v. Commonwealth*, 858 N.E. 2d 258 (Mass. 2006)

28.    The ADA does not require the City to assume the risk of harm that could occur if Plaintiff suffered side effects during an emergency. Put another way, the City is not required to place Plaintiff's desire to work as a firefighter above concerns for Plaintiff or the public.  The ADA provides that:

> (a) In general
> It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.
>
> (b) Qualification standards
> The term "qualification standards" may include a requirement that an

11

individual shall not pose a direct threat to the health or safety of other individuals in the workplace.

42 U.S.C.A. § 12113.

29.     <u>Standards were Applied in Non-Discriminatory Way, Tailored to Job Functions</u>. The jury found that the medical examination was job related and consistent with business necessity, but found that the qualification standard used in the medical examination was not. Logically, if the medical examination is job related and consistent with business necessity, the qualification standard upon which the examination is based must also be job related and consistent with business necessity. The two are inexorably intertwined. The medical assessment of Plaintiff relied on by Defendant was provided by a licensed physician based on his knowledge of the medical standards for firefighters set out by the NFPA.  Plaintiff submitted no evidence why Dr. Turner's assessment of Plaintiff was improper, unlawful or incomplete.

30.     Dr. Turner testified that on March 24, 2005, Haynes went to him without medication information.  Haynes also told Dr. Turner that he did not want to reveal reasons at that time for all of his medications and wanted it confidential with his doctors. However Dr. Turner required Haynes to provide medication information prior to his examination on March 31, 2005.   On March 31, 2005, Plaintiff went back to Dr. Turner and told him that he only took Lexapro while on duty.  Dr. Turner testified that made no sense that he would not need his meds on duty rather than off duty.

31.     <u>Plaintiff Did Receive an Individual Assessment</u>. Additionally, Plaintiff alleged that the City did not provide Plaintiff with an individual assessment however Plaintiff has provided no evidence to support such a claim.  In fact, the evidence demonstrates the opposite.  There was no medical testimony to refute Dr. Turner's assessment which was based on medical education, knowledge of NFPA standards and the essential functions of a firefighter or testimony to show that

12

Dr. Turner's assessment was otherwise improper, unlawful or incomplete.

32.    Dr. Turner determined that Plaintiff was physically fit for duty but there were safety issues for Plaintiff driving the truck and working on the fire line while under the influence of his current prescribed medications.  At trial Plaintiff's counsel made quite an issue with Dr. Turner that Lexapro was not listed in NFPA standards.   Dr. Turner testified that based on his knowledge of NFPA standards and his assessment of Mr. Haynes,  Lexapro caused a concern under NFPA standard 9.16 for essential functions 5, 8, 11 & 13.  Dr. Turner determined that Plaintiff should not be on the fireline or driving while on the medication.  Dr. Turner relied on Chapter 9 of NFPA 1582 that gives the fire department physician detailed standards for determining fitness for duty and provides:

> 9.16 Medications. Physician Guidance: The medications in this section are listed because of noteworthy side effects that may interfere with essential job tasks.
> 9.16.1 Medications shall include prescribed and over-the-counter medications.
> 9.16.2 For potential interference with essential job tasks, the member shall be evaluated for the following:
> (1) Full dose anticoagulation due to the risk of internal bleeding from trauma with potential for significant internal bleeding while performing essential job task 8. If significant internal bleeding occurs it can result in life-threatening sudden incapacitation.
> (2) Narcotics. Members cannot safely perform essential job tasks, 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 due to alteration in mental status and other neurologic functions. Muscle relaxants can interfere with a member's ability to safely perform essential job tasks 8, 10, and 11.
> (3) Sedatives and hypnotics prevent the safe performance of essential job tasks 8, 10, and 11.
> (4) *Psychoactive agents can interfere with a member's ability to safely perform essential job tasks 5, 8, 11, and 13 due to increased risk of heat stress movement disorders, and somnolence.*
> (5) Anti-hypertensive agents (e.g. beta-blockers and high-dose diuretics). Some agents prevent the safe performance of essential job tasks 5 and 8 due to risk for dehydration, electrolyte disorders, lethargy, and disequilibrium. Evaluate for ability to safely perform

