## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| EDDIE J. HAYNES, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | )CASE NO. 2:06-cv-1093-WKW |
| | ) |
| CITY OF MONTGOMERY, ALABAMA, | ) |
| | ) |
| DEFENDANT. | ) |

### PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S
### POST-TRIAL MOTIONS

The Defendant City of Montgomery has filed both a Renewed Motion for Judgment

as a Matter of Law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure

(Document 79), and a Motion for New Trial or Remittitur under Rule 59 (Document 77).

The two motions make many of the same arguments, so Plaintiff has chosen to address these

arguments in one Response.


### LEGAL STANDARDS

A Rule 50(b) Motion for Judgment as a Matter of Law as to a particular issue should

be granted only when "there is no legally sufficient evidentiary basis for a reasonable jury

to find for [the non-movant] on that issue." Fed. R. Civ. P. 50(a)(1); Wood v. Green, 323

F.3d 1309, 1312 (11th Cir. 2003); Shannon v. BellSouth Telecommunications, Inc., 292

F.3d 712, 715 (11th Cir. 2002). When the merits of the motion turn on the sufficiency of

the evidence, "[t]he Court should review all of the evidence in the record, draw all reasonable inferences in favor of the non-moving party, and disregard all evidence favorable to the moving party that the jury is not required to believe." Akouri v. State of Florida Department of Transportation, 408 F.3d 1338, 1343 (11th Cir. 2005)(citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51 (2000)). See also Russell v. North Broward Hospital, 346 F.3d 1335, 1343 (11th Cir. 2003); Brochau v. City of Riviera Beach, 304 F.3d 1144, 1154 (11th Cir. 2002). It is the task of jury, not the Court, "to weigh conflicting evidence and inferences, and determine the credibility of witnesses." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001)(internal quotation marks omitted). Therefore, "[i]f reasonable jurors could reach different results, [the court] must 'not second-guess the jury or substitute our judgment for [the jury's] judgment.'" Brochau, 304 F.3d at 1155 (quoting Lipphardt, 267 F.3d at 1186).

On the other hand, Rule 59 permits the Court to grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). A judge should grant a motion for a new trial only when "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may have been substantial evidence which would prevent the direction of a verdict." Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984)(internal quotations and punctuation omitted). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted

on evidentiary grounds unless, at a minimum, the verdict is against the great - not merely the greater - weight of the evidence.'" Lipphardt, 267 F.3d at 1187 (quoting Hewitt, 732 F.2d at 1556).

The City has also alternatively moved for remittitur of the jury's damage awards of back pay and emotional distress. A different standard applies to the Court's consideration of this requested relief. "In general, a remittitur order reducing a jury's amount to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1448 (11th Cir. 1985). The Eleventh Circuit has held that "[o]nce a defendant is found liable for the plaintiff's injury, the district court has a great deal of discretion in deciding the level of damages to be awarded." Ferrill v. Parker Group, Inc., 168 F.3d 468, 476 (11th Cir. 1999). "Where the jury's decision has been approved by the trial judge, [the appellate court] will not disturb the award except where [the] verdict is so gross as to be contrary to right reason or to be a clear abuse of discretion." Hatfield v. Anthony Forrest Products Co., 642 F.2d 175, 178 (5th Cir. Unit A April 10, 1981), cited with approval in Agro Air Associates, Inc., v. Houston Casualty Co., 128 F.3d 1452, 1455 n.5 (11th Cir. 1997). Because the jury in this case awarded damages for emotional distress, this Court should be "particularly deferential to the fact finder's determination of compensatory damage awards for intangible, emotional harms because the harm is so 'subjective and evaluating it depends considerably on the demeanor of the witnesses.'" Griffin v. City of

Opa-Locka, 261 F.3d 1295, 1315 (11th Cir. 2001)(quoting Ferrill, 168 F.3d at 476); See also Bogle v. McClure, 332 F.3d 1347, 1359 (11th Cir. 2003).

## "Regarded As" Claim

The City argues in both its Renewed Motion for Judgment as a Matter of Law and its Motion for New Trial that there was no evidence that the City regarded Mr. Haynes as disabled. (See Doc. 79, p. 2-4; Doc. 80, p. 2-7, 20-22; Doc. 77, p. 2; Doc. 78, p. 3-6). The City is plainly mistaken.

