IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EDDIE J. HAYNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:06-cv-1093-WKW |
| | ) |
| CITY OF MONTGOMERY, ALABAMA, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANT'S POST-TRIAL MOTIONS**

Defendant City of Montgomery ("the City"), submits the following Reply to Plaintiff's Response to Defendant's Post-Trial Motions filed May 27, 2008. *(Doc. 82).*

**I.    CLAIMS PURSUANT TO THE AMERICANS WITH DISABILITIES ACT ("ADA")**

**A.    PLAINTIFF'S ALLEGED IMPAIRMENT DOES NOT SUBSTANTIALLY LIMIT MAJOR LIFE FUNCTIONS.**

A review of the Plaintiff's testimony and case in chief confirms that Plaintiff is not disabled nor was he regarded as disabled by the City under the ADA. Plaintiff testified that since his employment with the City of Montgomery has ended, he is under no medical restrictions and has continued to work. The evidence at trial showed that other firefighters considered Haynes a good firefighter and very physically fit. Plaintiff never claims, nor does the evidence show, that the Fire Department ever told him that he could never be a firefighter for the City of Montgomery. Rather the undisputed evidence shows that the City required him to get cleared fit for duty through Dr. Turner regarding his multiple prescribed medications issue.

Additionally, Chief M. Jordan, Assistant Chief C.E. Walker and District Chief B.S. Hackett

testified that Plaintiff was a good firefighter. Chief Jordan testified that he did not think that Plaintiff was disabled. Chief Jordan and Chief Walker met with Plaintiff regarding his March 4, 2005 memo and informed Plaintiff he could return to work as a firefighter when he got his medication issue resolved through Dr. Turner. Chief Jordan and Chief Walker both testified that they thought that Plaintiff would resolve the matter and return to work quickly.

Plaintiff contends in his response that the City has ignored the testimony at trial however it is clear from the testimony that Plaintiff *chose* never to follow the administration's directive and was ultimately deemed resigned for job abandonment more than a year later. Plaintiff does not offer any explanation as to why the City would hold his position open for more than a year if he was perceived as disabled. It is because this testimony is contrary to Plaintiff's contention that the City regarded him as disabled or having an impairment that substantially limited his ability to perform a class or broad range of jobs.

**B. PLAINTIFF FAILED TO SHOW THAT THE CITY PERCEIVED PLAINTIFF'S ALLEGED IMPAIRMENT AS SUBSTANTIALLY LIMITING HIS ABILITY TO PERFORM A CLASS OR BROAD RANGE OF JOBS.**

Where, as here, the major life activity is working, Plaintiff must show that the impairment constitutes a significant restriction on ability to perform either a class or broad range of jobs. Not only did the City not perceive Plaintiff as not being able to perform a broad range of jobs, the City did not tell Plaintiff that he could never be a firefighter for the City of Montgomery. Plaintiff was put on leave to get his prescription medication issue resolved. At best, the evidence shows that Plaintiff was only precluded from being a firefighter for the City of Montgomery (initially only termporarily), which is too narrow a field to show a substantial limitation on the major life activity of working.

> Being "regarded as unable to perform only a particular job," however, "is insufficient, as a matter of law, to prove that [the plaintiff] is regarded as substantially limited in the major life activity of working." *Murphy v. United Parcel Serv.,* 527 U.S. 516, 525, 119 S.Ct. 2133, 2139, 144 L.Ed.2d 484 (1999). Collado had to prove that UPS considered him "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i); *see also Cash,* 231 F.3d at 1306. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. Thus, an impairment must ... be perceived to preclude [ ] an individual from more than one type of job, even if the job foreclosed is the individual's job of choice." *Rossbach v. City of Miami,* 371 F.3d 1354, 1359 (11th Cir.2004) (citation omitted).

*Collado v. United Parcel Service, Co*., 419 F.3d 1143 (11th Cir. 2005).

Firefighting is not a class or broad range of jobs under ADA. *Bridges v. City of Bossier*, 92 F. 3d 329 (5th Cir. 1996) *cert. denied* 519 U.S. 1093, 117 S. Ct. 770, 136 L.Ed.2d 715 ("An applicant was not disabled under the ADA, since field of firefighting jobs was too narrow to constitute "class of jobs" under regulation providing that substantial limit on major life activity of working means significant restriction on ability to perform either class of jobs or broad range of jobs."). *See also Equal Employment Opportunity Commission v. Schneider National, Inc*., 481 F.3d 507 (7th Cir. 2007) (driving a truck for truck companies that had safety standards higher for drivers than the minimum required by the federal government was too esoteric a capability to be judged a "major" life activity under ADA and employer did not violate ADA when discharged driver employee).