> essential job tasks 5 and 8.
> Other medications that can prevent the safe performance of essential
> job tasks 5, 8, 11, and 13 under certain conditions and require careful
> evaluation with specialized annual followup (e.g., MAOIs,
> phenothiazines, anti-cholinergies, tricyclic antidepressants). Evaluate
> for ability to safely perform essential job tasks 5, 8, 11, and 13.

(emphasis added).  The essential job tasks that Dr. Turner referenced in his testimony are found in

Chapter 5, Section 5.1.3.1 of NFPA 1582:

> (5)    Wearing fire protective ensemble that is encapsulating and
> insulated. Wearing this clothing will result in significant fluid loss
> that frequently progresses to clinical dehydration and can elevate core
> temperature to levels exceeding 102.2˚F (39˚C).
> …
> (8)    Climbing ladders, operating from heights, walking or
> crawling in the dark along narrow and uneven surfaces, and operating
> in proximity to electrical power lines and/or other hazards.
> …
> (11)    Critical, time sensitive, complex problem solving during
> physical exertion in stressful, hazardous environments (including hot,
> dark, tightly enclosed spaces), further aggravated by fatigue, flashing
> lights, sirens and other distractions.
> …
> (13)    Functioning as an integral component of a team, where
> sudden incapacitation of a member can result in mission failure or in
> risk of injury or death to civilians or other team members (e.g. two in,
> two out as described in NFPA 1500).

33.    The fact that Dr. Turner considered the Lexapro in disqualifying Plaintiff

demonstrates that an individual assessment of Plaintiff was performed.    As previously stated,

Plaintiff's counsel at trial questioned Dr. Turner specifically about the Lexapro because it not listed

in NFPA standards.   Dr. Turner testified that based on his knowledge of NFPA standards and his

assessment of Mr. Haynes, Lexapro caused a concern under NFPA standard 9.16 for essential

functions 5, 8, 11 & 13. Plaintiff has submitted no testimony or any other evidence to refute Dr.

Turner's assessment.  Neither has Plaintiff submitted anything other than allegations to support that

14

Dr. Turner's assessment was not substantial enough for the purpose it was used for and permitted under ADA.

34.    Dr. Turner was advised by Plaintiff of several more medications than Dr. Palmer addressed in his letter.  Plaintiff provided no testimony of any witness that had the same training as Dr. Turner or that had reviewed the essential functions of a firefighter and NFPA standards.  The fact that Dr. Turner did not determine Mr. Haynes fit for duty even though Dr. Clemmie Palmer wrote letters that said Haynes could work without restriction does not mean that Dr. Turner's assessment was invalid, incomplete or in error.

35.    The City relied on the medical knowledge of Dr. Turner and his knowledge of NFPA standards.  Plaintiff relied on Dr. Palmer who testified at trial that his letters were not based on any additional assessment and that Plaintiff should take his medications at all times to be A+ on the job. However Dr. Palmer testified that Plaintiff would stop by his office and ask him to write letters regarding his use or limited use required in taking his medications.  Dr. Palmer provided a letter dated March 4, 2005; a letter dated April 16, 2005 and June 16, 2005 that were inconsistent with each other.  Dr. Palmer testified that he had not reviewed NFPA standards or the essential functions of a firefighter for the City of Montgomery but wrote the letters in response to Plaintiff's request for them.

36.    Plaintiff Has Not Refuted the City's Evidence. Further, Plaintiff has argued only that the standards screen out or tend to screen out individuals with disabilities, but has produced no evidence or authority that rebuts Defendant's evidence that its standards are job-related and consistent with business necessity.  The City has shown that the application of these standards are job-related and consistent with business necessity and that performance of the job cannot be

accomplished by reasonable accommodation – which is a defense under 42 U.S.C. § 12113. Plaintiff argued that NFPA standards do not supersede ADA but never argued or submitted evidence that the standards used by the City were not job related or consistent with business necessity.   Defendants have never contended that NFPA standard supersede ADA but instead that the ADA permits the City to use qualification standards if job related or consistent with business necessity.