The City principally argues that the evidence showed that the City only regarded Mr. Haynes as being unable to perform the job of a Montgomery Firefighter and not unable to work in a class or broad range of jobs. The City, however, ignores the testimony of Dr. Turner, the doctor it relied on to determine whether Mr. Haynes could return to work, that due to the potential side effects of the medications Mr. Haynes was taking for Generalized Anxiety Disorder, he would not have released Mr. Haynes to work in any safety sensitive position. The Plaintiff's vocational expert, Mary House Kessler, testified that, based on that perceived limitation, which restricted Mr. Haynes from working in hazardous conditions, that perceived limitation would foreclose someone with Mr. Haynes' experience and background from access to 182,000 jobs in the state of Alabama, including a broad range of jobs in law enforcement, security guards, EMT, firefighters, construction, masons, and working around hazardous machinery. This testimony is evidence from which the jury could

have found that the City perceived Mr. Haynes, due to the potential side effects from his medications, as being unable to perform a class or broad range of jobs in various classes.

The City argues that it did not perceive Mr. Haynes to be disabled. Once again, the City has ignored the testimony. The City sent Mr. Haynes to Dr. Turner and relied on Dr. Turner's opinion. Mr. Haynes was repeatedly told, and it was acknowledged at trial by the City, that the City would not release Mr. Haynes back to work until he was cleared by Dr. Turner. Dr. Turner knew that Mr. Haynes had Generalized Anxiety Disorder and he would not release Mr. Haynes to return to work due to potential side effects from the medications he was taking for that condition.

The City mainly relies on one Eleventh Circuit case, Collado v. United Parcel Service, Co., 419 F.3d 1143 (11th Cir. 2005), in arguing the evidence is insufficient to show the City regarded Mr. Haynes as substantially limited in the major life activity of working. Collado, however, was a case in which the employer removed the plaintiff from a full-time driving position but gave the plaintiff several other different positions. In light of that evidence, there was no basis upon which to infer that the employer regarded Collado as substantially limited from any job other than the full-time driving position. In the instant case, the City offered Mr. Haynes no position, but instead put him on leave and then terminated him. There was also no direct evidence of the employer's perception in Collado as there was from Dr. Turner in this case.

The cases in which the Eleventh Circuit has rejected a perceived disability claim,

where the perceived disability was in the major life activity of working, have generally done so in two situations.   One situation is illustrated by <u>Collado</u>, where no reasonable inference could be drawn that the employer regarded the employee as substantially limited in the major life activity of working because the employer continued to employ the employee in spite of the impairment.  <u>See</u>, <u>e.g.</u>, <u>Hilburn v.  Murata Electronics North America, Inc</u>., 181 F.3d 1220, 1230 (11th Cir. 1999) (employer continued to employ employee to perform the same or similar work that she had previously performed); <u>Gordon v.  E.L. Hamm & Associates, Inc.</u>, 100 F.3d 907, 912-13 (11th Cir.  1996) (same); <u>Cash v.  Smith</u>, 231 F.3d 1301, 1306-07 (11th Cir.  2000) (same).

The  other  situation  is  where  the  employee  simply  put  on  no  evidence  that  the employer's  perception,  if  accurate,  would  have  foreclosed  the  employee  from  a  class  or broad  range  of  jobs,  as  opposed  to  one  job  or  a  small  number  of  jobs.   For  example,  in <u>Collado</u>, the only evidence was the employer regarded the employee as unable to perform a full time driver job.  In <u>Cash</u>, the evidence showed, at most, that the company regarded the employee as unable to drive a company vehicle.  This case does not suffer from that defect. Here, the testimony of Dr. Turner and Dr.  Kessler shows the City regarded Mr.  Haynes as unable to perform a class or broad range of jobs.