Plaintiff states in his response that the City offered him no other position but instead put him on leave and then terminated him. As previously stated, the City did not even perceive him as unable to do his own job, or Plaintiff would have been terminated right away. At trial, Plaintiff produced no evidence that the City perceived him as unable to do any job. Plaintiff was put on leave to get his

prescription medication issue resolved before being able to return to work as a firefighter for the City of Montgomery.

A single job cannot qualify as a class or broad range of jobs. Thus, Plaintiff has failed to meet the burden of proof for his claim under ADA that the City regarded Plaintiff as "disabled."

### C.     TESTIMONY OF MARY HOUSE KESSLER

The only testimony presented that the City perceived Plaintiff as disabled and unable to work a broad range of jobs was by Plaintiff's expert, Dr. Mary House Kessler, who admitted that she did not review the NFPA standards, did not review the essential job functions of a firefighter, and presupposed the ultimate issue that the City regarded Plaintiff as unable to do any job that involved some degree of danger, to include jobs that involved climbing ladders over 6 feet tall. This testimony was not salient on the issue of whether the potential side effects, if Haynes were truly experiencing them, would preclude Haynes from working in a class or broad range of jobs. Kessler simply offered no reputable testimony that goes to the issue of whether the City perceived Plaintiff of being unable to perform a class or broad range of jobs because her testimony was based on a presupposed assumption that was not based on comparable facts.

### D.     TESTIMONY OF DR. MICHAEL TURNER

The medical assessment of Plaintiff relied on by Defendant was provided by a licensed physician based on his knowledge of the medical standards used by the City of Montgomery for firefighters as set out by the NFPA. Plaintiff submitted no evidence why Dr. Turner's assessment of Plaintiff was improper, unlawful or incomplete. ADA permits an employer to use qualification standards that screen out or tend to screen out individuals with a disability where it is shown that the standards are job-related and consistent with business necessity.

Plaintiff argues in his response that Dr. Turner testified that he did not provide Plaintiff with an individual assessment regarding how the medications affected him at work. Plaintiff relied on the testimony of other firefighters regarding whether Plaintiff suffered side effects on his medications. However, Plaintiff offered no medical evidence to show that the assessment by Dr. Turner according to NFPA standards was not acceptable under ADA provisions for positions such as that of a firefighter. In fact, the evidence demonstrates the opposite. There was no medical testimony to refute Dr. Turner's assessment which was based on medical education, knowledge of NFPA standards and the essential functions of a firefighter or testimony to show that Dr. Turner's assessment was otherwise improper, unlawful or incomplete.

Dr. Turner determined that Plaintiff was physically fit for duty but there were safety issues for Plaintiff driving the truck and working on the fire line while under the influence of his current prescribed medications. At trial Plaintiff's counsel made quite an issue with Dr. Turner that Lexapro was not listed in NFPA standards. Dr. Turner testified that based on his knowledge of NFPA standards and his assessment of Plaintiff, Lexapro caused a concern under NFPA standard 9.16 for essential functions 5, 8, 11 & 13. Dr. Turner determined that Plaintiff should not be on the fireline or driving while on the medication.

The fact that Dr. Turner considered the Lexapro in disqualifying Plaintiff demonstrates that an individual assessment of Plaintiff was performed. As previously stated, Plaintiff's counsel at trial questioned Dr. Turner specifically about the Lexapro because counsel submitted that Lexapro was not identified in NFPA standards. Dr. Turner testified that based on his knowledge of NFPA standards and his assessment of Mr. Haynes, Lexapro caused a concern under NFPA standard 9.16 for essential functions 5, 8, 11 & 13. Plaintiff submitted no other testimony or evidence to refute Dr.

Turner's assessment regarding the specific medications as it relates to the job functions of a firefighter. Neither has Plaintiff submitted anything other than allegations to support that Dr. Turner's assessment was not substantial enough for the purpose it was used for and permitted under ADA.

E.  TESTIMONY OF DR. CLEMMIE PALMER

Dr. Palmer testified that he had not reviewed NFPA standards or the essential functions of a firefighter for the City of Montgomery but wrote the letters in response to Plaintiff's request for them. The ADA does not require the City to consider the letters of Dr. Clemmie Palmer without question and put Plaintiff back to work as a firefighter.

Dr. Palmer also testified that Plaintiff would stop by his office and ask him to write letters regarding his use or limited use required in taking his medications. Dr. Palmer provided Plaintiff letters dated March 4, 2005; April 16, 2005 and June 16, 2005, that were inconsistent with each other.