37.    Because the City has shown its application of its qualification standards are job related and consistent with business necessity, Plaintiff's "qualification standards" claim fails under controlling law, and therefore, as a matter of law, a judgment is due to be entered in favor of the Defendant on this claim.

38.    <u>Plaintiff Must Prove He is Not a Direct Threat</u>. The burden of proof is initially on the employee to prove that, as a qualified individual under the ADA, he or she is not a direct threat, either to himself or herself or others. The Eleventh Circuit has held that there are no exceptions to this rule. *Moses v. American Nonwovens, Inc*., 97 F.3d 446 (11th Cir. 1996); *cert. denied* 519 U.S. 1118, 117 S.Ct. 964, 136 L.Ed.2d 849.   Plaintiff failed to meet his burden of proof.  The following evidence was presented at trial:

1.    **March 4, 3005** - Haynes prepares a memo listing the following medications Ibuprofen – 600 mg. daily, Lexapro 10 mg. daily and Gabitril 4 mg. PRN (2-3- times a week).  Haynes stated that he took the following on off days and an as needed bases Hydrocodone 5/500, Diazepam 5 mg., Cyclobenzaprine 10, Skelaxin 800, Meperidine 50 and over the counter Benadryl.  *(Plaintiff's Trial Exhibit 9)*.

Haynes produces a letter from his personal physician, Dr. Clemmie Palmer, with his memo from March 4, that stating that Haynes could work on the meds of Lexapro, Gabitril and Valium. *(Plaintiff's Trial Exhibit 10)*.

**Dr. Palmer testified that he put Haynes on Lexapro in December**

2004.

2.    **April 14, 2005** - Haynes produces another letter from Dr. Palmer stating that Haynes is able to work without taking Valium or Gabitril. *(Plaintiff's Trial Exhibit 21).*

**Dr. Palmer testified at trial that Eddie would come by his office and ask him to prepare the letters but that it was his opinion that Haynes needed to take all meds to be A+ on his job.  Dr. Palmer testified that if Haynes was not on his meds while on duty, he could probably still do a B job.**

3.    **June 16, 2005** - Haynes produces another letter from Dr. Palmer stating that Haynes is able to work on his current medications of Lexapro, Gabitril, Valium and Flexeril.  *(Plaintiff's Trial Exhibit 28).*

**Dr. Palmer testified that he never reviewed the essential functions of a firefighter for the City of Montgomery or NFPA standards.**

39.    The City of Montgomery has not proceeded against Plaintiff arbitrarily, and the City is entitled to determine how much risk is too great for it to be willing to take.  The City relies on the medical requirements provided by NFPA standards tailored for the specific job of firefighting.  The standards are developed by professionals that address the essential functions of a firefighter and applicable medical qualification standards. The decision to impose those medical qualification standards does not establish that the City regards failing candidates as disabled.

40.    By its terms, the ADA allows employers to prefer some physical attributes over others and to establish physical criteria. . . . Accordingly, an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment--such as one's height, build, or singing voice--are preferable to others, just as it is "free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job." *Sutton v. United Air Lines*, 527 U.S. 471, 490-91 (pilot standard requiring 20/100 or better

17

uncorrected vision does not regard failing candidates as disabled). *See also EEOC v. Schneider Nat'l, Inc.*, 481 F.3d 507, 510 (7th Cir. 2007) (truck driver disqualified for fainting disorder was not regarded as disabled, *because an employer "is entitled to determine how much risk is too great for it to be willing to take")* (emphasis added).