The Eleventh Circuit has referred to expert vocational evidence, such as that provided by  Dr.   Kessler,  to  be  "instructive",  but  "not  necessary"  to  establish  that  a  person  is substantially limited in the major life activity of working.  <u>Mullins v.  Crowell</u>, 228 F.3d

1305, 1314 n.18 (11th Cir. 2000).    In D'Angelo v. Conagra Foods, Inc., 422 F.3d 1220

(11th Cir. 2005), the Eleventh Circuit found the evidence sufficient to create a genuine issue

of material fact as to whether the employer regarded D'Angelo as substantially limited in the

major life activity of working. In D'Angelo, an employee with vertigo was terminated. The

Eleventh Circuit held there was evidence the employer regarded her as unable to perform a

class or broad range of jobs because the employer perceived her to be unable to work around

moving equipment and did not think she could work safely in any position in the plant. That

evidence was sufficient even in the absence of expert vocational testimony. 422 F.3d at

1229 n.5. See also Pinckney v. Potter, 186 Fed. Appx. 919 (11th Cir. 2006) (evidence that

Postal Service regarded plaintiff as substantially limited in his ability to work in a broad

class of jobs sufficient to create issue of material fact); Rigby v. Springs Industries, 156 Fed.

Appx. 130 (11th Cir. 2005)(evidence that employer regarded employee as unable to perform

any manufacturing job because of potential side effects of medication sufficient to show that

employer regarded employee as substantially limited in major life activity of working).

It simply cannot be said there was no basis for a reasonable jury to find that the City

regarded Mr. Haynes as disabled. The jury's verdict on this claim was not against the great

weight of the evidence. In fact, the conclusion reached by the jury was the only reasonable

conclusion it could have drawn from the evidence.

## **Regarded as Claim - Pretext**

The City next argues that it is entitled to a judgment as a matter of law or a new trial because the Plaintiff failed to produce sufficient evidence of pretext under the McDonnell Douglas framework. (Doc. 79, p. 4-5; Doc. 80, p. 7-10; Doc. 77, p. 2; Doc. 78, p. 7-8, 10-11).

The jury was, properly, <u>not</u> instructed that it was to search for, or find, evidence of pretext. The Eleventh Circuit has held a jury is not to be instructed on the confusing burden-shifting framework. <u>Farley v. Nationwide Mutual Insurance Company</u>, 197 F.3d 1322, 1333 (11th Cir. 1999); <u>Dudley v. Wal-Mart Stores, Inc.</u>, 166 F.3d 1317, 1322 (11th Cir. 1999). Instead, the jury was properly instructed, in accordance with the Eleventh Circuit Pattern Jury Instructions, that Mr. Haynes had the burden of proving four elements: that he had a (perceived) disability, that he was a qualified individual, that the City made an adverse employment decision, and that Mr. Haynes' disability was a substantial or motivating factor that prompted the City to take that action. As the Eleventh Circuit indicated in <u>Cleveland v. Home Shopping Network, Inc.</u>, 369 F.3d 1189, 1194 (11th Cir. 2004), "The only relevant question becomes whether [Mr. Haynes'] termination was motivated by [his] disability." The "critical instruction" is that the plaintiff must prove that prohibited discrimination was a substantial or motivating factor in the challenged decision. <u>Dudley</u>, 166 F.3d at 1322.

The City did not raise any objection to the jury instructions in this regard. The City did not request any jury instructions on the issue of pretext. The City cannot now complain

that a finding of pretext was required or that there was insufficient evidence to find pretext. The jury was only required to find that the perceived disability of Mr. Haynes was a substantial factor that prompted the City to place him on leave and then terminate him. The jury by its verdict found that to be the case and that is all that was required.

In addition, the Court instructed the jury, without any objection from the City, as follows:

> The parties agree that the City's decision to place Mr. Haynes on involuntary leave and refusal to allow him to come back to work was because of medications he was taking and their possible side effects. Therefore, you do not need to decide whether the City placed Mr. Haynes on involuntary leave and prevented Mr. Haynes from returning to work because of his medications and their possible side effects. The City admits there was no other reason for its action.

The question of "pretext" appears to be beside the point in light of the issues framed for the jury without objection from the City. Arguably, the City never articulated a legitimate, non-discriminatory reason for placing Mr. Haynes on leave and terminating him. They admittedly placed him on leave and terminated him because of possible side effects of the medications he was taking. That action was because of his perceived disability. There was evidence that the City made its decision not based on an individualized assessment of Mr. Haynes' present ability to perform his job and not because he was a direct threat to himself or others. The evidence that the City perceived Mr. Haynes to be unable to work in a class or broad range of jobs because of possible side effects from his medications and placed him on leave and terminated him for that reason established proof that his disability was a

motivating factor prompting the City's decisions and established liability.  The issue of pretext would arise, for example, if the City had claimed Mr.  Haynes had been terminated for tardiness, poor job performance, or stealing.  There is no real issue of pretext where the City's asserted reason for placing Mr.  Haynes on leave and terminating him is because of possible side effects from medications he is taking for a medical condition.