1. **March 4, 3005** - Haynes prepares a memo listing the following medications Ibuprofen – 600 mg. daily, Lexapro 10 mg. daily and Gabitril 4 mg. PRN (2-3- times a week). Haynes stated that he took the following on off days and an as needed bases Hydrocodone 5/500, Diazepam 5 mg., Cyclobenzaprine 10, Skelaxin 800, Meperidine 50 and over the counter Benadryl.

    Haynes produces a letter from his personal physician, Dr. Clemmie Palmer, with his memo from March 4, that stating that Haynes could work on the meds of Lexapro, Gabitril and Valium.

    **Dr. Palmer testified that he put Haynes on Lexapro in December 2004.**

2. **April 14, 2005** - Haynes produces another letter from Dr. Palmer stating that Haynes is able to work without taking Valium or Gabitril.

> **Dr. Palmer testified at trial that Eddie would come by his office and ask him to prepare the letters but that it was his opinion that Haynes needed to take all meds to be A+ on his job. Dr. Palmer testified that if Haynes was not on his meds while on duty, he could probably still do a B job.**

3. **June 16, 2005** - Haynes produces another letter from Dr. Palmer stating that Haynes is able to work on his current medications of Lexapro, Gabitril, Valium and Flexeril.

> **Dr. Palmer testified that he never reviewed the essential functions of a firefighter for the City of Montgomery or NFPA standards.**

Plaintiff relied on Dr. Palmer who only identified three prescribed medications in his letters. Dr. Palmer testified at trial that he had not reviewed NFPA standards nor were his letters were not based on any additional assessment and that Plaintiff should take his medications at all times to be A+ on the job. The City relied on the medical knowledge of Dr. Turner and his knowledge of NFPA standards.

F. **REQUIREMENTS FOR FIREFIGHTER FOR CITY OF MONTGOMERY**

The City of Montgomery has not proceeded against Plaintiff arbitrarily, and the City is entitled to determine how much risk is too great for it to be willing to take. The City relies on the medical requirements provided by NFPA standards tailored for the specific job of firefighting. The standards are developed by professionals that address the essential functions of a firefighter and applicable medical qualification standards. The decision to impose those medical qualification standards does not establish that the City regards failing candidates as disabled.

Through testimony at trial, the Defendant showed the business necessity of mitigating the safety risk to the firefighters and the public at large. Further, the standards employed by the City are narrowly tailored to the essential functions and incumbent dangers of firefighting. Plaintiff did not

claim or prove that the NFPA standards were not related to the job of firefighting. Thus Defendant has shown that the qualification standards used by the City of Montgomery for firefighters are job related and consistent with business necessity.

The ADA permits qualification standards for certain positions and does not require employers make exceptions for an employee when doing so could place the safety of that employee and others at risk. Nor does the ADA require an employer to take a chance that an individual is fit for duty when medical or scientific studies have already determined that a firefighter on the same medications is not fit for duty. A lack of unfortunate incidents in the past is not sufficient to show that a qualification standard is not a job necessity.

By its terms, the ADA allows employers to prefer some physical attributes over others and to establish physical criteria. *See Sutton v. United Air Lines*, 527 U.S. 471, 490-91 (pilot standard requiring 20/100 or better uncorrected vision does not regard failing candidates as disabled). *See also EEOC v. Schneider Nat'l, Inc.*, 481 F.3d 507, 510 (7th Cir. 2007) (truck driver disqualified for fainting disorder was not regarded as disabled, *because an employer "is entitled to determine how much risk is too great for it to be willing to take"*).

Plaintiff failed to prove that the City regarded him "disabled" as defined by ADA. The ADA very specifically defines the elements Plaintiff must prove to show he is protected under that Act, and Plaintiff has failed to prove those elements. There is no legally sufficient evidentiary basis for a reasonable jury to find for the Plaintiff on the issues presented.

## II. IMPROPER ARGUMENT IN CLOSING

Plaintiff's counsel made improper allegations in closing remarks inferring that Captain B.S. Hackett had some animosity toward Eddie Haynes despite there having been no evidence on this

point. The Plaintiff tries to argue this statement was proper to support Plaintiff's position that he was told to write the March 4, 2005 letter by the administration downtown, which was an allegation that was never made until he filed a response to summary judgment.

Plaintiff's contention in his response that it could reasonably be inferred that Hackett falsely told Plaintiff to submit his March 4, 2005 letter to cause trouble for Haynes is illogical. Hackett did not need to cause trouble for Plaintiff. Hackett was a superior officer, had approximately 2-3 weeks earlier submitted a commendation for Haynes and had already written a memo on February 24th requesting that Haynes be transferred to another shift as a back up driver. Haynes' declaration submitted with the response to summary judgment suggests that Hackett stood up for Haynes with the Fire Department administration.