41.    The City has reasonably relied on the knowledge of the experts who developed NFPA standards in determining how much risk is too great for the City to take.  The City of Montgomery has determined that the firefighters for the City must meet the medical qualification standards provided by the NFPA. The standards were not meant to assess whether City of Montgomery firefighters are medically qualified to perform other jobs or whether they are substantially limited in any major life activities. The City is permitted under ADA to use such standards because they are closely related to the essential functions of the job and are a business necessity. See *Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999).

42.    Chief Jordan testified that he was shocked by Plaintiff's March 4th memo and concerned about Plaintiff's safety.  Dr. Palmer testified that if Plaintiff was not taking all of his medications then he could not function at an A-plus level, but would only be operating at a B level. Chief Addie testified that it was crucial for every firefighter to be at 100 percent for safety reasons. Plaintiff was physically fit, but his own doctor said he needed to take his medications all of the time. Plaintiff only offered opinion testimony of other firefighters that Plaintiff was a good firefighter and cautious driver of the fire truck.  Thus, if Plaintiff established that he was a qualified individual under the ADA, Plaintiff has not demonstrated that he was not a direct threat, either to himself or others.

## C. MITIGATION

43.     At the conclusion of trial, the jury returned a verdict in Plaintiff's favor on his "regarded as" and "qualification standards" claims, awarding him $90,000.00 in damages for back pay and $270,000.00 for emotional pain and mental suffering.  The jury's award of damages totaling $360,000 was excessive and not supported by the evidence presented at trial.

44.     Since March 2005, Haynes knew exactly what he was required to do to return to work as a firefighter. Defendant has always maintained that Plaintiff initiated the medical inquiry and fit for duty evaluation by requesting to be relieved from the duty of driving the truck.  Chief Jordan and Chief Walker testified that they told Plaintiff that he needed to get his personal physician to contact the City physician to clear up Plaintiff's medication issues so he could return to work as a firefighter.

45.     At trial, Chief Jordan and Chief Walker testified that they thought Plaintiff would go immediately to get the matter resolved so that he could return to work as a Montgomery firefighter. The record reflects that Plaintiff and his attorney chose to ignore the City's request, and by doing so, built damages and unnecessary attorney's fees and expenses. Haynes **chose** not to take advantage of the opportunity to simply follow his employer's directive under the circumstances to eliminate or minimize his damages and should not be rewarded for doing so.

46.     Plaintiff's counsel was advised in writing as early as August 2005 of what and why the City was requesting Plaintiff needed for him return to duty as a firefighter. *(Defendant's Trial Exhibit 5).*  The City was clear to Plaintiff and Plaintiff's counsel of its instructions regarding the prescription medication issue so Plaintiff could return to work.

47.     The City tried to help Plaintiff more than he was willing to help himself by trying to collect all of the medial records to submit to Dr. Turner for further review of his prescriptions.

*(Defendant's Trial Exhibit 5 and Plaintiff's Trial Exhibit 31).*   On August 9, 2005, Plaintiff's counsel returned the medical releases signed by Plaintiff on August 8, 2005.  *(Plaintiff's Trial Exhibit 31).*  The releases are very clear and specific regarding their purpose.  *(Plaintiff's Trial Exhibit 31).*  The Plaintiff has erroneously contended throughout this case and at trial that it was the City's responsibility to rehabilitate Plaintiff to return him to work as a firefighter but has submitted no proof to that claim.

48.    As late as May 2006, the City advised Plaintiff that he needed to get his medication issue resolved.  *(Defendant's Trial Exhibit 9).*  Again, Defendant attempted to help Plaintiff but Plaintiff did nothing to help himself.  Defendant was unable to get all of the records and it was not until trial that Plaintiff identified other prescribing doctors for his March 4th memo, not listed on the medical releases in August 2005.  It has never been the responsibility of the City to get Plaintiff's medication issues resolved.

49.    Plaintiff chose or refused to comply with the request of his employer, Defendant. Without proof of an unlawful or otherwise improper request by Defendant employer, Plaintiff should have cooperated with the request of Defendant.  Failure to do so resulted in the failure of Plaintiff to mitigate damages.