However, if the issue of pretext were properly before the Court, it should be noted that this Court has already found in ruling on Defendant's Motion for Summary Judgment that there was ample evidence of pretext.  (See Memorandum Opinion, Doc.  55, p.  11-12). The same evidence that was present at summary judgment was also before the jury at trial.

## QUALIFICATION STANDARDS CLAIM

The City's basic argument relating to the qualifications standards claim is that it is entitled to judgment as a matter of law or new trial because it proved its business necessity defense as a matter of law and no reasonable jury could have found otherwise.  (Doc.  79, p.  5-7; Doc.  80, p.  10-18; Doc.  77, p.  2-3; Doc.  78, p.  8-10).

The City admits that its standards "do, in fact, screen out individuals with disabilities..." (Doc.  79, p.  6).  The only argument the City makes is that the standard the City used to disqualify Mr.  Haynes was, as a matter of law, shown to be job-related for the position in question and consistent with business necessity.  Because the standard related to safety concerns, the City had the burden of showing Mr.  Haynes posed a direct threat to the

health and safety of himself and others, based on an individualized assessment of his actual present ability to safely perform the job. 29 CFR §1630.2(q); 29 CFR§1630.2(r); 29 CFR part 1630 Appx. §1630.15(b) and (c); <u>EEOC v. Exxon Corp.</u>, 1 F. Supp. 2d 635, 641 n.7 (N.D. Tex. 1998). The City did not come close to meeting these requirements.

Dr. Turner admitted in his trial testimony that he did not make an individualized assessment of the actual present ability of Mr. Haynes to safely perform the job of Firefighter. And, specifically, Dr. Turner acknowledged he did not do anything to determine whether Mr. Haynes was actually having any side effects that would hinder his ability to perform the job. He did not do any testing of his driving ability, his reflexes, his mental functioning, his alertness, or anything of the sort. He acknowledged some persons have side effects from medications, while others do not. He did not seek to determine whether Mr. Haynes had had any side effects. If he had, he would have released Mr. Haynes to work based on Dr. Palmer's opinion that Mr. Haynes was not having any side effects, and had not had any side effects on these medications. Dr. Turner ignored all evidence of the actual present ability of Mr. Haynes to perform his job. He ignored the fact that Mr. Haynes had been performing his job satisfactorily while taking these medications, or similar medications, for over two years. Dr. Turner's opinion was not based, he admitted, on the best available objective evidence or the most current medical knowledge.  With regard to the direct threat defense, there was no evidence that there was a significant risk of substantial harm. Mr. Haynes own physician, Dr. Palmer, in fact testified the risk of Mr.

Haynes having side effects from these medications was practically nil. Dr, Turner testified he did not know the likelihood of such side effects. The fact that Mr. Haynes had been taking these same, or similar, medications for over two years without any side effects and without any difficulties doing his job dispels any notion there was a significant risk of substantial harm.

There was ample evidence for a reasonable jury to conclude that the City failed to prove its business necessity defense.


**MITIGATION**

The City argues Mr. Haynes' alleged failure to mitigate his damages as a basis for judgment as a matter of law. (Doc. 79, p. 7; Doc. 80, p. 19-20). The City does not, however, cite any legal authority for the Court to set aside the judgment on this basis. And the City has waived this issue insofar as a JMOL is concerned because the City did not assert it in its JMOL motions at trial. See Shannon v. BellSouth Telecommunications, Inc., 292 F.3d 712, 717 n.3 (11th Cir. 2002).

The City also cites an alleged failure to mitigate damages in its Motion for New Trial or Remittitur but it is not clear whether the City is arguing that is a basis for a new trial or simply as a basis for remittitur. (Doc. 77, p. 3; Doc.78, p. 12-14).

At any rate, the jury was instructed over the Plaintiff's objection about the Plaintiff's duty to mitigate his damages. A reasonable jury could certainly have found the Plaintiff did

not fail to mitigate his damages, but acted entirely reasonably throughout his ordeal. In fact, it is questionable whether a reasonable jury could have found, based on the evidence, that the Plaintiff failed to mitigate.