The plain reading of the March 4, 2005 memo from Plaintiff is exactly what the administration perceived it to be. Chief Jordan testified that he had no knowledge that Plaintiff had been taking similar medications prior to March 2005. Chief Jordan also testified that while he did not understand all of the medications listed by Plaintiff in his March 4th memo, his concerns were (1) that he perceived Plaintiff's memo as a request to be relieved from a job duty, (2) the multiple number of medications that Plaintiff had identified in his memo that he was taking and (3) the fact that his personal physician's letter had only identified three medications. Plaintiff had been the primary driver of the truck for three prior shifts and realized that he was going to have to be a primary driver for several weeks to come because of shortage in man power at the station.

### III. MITIGATION AND EXCESSIVE JURY AWARD

At the conclusion of trial, the jury returned a verdict in Plaintiff's favor on his "regarded as" and "qualification standards" claims, awarding him $90,000.00 in damages for back pay and

$270,000.00 for emotional pain and mental suffering. The jury's award of damages totaling $360,000 was excessive and not supported by the evidence presented at trial.

Since March 2005, Haynes knew exactly what he was required to do to return to work as a firefighter. Defendant has always maintained that Plaintiff initiated the medical inquiry and fit for duty evaluation by requesting to be relieved from the duty of driving the truck. Chief Jordan and Chief Walker testified that they told Plaintiff that he needed to get his personal physician to contact the City physician to clear up Plaintiff's medication issues so he could return to work as a firefighter.

Plaintiff and Plaintiff's counsel were advised in writing what and why the City was requesting from Plaintiff for him return to duty as a firefighter. The City was clear to Plaintiff and Plaintiff's counsel of its instructions regarding the prescription medication issue so Plaintiff could return to work. Plaintiff *chose* not to take advantage of the opportunity to simply follow his employer's directive under the circumstances to eliminate or minimize his damages and should not be rewarded for doing so.

Without proof of an unlawful or otherwise improper request by Defendant employer, Plaintiff should have cooperated with the request of Defendant. Failure to do so resulted in the failure of Plaintiff to mitigate damages.

Likewise, the evidence in this case simply does not support the excessive jury's award. Haynes refused to comply with the request of his employer, which could have ended this matter without the stress and expense of litigation three years ago. Defendant's request to Plaintiff regarding resolution of his medication issue was not actionable under ADA. Without proof of an unlawful or otherwise improper request by Defendant employer, Plaintiff should have complied with the request of Defendant. Refusal to do so resulted in the failure of Plaintiff to mitigate his damages.

Plaintiff should not be entitled to damages that he could have reduced or abated.

## IV.  ERRONEOUS JURY INSTRUCTIONS

Defendant set out in the Motion for New Trial or Remittitur the challenges to the modifications to pattern jury instructions that had been made by the Court, for the most part taken from Plaintiff's proposed instructions These instructions were given over Defendant's objections, prejudicing Defendant because of the likelihood that the jury would be misled or persuaded in favor of the Plaintiff.  It is well established under the law that erroneous jury instructions can provide grounds for a new trial. *Goodgame v. American Cast Iron Pipe Co.,* 75 F. 3d 1516 (11th Cir. 1996) ("A new trial is the remedy of this court generally orders when it reverses based on incorrect jury instructions").  Erroneous jury instructions will warrant a new trial if the jury was misled about the correct legal standard or was otherwise inadequately informed regarding the controlling law. *See Broaddus v. Florida Power Corp.,* 145 F. 3d 1283, 1288 (11th Cir. 1998).

Respectfully submitted this 10th day of June, 2008.

> /s/Kimberly O. Fehl
> Kimberly O. Fehl (FEH001)
> Attorney for City of Montgomery

OF COUNSEL:
City of Montgomery
Legal Department
Post Office Box 1111
Montgomery, AL 36101-1111
(334) 241-2050 Telephone
(334) 241-2310 Facsimile

## **CERTIFICATE OF SERVICE**

I hereby certify that foregoing has been served upon the following by electronic filing and notification through CM/ECF with United States District Court Middle District of Alabama on this 10th day of June, 2008:

>Gerald L. Miller, Esq.
>Keith Brashiers, Esq.
>REDDEN, MILLS, & CLARK
>940 Financial Center
>505 North 20th Street
>Birmingham, AL  35203

>>/s/Kimberly O. Fehl
>>Of Counsel