## IV. JUDGMENT AS A MATTER OF LAW

50.    In a case very similar to the instant case, the Eleventh Circuit upheld the District Court from the Southern District of Florida in granting judgment as a matter of law.  In *Collado v. United Parcel Service, Co*., 419 F.3d 1143 (11th Cir. 2005), the District Court set aside a jury verdict in favor of insulin-dependent diabetic delivery driver, and granted judgment as a matter of law (JMOL) for his employer on driver's discrimination and retaliation claims under the ADA

because there was no evidence that UPS regarded Collado as substantially limited from any job other than that of full-time driver at UPS, much less from a class or broad range of jobs.

51.    Collado's claims survived a motion by UPS for summary judgment and the case went to trial. UPS made a motion under Fed. R. Civ. P. 50(a) for judgment as a matter of law at the close of Plaintiff's case. UPS asserted that Collado had failed to make out a prima facie case of discrimination. The trial court initially reserved ruling on the motion but denied it the next day. UPS then presented its defense case, calling several witnesses.  At the close of all the evidence, UPS again moved for judgment as a matter of law under Rule 50(a). The district court reserved ruling on this second Rule 50(a) motion and sent the case to the jury. The jury returned a verdict for Collado in the amount of $316,000 on the ADA discrimination and retaliation claims. It found for UPS on Collado's state-law worker's-compensation retaliation claim. After the verdict, UPS renewed its motion for judgment as a matter of law under Rule 50(b).   It argued that Collado had failed to provide sufficient evidence to support the jury's verdict as to the disability element of the ADA discrimination claim and as to any of the elements of the ADA retaliation claim.

52.    UPS also moved for a new trial and for remittitur. The Court granted Collado's Rule 50(b) motion and entered final judgment for UPS. The Court ruled that Collado had failed to carry his burden of proof on the issue of whether he is disabled, the failure being that he had not identified any "major life activity" that his diabetes limited. In fact, the district court said, Collado's own testimony was that his diabetes did not interfere with any major activity. Thus, "[t]aking Collado at his word," his claim failed.

53.    As in *Collado*, this Plaintiff's claims against the City of Montgomery must fail. Eddie Haynes has failed to show that the City of Montgomery perceived him as "disabled" under

ADA.  The record reflects that neither Plaintiff nor any of his witnesses identified any "major life activity" in which Haynes is substantially limited.  Plaintiff has continued to work since he left the City.  Plaintiff himself said he was probably the healthiest firefighter at the City of Montgomery. Plaintiff also put on testimony that he was involved in the strenuous sport of boxing.

## V. CONCLUSION

54.     There is no proof that the City violated ADA.  Plaintiff was put on leave for the legitimate, non-discriminatory reasons of safety concerns for him and the public – not because the City perceived him as being "disabled."  Plaintiff was not fired but relieved of duty until he could get the prescription medication discrepancy resolved.  Defendant made timely motions for judgment as a matter of law at the close of Plaintiff's evidence and again at close of all evidence. Therefore, there is no reason why Defendant should not be granted Judgment as a Matter of Law nothwithstanding the verdict on Plaintiff's "regarded as" and "qualification standards" claims.

Respectfully submitted this 9th day of May, 2008.

/s/Kimberly O. Fehl
Kimberly O. Fehl (FEH001)
Allison H. Highley (HIG024)
Attorneys for City of Montgomery

OF COUNSEL:
City of Montgomery
Legal Department
Post Office Box 1111
Montgomery, AL 36101-1111
(334) 241-2050 Telephone
(334) 241-2310 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that foregoing has been served upon the following by electronic filing and notification through CM/ECF with United States District Court Middle District of Alabama on this 9th day of May, 2008:

Gerald L. Miller, Esq.
Keith Brashiers, Esq.
REDDEN, MILLS, & CLARK
940 Financial Center
505 North 20th Street
Birmingham, AL  35203

/s/Kimberly O. Fehl
Of Counsel