It was the City who placed Mr. Haynes on leave and would not allow him to come back to work until he was cleared by Dr. Turner. Mr. Haynes procured several letters from Dr. Palmer and provided them to the City and Dr. Turner stating that he had been on his medications for a considerable period of time, was not having any side effects from them, and was fully capable of returning to work. Dr. Turner ignored the letters. Dr. Turner informed the City that it needed to make a decision on whether Mr. Haynes could return to work, but the City continued to refuse to release Mr. Haynes until Dr. Turner would clear him. The City says Mr. Haynes needed to get his personal physician to contact Dr. Turner, but Dr. Turner testified he had all the information he needed from Dr. Palmer.

Mr. Haynes testified he made multiple contacts with Dr. Turner's office in an attempt to get cleared for work, and had numerous conversations with the City, but to no avail. The City argues it was Mr. Haynes' problem and he had to get it resolved, but the City has never explained what Mr. Haynes could have done to get the problem resolved. The evidence is clear the City would not release Mr. Haynes until he was cleared by Dr. Turner, and the evidence is clear Dr. Turner would not release Mr. Haynes in spite of having all the information he needed from Dr. Palmer. It is strange that the City would argue, on the one hand, that Mr. Haynes could have gotten the matter resolved and could

have returned to work and, on the other hand, even after the jury's verdict, argue that "the City cannot allow Haynes to perform the work of Firefighter for the City of Montgomery." (Defendant's Response to Plaintiff's Motion for Equitable Relief, Doc. 76, p.2).

Following the March 31, 2005 fitness for duty examination, when Mr. Haynes' efforts to be returned to work were at a standstill, he acted reasonably by promptly contacting counsel. His counsel then wrote a letter to the City attorney dated May 12, 2005 (Plaintiff's Trial Exhibit 22) which requested "help in resolving these problems and returning [Mr. Haynes] to work." The letter informed the City that its actions appeared to be in violation of the Americans with Disabilities Act. The letter stated:

> It appears to me that there is no justification for not allowing Mr. Haynes to return to work. While it appears the City perceives Mr. Haynes to be disabled, his work history and information from his doctor both demonstrate that he is able to work. The Americans with Disabilities Act requires an individualized assessment of Mr. Haynes and his ability to work, and that individualized assessment would dictate that he be returned to work.

Id. No response was received to that letter and counsel wrote a second letter dated July 27, 2005. (Plaintiff's Trial Exhibit 30). The City's attorney's office finally responded by letter dated August 1, 2005, requesting that Mr. Haynes sign medical release forms so that his medical records could be obtained. (Plaintiff's Trial Exhibit 31). Those releases were promptly signed and returned to the City (Id.), but the records were never forwarded to Dr. Turner. Of course, Dr. Turner actually had all the records he needed already. Nevertheless, the jury was not wrong in concluding that Mr. Haynes acted reasonably, and did not fail to mitigate his damages. The jury heard all of the evidence and clearly did not believe Mr.

Haynes brought this ordeal on himself or contributed to it or prolonged it.

## **"IMPROPER" ARGUMENT IN CLOSING**

The City argues it is entitled to a new trial because of alleged "improper" argument in closing. (Doc. 77, p. 3; Doc. 78, p. 15-16). The City is clearly grasping at straws, and there is no merit to the City's argument for several reasons.

First, the remark made by Plaintiff's counsel was brief, was objected to by the Defendant, and the Court sustained the objection. Defendant's counsel did not object further, did not ask the Court to instruct the jury to disregard the statement, and did not move for a mistrial. The point complained about was clearly not a central issue in the case. Defendant cites no authority in support of its argument that a new trial should be granted in such circumstances. In fact, Defendant cites no authority in support of this argument at all.

At any rate, the actual argument by Plaintiff's counsel was that Captain Hackett had "set up" Mr. Haynes. That is a reasonable inference from the evidence in that the testimony was that Hackett told Mr. Haynes that the administration downtown was insisting that he write a letter setting out his medications. The evidence was that, in fact, the administration did not request such a letter. Mr. Haynes had no reason to write such a letter and would not have written such a letter if he had not been told to do so by his superior. It could reasonably be inferred from the evidence that Hackett falsely told Mr. Haynes the administration was insisting on such a letter simply to cause trouble for Mr. Haynes.

## ALLEGEDLY ERRONEOUS JURY INSTRUCTIONS

The City argues it is entitled to a new trial because of allegedly erroneous jury instructions. (Doc. 77, p. 2; Doc. 78, p. 16-17). The City, however, fails to identify how the instructions were erroneous and fails to cite any authority in support of its arguments. In such circumstances, the Court need not consider this ground further and Plaintiff will not respond further, since there is no specific argument or legal authority to which a response can be made.

## ALLEGED EXCESSIVENESS OF JURY AWARD

The City argues that a new trial or remittitur is authorized because the jury's award of $90,000 for back pay and $270,000 for mental and emotional anguish was excessive and not supported by the evidence. (Doc. 77, p. 2; Doc. 78, p. 11-15, 17-19).

The jury's award of $90,000 in back pay is, of course, almost exactly the amount shown by the Plaintiff's evidence. The City's argument now appears to be that the back pay award is excessive because Mr. Haynes failed to mitigate his damages. That argument has been dealt with previously in this Brief. It should be noted, however, that the City had the burden of showing Mr. Haynes did not make reasonable efforts to obtain work. Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1527 (11th Cir. 1991). "Specifically, the employer must show that 'comparable work was available and the claimant did not seek it out.'" Id. The City did not bother to cross examine Mr. Haynes about his efforts to find comparable

-16-

employment, introduced no evidence of the availability of comparable employment, and thus did not meet its burden on the issue.

The City next argues the $270,000 award for emotional distress bears no relation to the evidence and greatly exceeds the upper limit that the jury could reasonably find. In making that argument, the City relies on a statement made by a district judge in the Southern District of Florida eight years ago in Copley v. Bax Global, Inc., 97 F.Supp. 2d. 1164, 1168 (S.D. Fla. 2000), that compensatory damage awards for mental anguish exceeding $150,000 are suspect. The City also repeats the arguments it has already made, in essence arguing that Mr. Haynes brought about his own mental anguish and emotional distress because he "could have ended this matter without the stress and expense of litigation three years ago" if he had cooperated with the City. (Doc. 78, p. 18). Again, the City does not explain what Mr. Haynes could have done to "end this matter" in light of the fact that the City has always taken the position and still takes the position that Mr. Haynes cannot work as a Firefighter for the City as long as he is taking these medications.

Damage awards above $150,000 are not inherently suspect. The United States District Court for Southern District of Florida recently questioned the Copley decision in Hudson v. Chertoff, 473 F.Supp. 2d 1286 (S.D. Fla. 2007). In Hudson, the jury awarded the plaintiff $1.5 million in damages for emotional distress. The District Court reduced the award to the $300,000 statutory cap and declined to reduce it further, declining to follow Copley.

This Court should be "particularly deferential to the fact finder's determination of compensatory damage awards for intangible, emotional harms because the harm is so 'subjective and evaluating it depends considerably on the demeanor of the witnesses'". Griffin v. City of Opa-Locka, 261 F.3d 1295, 1315 (11th Cir. 2001).

The Eleventh Circuit has approved damage awards for mental and emotional distress which exceed $270,000. In Bogle v. McClure, 332 F.3d 1347 (11th Cir. 2003), seven plaintiffs sued their employer for race discrimination, claiming they had been transferred to dead-end jobs because of their race. They testified to the mental and emotional pain they suffered but presented no independent medical evidence of mental or physical harm. 332 F.3d at 1358-59. The jury awarded each of them $1,000,000 for emotional harm and the district court remitted the award to $500,000 for each plaintiff. Id. at 1359. The Eleventh Circuit affirmed that award, rejecting the defendant's argument it was excessive.

In Farley v. Nationwide Mutual Insurance Company, 197 F.3d 1322 (11th Cir. 1999), an action under the Americans with Disabilities Act and the Age Discrimination in Employment Act, the jury found the plaintiff had been wrongfully terminated based on his disability and age and returned a verdict which included an award $450,000 in emotional pain and suffering damages. On post-trial motions, the trial judge reduced that award to $300,000, the maximum recovery allowed under 42 U.S.C. §1981a(b)(3)(D). 197 F.3d at 1328-29. On appeal, Nationwide claimed the evidence did not support an award of $300,000 for emotional distress damages. The Eleventh Circuit upheld the award referring to

testimony of the employee's emotional pain and suffering from the employee, his wife, and his doctors, and relying on deference to the findings of the fact finder.  The Court declined to substitute its judgment for that of the jury or trial court.  Id.  at 1336.  See also Bradshaw v.  School Board of Broward County, Florida, 486 F.3d 1205 (11th Cir.  2007)(jury award of $500,000 for compensatory damages in sexual harassment case, reduced to statutory cap of $300,000, upheld).

Other courts have likewise upheld awards of $250,000 and considerably more for mental and emotional distress damages.  See, e.g., Gagliardo v.  Connaught Lab., 311 F.3d 565, 573 (3rd Cir.  2002) (upholding district court's denial of remittitur of jury verdict of $1.55 million for emotional pain and suffering under state disability discrimination statute); Peyton v.  DiMario, 287 F.3d 1121, 1126-1128 (D.C.Cir.  2002)(upholding $300,000 in compensatory damages under Title VII after being reduced from $482,000 to reflect statutory cap); Bolden v.  Southeastern Pennsylvania Transportation Authority, 21 F.3d 29, 33-34 (3rd Cir.  1994)(jury award of $250,000 for emotional distress in civil rights action not excessive); Wilmington v.  J.I. Case Co., 793 F.3d 909, 922 (8th Cir.  1986)($400,000 in compensatory damages for emotional distress in race discrimination discharge case not excessive); Muller v.  Costello, 997 F.Supp.  299 303 (N.D. N.Y. 1998) ($300,000 in non-pecuniary damages under the ADA not excessive in light of years of mental suffering, termination, physical injury, embarrassment, and economic hardship); Hathaway v.  Illinois Dept.  of Transp., 1998 WL 1527045 (C.D. Ill.  1997)(upholding jury verdict capped at

$300,000 for compensatory damages for emotional distress in sexual harassment case.);

Eckmann v. Bd. of Ed. of Hawthorn School Dist. No. 17, 636 F.Supp. 1214, 1223 (N.D.

Ill. 1986)(in civil rights action for wrongful termination, jury award of $2 million in

emotional damages ordered remitted to $750,000); Moorer v. Baptist Memorial Healthcare

System, 398 F. 3d 469, 485-86 (6th Cir. 2005)(award of $250,000 in emotional distress

damages in ADA case not grossly excessive); Lilley v. BTM Corp., 958 F.2d 746, 754 (6th

Cir. 1992)($350,000 mental anguish award for age discrimination not excessive); Miller v.

Alldata Corp., 14 Fed. Appx. 457, 467 (6th Cir. 2001)(affirming district court's denial of

motion for remittitur of $300,000 award for emotional distress in gender discrimination

case); Rowe v. Hussmann Corp., 381 F.3d 775, 783 (8th Cir. 2004)($500,000 award for

emotional distress not excessive in sexual harassment case); Madison v. IBP, Inc., 330 F.3d

1051 (8th Cir. 2003)(affirmed award of $266,750 in emotional distress damages in sex and

race discrimination case); Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020, 1040-41

(9th Cir. 2003)(jury award of $223,155 in emotional distress damages upheld for

discrimination based on national origin); Passantino v. Johnson & Johnson Consumer

Products, Inc., 212 F.3d 493, 513 (9th Cir. 2000)(upholding $1,000,000 compensatory

emotional distress damage award in sex discrimination discharge case); Goico v. Boeing

Co., 358 F. Supp. 2d 1028, 1030-32 (D. Kan. 2005)(defendant's motion for remittitur

denied - jury award of $625,000 for emotional distress, reduced to statutory cap of $300,000,

upheld).

General compensatory damages (including damages for mental and emotional distress) "need not be proven with a high degree of specificity." Ferrill v. The Parker Group, Inc., 168 F.3d 468, 476 (11th Cir. 1999). Such damages "may be inferred from the circumstances as well as proved by the testimony." Id.

The evidence in this case was certainly sufficient to justify an award of at least $270,000, if not more, for mental and emotional distress. Mr. Haynes' ordeal with the City began in February 2005, when he was placed on leave, and extended through the date of trial in March 2008, a period of more than three years. He continues to suffer -- he has not yet been reinstated and has not yet been compensated. He was kept in limbo by the City for over a year before he was terminated. During that time he endured tremendous emotional distress as he was bounced back and forth between the City and Dr. Turner. Mr. Haynes testified he contacted the City on numerous occasions in an attempt to return to work, only to be told he would have to get released by Dr. Turner. When he would contact Dr. Turner's office, they would refer him back to the City. The jury could have inferred Mr. Haynes suffered a great deal of emotional distress during this time.

On May 4, 2006 Mr. Haynes was told that if he had not returned to work by May 22, he would be considered to have abandoned his position. (Plaintiff's Trial Exhibit 34). The jury could have believed this letter from the City was almost cruel because the City had no intention of allowing Mr. Haynes to return back to work. When Mr. Haynes reported back to work, he was sent home again. He was told he would have to get cleared by Dr. Turner.

When he tried to make an appointment to see Dr. Turner again, he was initially told Dr. Turner would not see him. Finally, he was allowed to see Dr. Turner again, but Dr. Turner again deferred the decision to the City. The City then notified him he had abandoned his employment. The jury could rightly have believed that this sequence of events caused further mental anguish and emotional distress to Mr. Haynes.

Mr. Haynes, through no fault of his own and in spite of his satisfactory job performance and ability to perform his job, was terminated by the City. He was terminated from a job he loved and performed well for over fourteen years. It was almost the only job he had held as an adult. The jury had the right to consider all of this in determining the amount of damages for mental and emotional distress.

Mr. Haynes testified that the unjust loss of his job had hurt him deeply. He testified the loss of his job and its income placed a severe financial strain on him and his family. He testified he was forced to borrow money from family and friends to meet living expenses. He testified his home was threatened with foreclosure and at times his utilities were turned off. Even more significantly, he testified that, as a result of being placed on leave and being terminated, and the financial and family stress it caused, his wife left him. After a few months on leave, he lost his health insurance with the City. The jury had the right to consider this would have caused great mental and emotional distress to a man who was under the care of a psychiatrist and was taking prescription medications for Generalized Anxiety Disorder. The jury had the right to consider that the mental and emotional distress Mr.

Haynes suffered would have affected him particularly because of his Generalized Anxiety Disorder condition.

The records of Dr. Clemmie Palmer, which were admitted into evidence, corroborate the other evidence regarding the stress and emotional distress Mr. Haynes suffered after he was placed on leave by the City. Dr. Palmer's office note of June 16, 2005 notes Mr. Haynes was "stressed." (Plaintiff's Trial Exhibit 48). On September 13, 2005 Dr. Palmer noted Mr. Haynes was "stressed about my financial state," his mood was sad, he was anxious about financial stress, and only slept a few hours at a time. (Id.) Dr. Palmer testified that after Mr. Haynes lost his job, Mr. Haynes told him about his anxiety, the financial problems the termination had caused, and how he hated to have to borrow money. Dr. Turner testified Mr. Haynes was depressed during this time.

Mr. Haynes' testimony about his mental and emotional distress was also corroborated by Ann Cottrell, who met Mr. Haynes about a year after he had been placed on leave by the City. She testified she saw and talked with Mr. Haynes every day at work, where Mr. Haynes was working as a security guard. She testified he was depressed a lot, so depressed that she would pray with him and buy him lunch sometimes. She was aware that his wife had left him. Ms. Cottrell testified Mr. Haynes was so depressed that she had talked to him on occasion for seven to eight hours over the telephone, trying to encourage him.

The jury heard all of this evidence, considered the demeanor of the witnesses, and obviously believed Mr. Haynes had suffered tremendously from the City's discrimination

against him.  In light of the evidence and other awards which have been upheld, there is no

basis to reduce the jury's award.

For the foregoing reasons, the City's post-trial motions should be denied.


/s/ Gerald L.  Miller
GERALD L.  MILLER (MIL039)
/s/ Keith E.  Brashier
KEITH E.  BRASHIER (BRA113)
Attorneys for Plaintiff


**OF COUNSEL:**

REDDEN, MILLS & CLARK, LLP
505 North 20th Street
940 Financial Center
Birmingham, Alabama 35203
(205) 322-0457


## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of May, 2008, I electronically filed the foregoing
with the Clerk of the Court using the CM/ECF system which will send notification of such
filing to the following:

Allison H.  Highley
Kimberly O.  Fehl
Assistant City Attorneys
City of Montgomery
P.O. Box 1111
Montgomery, Alabama 36101-1111


/s/ Gerald L.  Miller
OF COUNSEL