IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EDDIE J. HAYNES,                           )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )      CASE NO.  2:06-CV-1093-WKW
                                           )
CITY OF MONTGOMERY, ALABAMA,               )
                                           )
            Defendant.                     )

## MEMORANDUM OPINION AND ORDER

This case is before the court on Defendant's Motion for New Trial or Remittitur (Doc. # 77) and Renewed Motion for Judgment as a Matter of Law (Doc. # 79), as well as Plaintiff's Motion for Attorney's Fees and Expenses (Doc. # 71), Supplemental Motion for Attorney's Fees and Expenses (Doc. # 83), and Motion for Equitable Relief (Doc. # 73).  For the reasons given below, Defendant's motions will be denied, and Plaintiff's motions will be granted.

## I.  BACKGROUND

Plaintiff Eddie J. Haynes ("Mr. Haynes") brought this action against Defendant City of Montgomery, Alabama ("the City"), alleging the City had violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 - 12117 ("ADA"), with respect to Mr. Haynes's employment.  Mr. Haynes alleged three claims under the ADA, all of which survived the City's summary judgment motion.  (*See* Doc. # 55.)  On March 27, 2008, the jury returned a verdict (Doc. # 67) in favor of Mr. Haynes on the "Regarded As" Having a Disability

claim, against Mr. Haynes on the Medical Examinations claim, and in favor of Mr. Haynes on the Qualification Standards claim. The jury found that the City did not prove the business necessity defense with respect to the Qualification Standards claim. Having found in favor of Mr. Haynes on two of his three claims, the jury awarded damages to compensate him for a net loss of wages and benefits to the date of the trial in the amount of $90,000 and to compensate him for emotional pain and mental anguish in the amount of $270,000. Mr. Haynes immediately requested equitable relief and attorney's fees and costs as pleaded in his complaint. The City filed its post-trial motions. The court requested briefing on these issues; the parties complied.

## II. DISCUSSION

### A.    *The City's Post-Trial Motions*

The City renews its motion for judgment as a matter of law and moves for a new trial or remittitur. Because the arguments in support of both motions are similar and overlapping, the court, like Mr. Haynes, will address each of the City's arguments under all of the appropriate standards.

### 1.    Standards

#### a.    Renewed Motion for Judgment as a Matter of Law

Judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure is appropriate where "there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*,

496 F.3d 1231, 1251 (11th Cir. 2007).  In deciding a Rule 50 motion, the "proper analysis

is squarely and narrowly focused on the sufficiency of the evidence."  *Chaney v. City of*

*Orlando*, 483  F.3d 1221, 1227 (11th Cir. 2007).   The question is "whether there was

sufficient evidence, as a legal matter, from which a reasonable jury could find for the party

who prevailed at trial."  *Id.* at 1228.  The court looks at the record evidence, drawing all

inferences in favor of the non-moving party. *Nurse "Be" v. Columbia Palms W. Hosp. L.P.*,

490 F.3d 1302, 1308 (11th Cir. 2007).  A renewed motion under Rule 50(b) must be based

upon the same grounds as the original motion.  *Chaney*, 483 F.3d at 1228 .

> b.   Motion for New Trial

The court may grant a motion for new trial "for any reason for which a new trial has

heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).

A party may seek a new trial on grounds that

> the verdict is against the weight of the evidence, that damages are excessive,
> or that, for other reasons, the trial was not fair to the party moving; and may
> raise questions of law arising out of alleged substantial errors in admission or
> rejection of evidence or instructions to the jury.

*Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).

> c.   Motion for Remittitur

"In general, a remittitur order reducing a jury's amount to the outer limits of the proof

is the appropriate remedy where the jury's damage award exceeds the amount established by

the evidence." *Goldstein v. Manhattan Indus., Inc*., 758 F.2d 1435, 1448 (11th Cir. 1985).

2.    **"Regarded As" Having a Disability Claim**

The City asserts that it is entitled to judgment as a matter of law or to a new trial on the "Regarded As" Having a Disability claim because there was no evidence that the City regarded Mr. Haynes as disabled.  Specifically, the City argues that Mr. Haynes "never showed that the allegedly perceived impairment would have been a significant restriction on his ability to perform a class or broad range of jobs," and the City challenges the sufficiency of the expert testimony on this element.  (Doc. # 79 ¶¶ 6-9; *see also* Doc. # 78 ¶¶ 7-12.)  This is the same argument that the City has made throughout the litigation, and it fails again here.

The four elements of an ADA discrimination claims are that (1) the employee "had a 'disability,'" (2) he "was a 'qualified individual,'" (3) he was subjected to an adverse employment action, and (4) his "disability was a substantial or motivating factor that prompted the [City] to take that action."  (Doc. # 66, at 7, quoting Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 1.5.1 (2005)); *see also Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1152 & n.5 (11th Cir. 2005) (quoting with approval Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 1.5.2 (2005), the elements of which mirror those in § 1.5.1, in the context of analyzing the "correctness" of the district court's Rule 50(b) post-verdict judgment for an employer for failure of the employee "to provide sufficient evidence on the disability element of his ADA claim").

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of

4

such impairment; or (C) *being regarded as having such an impairment*." 42 U.S.C. § 12102(2) (emphasis added); *see also Collado*, 419 F.3d at 1154-55 (applying ADA's definition of disability). A person is regarded as having such an impairment if an employer either "mistakenly believes that a person has a physical [or mental] impairment that substantially limits one or more major life activities" or "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). The latter provision is met where a person is perceived as being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes. *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1227 (11th Cir. 2005). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *Id.*

The evidence at trial showed that (1) the City relied on Dr. Turner to determine whether Mr. Haynes could return to work; (2) Dr. Turner knew that Mr. Haynes was taking medications for Generalized Anxiety Disorder;[1] and (3) Dr. Turner would not have released Mr. Haynes to work in any safety sensitive position or for any job driving a vehicle due to the potential side effects of the medications, even though Mr. Haynes did not actually experience such side effects and did not use the medications while on duty. Thus, Dr. Turner mistakenly believed that Mr. Haynes's actual, nonlimiting impairment – whether it be the potential side effects of medications or the underlying anxiety disorder – substantially limited

---

[1] The City knew about Mr. Haynes's medications as early as January 2003, twenty-six months before Mr. Haynes was placed on leave. (*See* Pl. Ex. 6.)

5

Mr. Haynes's major life activity of working in any safety sensitive position. This is the essence of a "regarded as" having a disability claim. By sending Mr. Haynes to Dr. Turner and relying on Dr. Turner's perception in refusing to clear Mr. Haynes for duty, the jury could have concluded that the City adopted Dr. Turner's perception that Mr. Haynes had a disability.

Dr. Turner's testimony alone may be sufficient to uphold the jury verdict; however, Mr. Haynes also presented a vocational expert, Dr. Kessler, who testified that this perceived limitation would foreclose someone with Mr. Haynes's experience and background from access to 182,000 jobs in Alabama – a broad range of jobs such as a law enforcement officer, security guard, EMT, firefighter, construction worker, mason, and hazardous machinery worker. Dr. Kessler's testimony was undisputed. Based on this evidence, the court cannot conclude that "there is no legally sufficient evidentiary basis for a reasonable jury to find for" Mr. Haynes. *Optimum Techs., Inc.*, 496 F.3d at 1251.

The City's arguments – that Mr. Haynes was not actually disabled, that the City did not ask about the anxiety disorder and that the City perceived him as unable only to be a Montgomery firefighter[2] – are not relevant to the determination of the ultimate issue.

---

[2] The City's argument throughout the litigation has been that Mr. Haynes could not prove he was perceived as being unable to perform a broad range of jobs, only that he could prove he was perceived as being unable to be a Montgomery firefighter. From its post-trial motions, the City now seems to be arguing that it perceived Mr. Haynes as able to do all jobs, even his Montgomery firefighting job, notwithstanding the fact that it placed Mr. Haynes on leave and terminated him.

The City further argues that Mr. Haynes did not prove that the City's proffered legitimate, nondiscriminatory reason for his termination was pretextual. (Doc. # 78 ¶¶ 18-19; Doc. # 79 ¶ 13.) This argument fails for the following two reasons. First, to the extent the City is arguing that the jury should have been charged with an instruction on *McDonnell Douglas* burden shifting, this is not the law of the circuit. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1333 (11th Cir. 1999) ("once the *McDonnell Douglas* framework has been met by both parties in the pretrial stages, it 'simply drops out of the picture' when the jury begins its deliberations" (citation omitted)).

Second, the court finds that Mr. Haynes carried his burden of proving that discrimination was a substantial or motivating factor in the adverse employment decisions, the fourth element of his "Regarded As" Having a Disability claim. One of the City's proffered reasons for placing Mr. Haynes on involuntary leave and refusing to allow him to come back to work is because of his medications and their possible side effects. In fact, the jury was so charged. Mr. Haynes points out, and the court agrees, that the City's admission that its decisions were based on possible side effects of medications, coupled with the evidence that the City failed to make an individualized assessment of Mr. Haynes's present ability to perform his job and of whether Mr. Haynes was a direct threat, constitutes a sufficient evidentiary basis from which a reasonable jury could conclude that "his disability was a motivating factor prompting the City's decisions." (Doc. # 82 at 9-10.)

7

The City also asserts, without any specificity, that Mr. Haynes's "evidence at trial demonstrated that the City was treating [him] the same as other firefighters in requiring him to be medically qualified as a firefighter based on the medical standards in NFPA." (Doc. # 80 ¶ 20.) To the extent that the City argues that this "evidence" cuts against Mr. Haynes's proof on the fourth element of his claim, the court disagrees; there was more than sufficient evidence from which a reasonable juror could find otherwise. For example, contrary to the City's conclusory interpretation of the evidence, above, Dr. Turner admitted that others in the fire department were taking similar medications, but those persons had not been terminated or placed on leave. (*See* Pl. Exs. 83, 84 & 85; *see also* Tr. Test. of Mark Evans.)

Finally, the City argues that another nondiscriminatory reason is that Mr. Haynes was not medically qualified to be a firefighter under NFPA standards. (*See, e.g.*, Doc. # 80 ¶ 18.) The court construes this argument as one challenging the second element of the "Regarded As" Having a Disability claim, *i.e.*, whether the plaintiff is a "qualified individual." The City must have intended to argue that Mr. Haynes was not a qualified individual because he failed to prove that he was not a direct threat or a significant risk to the health or safety of other individuals in the workplace. *See LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 836 (11th Cir. 1998) ("The employee retains at all times the burden of persuading the jury either that he was not a direct threat or that reasonable accommodations were available.").

8

The testimony adduced at trial was that the City *believed* that Mr. Haynes *could* pose a "significant risk to the . . . safety," 42 U.S.C. § 12111(3), of his fellow firefighters and the public. Even if such belief was held in good faith, which is doubtful in light of the evidence,[3] it is insufficient because it was "not grounded in medical or other objective, scientific evidence." *Lowe v. Ala. Power Co.*, 244 F.3d 1305, 1308 (11th Cir. 2001) (citing *Bragdon v. Abbot*, 524 U.S. 624, 649 (1998)). In determining that Mr. Haynes was a direct threat, the City was required to make "an individualized assessment of the individual's present ability to safely perform the essential functions of the job," which "shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence." 29 C.F.R. § 1630.2(r).

At trial, Dr. Turner admitted that he did not conduct a physical examination of Mr. Haynes. Dr. Turner testified that he spoke with Mr. Haynes; he had possession of Mr.

---

[3] The evidence was undisputed that Mr. Haynes was a good firefighter. Three weeks before he was placed on leave, his supervisor commended him: "He knows his territory and stays abreast of his SOPs. He works will [sic] with others and is a good team member. Firefighter Haynes's experience is demonstrated on and off the fire scene. He performs all assignments when given to him. He is neat and punctual." (Pl. Ex. 7.) Assistant Chief C. E. Walker testified he considered Mr. Haynes capable as a firefighter. Lieutenant Tim Health testified that he had known Mr. Haynes for more than fifteen years and that Mr. Haynes did a good job driving, that he was cautious but never refused; that Mr. Haynes was a good firefighter and had no problems with the job requirements; that in drills, Mr. Haynes always performed at least to standards; and that Mr. Haynes never fainted or passed out, nor did he appear drowsy, dehydrated or dizzy. Sgt. Ashley Payton, director of training for the department, testified that Mr. Haynes is a "great firefighter" with no problems doing his job, including driving the truck. Former Montgomery firefighters Barry Nummy and Kyle Miner worked on the same shift as Mr. Haynes for several years. Mr. Nummy described Mr. Haynes as a "very good firefighter" with good work habits, and as a "very good driver, very cautious." They fought fires together and Mr. Haynes did "very well." Mr. Miner, a "dear friend" of Mr. Haynes, told the jury that he had fought fires with Mr. Haynes and had seen Mr. Haynes operate "on the scene." He described Mr. Haynes as "courageous, quick to act" and "very competent."

Haynes's medical records from Mr. Haynes's psychiatrist, Dr. Palmer; and that he believed Mr. Haynes and Dr. Palmer when they said that Mr. Haynes was not having any side effects. He further testified that he believed Mr. Haynes when Mr. Haynes said that he was not taking the medications while on duty.   Dr. Turner's office notes stated that Mr. Haynes "is physically fit to return to duty," but concluded that the City's "administrative decision is needed" because of concerns about the possible side effects of Mr. Haynes's medications. Dr. Turner's knowledge about the possible side effects comes from general prescription information, and he did not review and was not aware of any medical studies done on the side effects of these medications.   He admitted that side effects vary from person to person, but he did not do any further testing on Mr. Haynes, nor did he attempt to discuss Mr. Haynes's possible side effects with Dr. Palmer.

Dr. Turner's assessment of Mr. Haynes, upon which the City relied, was not individualized.  It did not purport to assess Mr. Haynes's present ability to safely perform the essential functions of the job.  It is not apparent that Dr. Turner's medical judgment was reasonable, especially where he did not rely on the best available objective evidence nor the most recent medical knowledge.  Dr. Turner admitted that the best information about Mr. Haynes's ability to safely perform his job is observation of Mr. Haynes doing his job.  There was no evidence at trial that would support the conclusion that Mr. Haynes had not been safely performing, or could not safely perform, his job as a Montgomery firefighter.  The

only conclusion the jury could have made here is that Mr. Haynes was not a direct threat and was in all other ways a qualified individual under the ADA.[4]

In sum, the court finds that there was sufficient evidence for the jury to find that the City's decision to place Mr. Haynes on leave and to terminate him was motivated by Mr. Haynes's perceived disability. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194-95 (11th Cir. 2004).  Thus, the City's motions fail as to the "Regarded As" Having a Disability Claim.

### 3. Qualification Standards Claim

The City also challenges the jury's verdict on the Qualification Standards claim.  The City states that the medical standards set out in Chapter 6 of the NFPA, which the City has not formally adopted, "do, in fact, screen out individuals with disabilities . . . and impairments."  (Doc. # 79 ¶ 18.)  The City argues, however, that these standards are job-

---

[4] The City has taken the position consistently that it was Mr. Haynes's duty to get his doctor and the City's doctor to agree as to a solution or, in the alternative, to otherwise convince the City's doctor to release him to return to work: "When [Mr.] Haynes refused for 15 months to comply with the City's request to have his personal physician work out a way [Mr.] Haynes could be in compliance with the standards, the City had no choice but to deem [Mr.] Haynes as having abandoned his job . . . ."  (Doc. # 79, at 5; Doc. # 78, at 7.)  "[Y]ou would have to get a release from Dr. Turner on the medication that you are taking in order for you to return to duty . . . ." (Pl. Ex. 36); "[r]esolution remains with [Mr.] Haynes . . . ."  (Def. Ex. 9; *see also* Def. Ex. 5 at 2 ("so that the two physicians can make a recommendation . . . .").)  The City utterly failed to inform the jury or the court how Mr. Haynes could compel two private physicians to communicate and agree on anything, or even how he could force his own private physician to "work out a way" to bring him into compliance with the City's request.

In fact, it was the City's duty under the law, not Mr. Haynes's, to have an individualized assessment conducted, and the City was so informed by counsel to Mr. Haynes months before this suit was filed and three weeks before Mr. Haynes was terminated.  (*See* Pl. Ex. 40.)  No less than six letters over a thirteen-month period were sent to the City by Mr. Haynes's attorney in an attempt to resolve the impasse.  The City's failure to conduct an individualized assessment is the operative cause of its current predicament, and its attempt to deflect the blame to Mr. Haynes was soundly rejected by the jury.

11

related and consistent with business necessity.  It argues that it proved its business necessity

defense as a matter of law and that no reasonable jury could have found otherwise.

Because the qualification standard relates to safety, the City had the burden of

showing that Mr. Haynes was a direct threat.  *Moses v. Am. Nonwovens, Inc*., 97 F.3d 446,

447 (11th Cir. 1996); *Rizzo v. Children's World Learning Ctrs.*, 173 F.3d 254, 259-60 (5th

Cir. 1999); 29 C.F.R. Part 1630 App. § 1630.15(b) & (c).  As discussed above, there was no

evidence that the City and Dr. Turner determined that Mr. Haynes was a direct threat based

on an individualized assessment of Mr. Haynes's actual present ability to safely perform his

job.  Based on the evidence, or, rather, the lack thereof, the court cannot conclude that "there

is no legally sufficient evidentiary basis for a reasonable jury to find for" Mr. Haynes on this

claim.  *Optimum Techs., Inc.*, 496 F.3d at 1251.

###    4.    <u>Mitigation</u>

In its motions, the City argues that Mr. Haynes failed to mitigate his damages because

"[t]he record reflects that [Mr. Haynes] and his attorney chose to ignore the City's request

[to get the matter resolved], and by doing so, built damages and unnecessary attorney's fees

and expenses."  (Doc. # 80 ¶ 45.)  This argument fails for two reasons.

First, as to the renewed motion for judgment as a matter of law, this issue has been

waived.  The City did not argue failure to mitigate in its earlier Rule 50 motions.

Second, as to the other motions, the City presents no law to support its proposition that

the duty to mitigate requires a victim of intentional discrimination to avoid that

discrimination or to begin mitigation efforts prior to termination. The City argues that Mr. Haynes "should have cooperated with the request" of the City "to get his medication issue resolved." (Doc. # 80 ¶¶ 48-49.) Like Mr. Haynes, the court can only guess what this means. (*See supra* note 4.) Regardless, the evidence is sufficient to support a jury finding that Mr. Haynes was reasonably diligent in mitigating his damages and that he acted reasonably the entire time the City was giving him the proverbial runaround. Thus, the City has not met its burden of establishing that Mr. Haynes did not mitigate his damages. *See EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1251 (11th Cir. 1997) ("While the injured victim has a duty to mitigate damages by being reasonably diligent in seeking substantially equivalent employment, the burden of proving lack of diligence is on the employer.").

### 5.   Closing Argument

The City argues that it is entitled to a new trial because Mr. Haynes's counsel implied in his closing argument that Captain Hackett had some animosity for Mr. Haynes by stating either he "had it out" for Mr. Haynes or he "set up" Mr. Haynes, without there being any evidence of such animosity. The court sustained the City's objection to the statement. Mr. Haynes's closing argument as it related to Captain Hackett did not draw another objection. The City did not ask the court to admonish the jury, to give a limiting instruction, or to declare a mistrial. Now the City concludes that "the prejudicial effect of the improper and false allegation made by [Mr. Haynes]'s counsel could not be cured by the Court sustaining the objection." (Doc. # 78 ¶ 16.)

Arguing matters that are not in evidence is improper.  *See, e.g., Brooks v. Francis*, 716 F.2d 780, 787 (11th Cir. 1983) ("Attorneys are forbidden from saying anything to the jury to imply that evidence supporting their position exists but has not been introduced at trial."). However, considering all of the circumstances, the court finds that Mr. Haynes's counsel's statement was not improper.  Mr. Haynes's counsel was merely presenting to the jury his conclusion or reasonable deduction to be made from the evidence – *i.e.*, that Captain Hackett falsely told Mr. Haynes that the administration insisted on Mr. Haynes's letter listing his medications in order to cause trouble for Mr. Haynes.  *See United States v. Morris*, 568 F.2d 396, 401 (11th Cir. 1978); *Keal Driveway Co. v. Car & General Ins. Corp.*, 145 F.2d 345 (5th Cir. 1944).[5]  Even if improper, the argument was not unduly prejudicial and had no effect on the outcome of the case.

**6.    Jury Instructions**

The City asserts that it is entitled to a new trial because of allegedly erroneous jury instructions, but it fails to identify which instructions it claims are erroneous.  Therefore, the motion is due to be denied.

---

[5]  The Eleventh Circuit has adopted all prior decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, as binding precedent.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

14

7.   **Jury Award**

The City argues that either a new trial or remittitur is warranted because the jury's award of $90,000 for back pay and $270,000 for mental and emotional anguish was excessive and not supported by the evidence.

    a.   Back Pay

The City argues that the back pay award of $90,000 is not supported by the evidence and should be reduced because Mr. Haynes failed to mitigate his damages. As stated above, the City has not met its burden of establishing that Mr. Haynes did not mitigate his damages. It is simply insufficient for the City to assert that Mr. Haynes "has known what he needed to do if he wanted to return to work as a firefighter, but has steadfastly refused to do so," (Doc. # 78 ¶ 33), and that Mr. Haynes "never applied for a firefighting position with any department." (*Id.* ¶ 36.) The court need not comment further on the City's former argument. But to prevail on the latter argument, the City is required to show that "comparable work was available and the claimant did not seek it out." *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, § 101, 105 Stat. 1071 (internal quotation marks and citation omitted). "If, however, an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment." *Id.* (internal quotation marks and citation omitted).

The City did not prove that Mr. Haynes did not make reasonable efforts to obtain substantially comparable employment. The testimony was that Mr. Haynes looked for employment and worked as a security guard at a lesser rate than what he earned as a firefighter.  Mr. Haynes may never have applied for a firefighting position with another fire department, but the City did not develop the facts on cross-examination or otherwise offer proof to reach the conclusion that, for example, nearby fire departments were hiring and Mr. Haynes did not apply for those positions.  There is no evidence from which one must conclude that Mr. Haynes did not make reasonable efforts to obtain comparable work.

      b.    <u>Emotional Damages</u>

The City also argues that emotional damages are effectively capped at $150,000 and that the evidence was insufficient to support the $270,000 award for emotional damages.

In determining the excessiveness of the award, the court must be "deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses." *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir. 1999) (internal quotation marks and citation omitted).  Moreover, compensatory damages may be inferred from the circumstances surrounding the discrimination and may be proven by the testimony, but such damages "need not be proven with a high degree of specificity." *Id.*

Relying on language in a district court opinion decided more than eight years ago, *see Copley v. BAX Global, Inc.*, 97 F. Supp. 2d 1164, 1172 (S.D. Fla. 2000) ("It is very rare . . .

16

for any award of non-economic compensatory damages above [$150,000.00] to stand.  Thus, $150,000.00 may be viewed as a benchmark figure, above which awards of compensatory damages for mental anguish become suspect." (citations omitted)), the City argues that the $270,000 award "greatly exceeds the upper limit that the jury could reasonably find."  (Doc. # 78 ¶ 40).  However, as Mr. Haynes thoroughly details in his response brief, (Doc. # 82, at 17-20), *Copley* is not the law of the circuit, and there is no cap on emotional damages in this case.[6]

Although the award is 90% of the statutory maximum, the evidence of the emotional damage suffered by Mr. Haynes is sufficient to support the $270,000 award.  Mr. Haynes's injury lasted for more than three years, from February 2005, when he was placed on leave, through the date of trial.  The court agrees with Mr. Haynes that the jury could have inferred that Mr. Haynes endured a great deal of emotional distress from being "bounced back and forth between the City and Dr. Turner." (Doc. # 82, at 21.)  Mr. Haynes further testified that the loss of his job caused a severe financial strain on him and his family, causing him to have to borrow money, to lose his health insurance, to be threatened with home foreclosure, and to deal with utilities being turned off.  Ultimately, Mr. Haynes's marriage fell apart due to the financial stress, ending in his wife divorcing him.   Mr. Haynes's testimony was

---

[6]  The cap on damages specified in 42 U.S.C. § 1981a(b)(3) applies to damages under the ADA. The amount of the cap is dependent on the number of the defendant's employees.  Because the City has not raised the issue, the court assumes that the City employs "more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year." § 1981a(b)(3)(D).  For such entities, the cap on damages is $300,000.  Of course, this cap does not affect an award of $270,000.

corroborated by Dr. Palmer and Dr. Turner, both of whom noted his stress and depression. One of Mr. Haynes's co-workers, Ann Cottrell, also testified that Mr. Haynes was so depressed that she prayed with him, talked with him on the telephone for hours, and sometimes bought him lunch.

Considering Mr. Haynes's devotion to the job, the length of his employment with the City, his satisfactory job performance, the kind and duration of the discrimination, and the extent of the emotional harm, the court finds that the $270,000 award is justified under these circumstances.  There is no basis to reduce the damages awarded by the jury.

For all of these reasons, the City's motions are due to be denied on all grounds.

**B.**     ***Mr. Haynes's Motions***

**1.**     <u>**Motion for Equitable Relief**</u>

Mr. Haynes moves the court for reinstatement or front pay in lieu thereof, prejudgment interest, injunctive relief to restore his pension or retirement account to make him whole, and such other equitable and injunctive relief necessary to make him whole.

The ADA authorizes the court to award equitable relief to a prevailing plaintiff. *Farley*, 197 F.3d at 1338 (citing 42 U.S.C. § 12117(a)).  "[T]he court may enjoin the [defendant] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate."  42 U.S.C. § 2000e-5(g).  The goal of the remedial provisions of the ADA is

"to make the plaintiff whole, to restore the plaintiff to the economic position the plaintiff would have occupied but for the illegal discrimination of the employer." *Farley*, 197 F.3d at 1338 (internal quotation marks and citation omitted).

a.   Reinstatement or Front Pay

Reinstatement is the preferred or presumptive remedy in discriminatory discharge cases, unless "discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy." *Id.* at 1339 (internal quotation marks and citation omitted).  When reinstatement is not feasible or is impracticable or inadequate, front pay should be awarded in lieu of reinstatement.  *Id.*  However, "the presence of some hostility between the parties, which is attendant to many lawsuits, should not normally preclude a plaintiff from receiving reinstatement."  *Id.*

Mr. Haynes seeks reinstatement or, in the alternative, front pay.  Mr. Haynes asserts that the testimony at trial was that he was a good firefighter and that the City has a need for firefighters.  Thus, Mr. Haynes concludes that there is no apparent reason why he should not be reinstated.

In response (Doc. # 76) to Mr. Haynes's motion for equitable relief, the City argues that there are "unusual and extraordinary circumstances" that demonstrate that reinstatement is an inappropriate remedy here.  The City continues to argue, despite the jury's verdict to the contrary, that Mr. Haynes poses a "potential risk," that "he does not meet the standards for working on the fireline or driving the fire apparatus," and that if he was reinstated, "the

19

City would be forced to have Mr. Haynes 'sit around the kitchen table.'"  The City further argues that not only should Mr. Haynes not be reinstated, but also that he should not be awarded front pay because he has failed to mitigate his damages.  The City suggests that if Mr. Haynes is indeed not disabled then he should find employment as a firefighter in a fire department that does not use the same NFPA standards as the City.

The City is not claiming the existence of hostility between the parties that would render reinstatement ineffective as a make-whole remedy; instead, the City is clinging to the defense it unsuccessfully asserted at trial.  That is, the City is arguing that it did not perceive Mr. Haynes as disabled, that his use of medications posed a risk of danger to himself and the public, and that he abandoned his job when he did not convince the doctor hired by the City to clear him for duty.  The problem with this argument, of course, is that the jury did not buy it.  In light of the jury verdict, the court, in fashioning the remedy, considers the tone of the City's response to be disconcerting; the City seems to threaten that it will continue to discriminate against Mr. Haynes if he is reinstated.

Nevertheless, because hostility between the parties has not been established and because other circumstances do not warrant the alternative, reinstatement is proper here.  At trial the Chief agreed that Mr. Haynes was a good firefighter and that the City has a need for firefighters.  Furthermore, no hostility was evident from the testimony, and Mr. Haynes clearly wants to be reinstated.  Upon due consideration, the court finds reinstatement to be proper.

The court cautions the City to assess its procedures with respect to fitness for duty examinations, particularly with respect to individualized assessments. No doubt, Mr. Haynes will have to be evaluated for fitness for duty and will need to undergo training to update his skills. Because the jury verdict was for Mr. Haynes and because Mr. Haynes must be made whole, the City will be permanently enjoined from further discriminating against Mr. Haynes, specifically but not exclusively on the basis of perceived disability and qualification standards. The court will retain jurisdiction in order to enforce its order.

       b.    <u>Prejudgment Interest</u>

Mr. Haynes seeks an award of prejudgment interest on the jury's back pay award. The City argues that prejudgment interest would be a windfall to Mr. Haynes.

In determining whether to grant prejudgment interest on a back pay award, the court looks to the National Labor Relations Act ("NLRA") for guidance. *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1512 (11th Cir. 1987) (citing *Smith v. Am. Serv. Co. of Atlanta, Inc.*, 796 F.2d 1430, 1432 (11th Cir. 1986)). Although the Eleventh Circuit has reserved ruling on whether the district court has discretion to award prejudgment interest on back pay, "there has been a consistent practice under the NLRA to award interest on back pay awards" at the prevailing IRS prime rate. *Guardian Pools*, 828 F.2d at 1512; *see also Taylor v. Cent. Pa. Drug & Alcohol Servs. Corp.*, 890 F. Supp. 360, 369 (M.D. Pa. 1995).

Because "prejudgment interest . . . is an element of complete compensation," *Loeffler v. Frank*, 486 U.S. 549, 558 (1988) (internal quotation marks and citation omitted), and the

amount of interest on the damages award is readily ascertainable, Mr. Haynes is entitled to prejudgment interest on his award of back pay.  Prejudgment interest shall be computed pursuant to 28 U.S.C. § 1961, at a rate of 6.07%, compounded annually.

c.   Restoration of Retirement Account

Mr. Haynes asks for an order requiring the City to restore his pension and retirement account as a part of the relief necessary to make him whole.  Specifically, Mr. Haynes asks for an amount equal to the City's contribution, which Mr. Haynes was forced to forfeit by withdrawing his contribution, plus interest and investment gains, conditioned upon Mr. Haynes's repayment of the withdrawn amount.  Mr. Haynes also seeks an additional sum equal to what the City would have been required to contribute if Mr. Haynes had been employed between March 2005 and March 2008.

The City is opposed to Mr. Haynes's request on the grounds that the Employees' Retirement System for the City of Montgomery ("Retirement System") is a separate entity, is not a party to this action, and is thus not subject to the court's jurisdiction.  The City does not otherwise oppose Mr. Haynes's argument.

The court is required to fashion relief that will make Mr. Haynes whole.  *See Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975).  Reinstatement of pension benefits is properly included in equitable relief.  *See, e.g., Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1562-63 (11th Cir. 1986) (remanding to the district court for consideration of "additions" to the back pay award, including adjustments to the victims' pension plans).  The

Retirement System need not be a party to this action for the court to order reinstatement of Mr. Haynes's pension and retirement benefits. *See Darnell v. City of Jasper, Ala.*, 730 F.2d 653, 655-56 (11th Cir. 1984) (citing *Washington v. Washington State Commercial Passenger Fishing Vessel Assoc.*, 443 U.S. 658, 692-93 n.32 (1979)). The City will be ordered to reimburse Mr. Haynes for any and all contributions that it would have made to his pension and retirement account during the time period from the date he was placed on unpaid leave until the date of reinstatement. The City will be ordered to make the calculation, taking into account any standard pay raises Mr. Haynes would have earned during the relevant time period. The City shall make every effort to fully restore the pension and retirement account with the Retirement System, conditioned upon Mr. Haynes's repayment of his withdrawn contribution. Mr. Haynes will bear any penalties for the withdrawal. In the event restoration of the pension and retirement account is legally impermissible, the City shall calculate reimbursement according to the dictates of this paragraph and make a lump sum payment directly to Mr. Haynes.

In sum, Mr. Haynes is entitled to reinstatement to his former position with the City, together with all increments in pay and position and benefits that he would have achieved if he had not been placed on leave without pay and had not been terminated. In addition to the compensatory damages awarded by the jury, back pay awarded by the jury and prejudgment interest on that award, Mr. Haynes is entitled to back pay from the date of the verdict to the date of reinstatement, offset by any sums Mr. Haynes has earned in the interim. Furthermore,

Mr. Haynes is entitled to full reinstatement of his pension and retirement account, on the condition he repays his withdrawn contribution.  And, to ensure compliance with this order, the court will retain jurisdiction.

2. **Motions for Attorney's Fees and Expenses**

 a. <u>Attorney's Fees</u>

The ADA affords the court the discretion to award to the prevailing party "a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205.  Mr. Haynes asserts he is the prevailing party and, as such, seeks an award of reasonable attorney's fees and expenses.  The City does not dispute that Mr. Haynes can be deemed a prevailing party in the event its post-trial motions are resolved in favor of Mr. Haynes. (Doc. # 75 ¶ 7.)  The court concludes that Mr. Haynes is indeed the prevailing party.

The City further argues that the court should exercise its discretion to deny an award of attorney's fees, condemning both Mr. Haynes and Mr. Haynes's attorney for failing to resolve the matter years ago.  (Doc. # 75 ¶¶ 3-4, 6.)  Ignoring the irony of this contention, the court notes that its discretion to award fees is not unfettered.  Attorney's fees should be awarded to the successful plaintiff in an employment discrimination case unless special circumstances are present. *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 63, 68 (1980); *Martin v. Heckler*, 773 F.2d 1145, 1150 (11th Cir. 1985).  The City has not shown special circumstances here, and thus the court will award Mr. Haynes reasonable attorney's fees.

In calculating reasonable attorney's fees, courts use the lodestar method. The court first must find the lodestar by "multiply[ing] the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services." *Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006). "The court may then adjust the lodestar to reach a more appropriate attorney's fee." *Id.* Mr. Haynes "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates," including setting out time expenditures "with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299. Mr. Haynes seeks compensation at the rate of $250 per hour for work performed on this case by Attorney Gerald L. Miller and $175 per hour for work performed by Attorney Keith E. Brashier. These hourly rates are strongly supported by the affidavits of these attorneys, whose firm is located in Birmingham, Alabama, and by the affidavits of attorneys located in Montgomery, Alabama. The City does not challenge these hourly rates as unreasonable. The court finds the requested hourly rates reasonable and, following the practice of this district, applies these rates for purposes of this fee petition only. *Anderson v. Unum Life Ins. Co. of Am.*, No. 01-894, 2007 WL 604728, at *9 (M.D. Ala. Feb. 22, 2007) (DeMent, J.) (quotation marks and citation omitted).

25

In determining the reasonableness of the number of hours expended by counsel, the court must exclude those hours that are "'excessive, redundant, or otherwise unnecessary.'" *Norman*, 836 F.2d at 1301 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "A lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights." *Id.* The court should exclude redundant hours and hours spent on unsuccessful discrete claims. *Id.* at 1301-02. Requests for fees, "[o]bjections[,] and proof" should be "reasonably precise" because "[g]eneralized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight." *Id.* at 1301.

Attorney Miller billed 326.9 hours and Attorney Brashier billed 70.4 hours through the filing of Mr. Haynes's post-trial motions, which were ordered by the court. They supplemented their briefing after the court ordered Mr. Haynes to file a response to the City's post-trial motions. They billed an additional 30.4 hours and 4 hours, respectively.

Reviewing the itemized billing statements submitted in support of the motion for attorney's fees, the court finds that there are no redundant hours. Furthermore, there can be no reduction for hours expended on Mr. Haynes's unsuccessful claim because it is not discrete. The City makes only a general objection to the hours expended as "unnecessary," (Doc. # 75 ¶ 10), which is wholly insufficient to justify a reduction of the hours. The court finds that the hours billed are more than reasonable. Attorney Miller billed less than 30 hours from May 2005 to December 2006 in efforts to avoid litigation with the City. He billed about

100 hours through the filing of Mr. Haynes's brief in opposition to summary judgment, approximately 175 hours from summary judgment through trial, and the remaining hours were incurred in post-trial matters. Attorney Miller brought in his then-associate, Attorney Brashier, only after it became clear the case would proceed to trial. Considering the length of trial, the difficulty of the issues presented, travel time, and Mr. Haynes's success, it is somewhat surprising that more hours were not billed. Accordingly, the lodestar is $102,345.00.[7]

"If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F.2d 1292. Here, the result was excellent, notwithstanding the jury verdict in favor of the City on one of Mr. Haynes's three ADA claims. The jury awarded the full amount of back pay proved and sought by Mr. Haynes and a significant amount for compensatory damages. Moreover, in briefing and trial presentation, Mr. Haynes's attorneys were both efficient and effective. No adjustment to the lodestar is necessary. Mr. Haynes's attorneys are entitled to collect $102,345.00 in attorney's fees.

  b. <u>Litigation Expenses</u>

Mr. Haynes also seeks to recover litigation expenses in the amount of $6,577.07. The City argues that the recovery of Mr. Haynes's litigation expenses is limited to costs allowable under 28 U.S.C. § 1920; however, the court is statutorily authorized to award the prevailing

---

[7] Attorney Miller's portion of the fee is 357.3 hours multiplied by $250 per hour for a subtotal of $89,325.00. Attorney Brashier's portion of the fee is 74.4 hours multiplied by $175 per hour for a subtotal of $13,020.00.

party his "litigation expenses, *and* costs." 42 U.S.C. § 12205 (emphasis added). "Section 12205's allowance of litigation expenses is much broader than the provisions of § 1920, and it includes expenditures for items that are related to the advancement of the litigation." *Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346 (S.D. Fla. 2006) (internal quotation marks and citations omitted). Mr. Haynes's claimed expenses include expert fees, mileage for travel to and from Montgomery, hotel and dinner expenses incurred during trial, supplies for exhibit binders, as well as one copy expense, postage for the complaint and one FedEx charge, and one Westlaw research expense. Excepting the supplies for the exhibit binders, these expenses are compensable under § 12205 if not § 1920, and the amounts claimed are reasonable.[8]   The City objects to costs that were "unnecessarily incurred" such as "counsels' meals, lodging and travel expenses," specifically, the "hotel room rented solely for [Mr. Haynes's] attorneys' convenience." (Doc. # 75 ¶ 18.) The court is of the opinion that it is convenient for everyone, including the court, to have out-of-town counsel stay locally during trial. Counsel limited their travel to Montgomery and chose modest accommodations and restaurants. These expenses are reasonable. Mr. Haynes's attorneys are entitled to collect $6,382.73 in litigation expenses.[9]

---

[8]  Although the exhibit binders were ordered by the court and submitted to the court during trial, the court allowed Mr. Haynes's counsel to retrieve the binders when the trial ended. Thus, reimbursement for the expense of the binders would result in a windfall to counsel.

[9]  The award is the total amount requested ($6,577.07) less the cost of supplies for exhibit binders ($194.34).

## III. CONCLUSION

Accordingly, it is ORDERED that:

1.      Defendant's Motion for New Trial or Remittitur (Doc. # 77) and Renewed Motion for Judgment as a Matter of Law (Doc. # 79) are DENIED;

2.      Plaintiff's Motion for Equitable Relief (Doc. # 73) is GRANTED;

3.      Plaintiff's Motion for Attorney's Fees and Expenses (Doc. # 71) and Supplemental Motion for Attorney's Fees and Expenses (Doc. # 83) are GRANTED;

    a.      Attorney's fees are awarded in the amount of $102,345.00;

    b.      Litigation expenses are awarded in the amount of $6,382.73;

4.      The parties shall confer, freely share information and documentation, and jointly file a status report and a proposed final judgment in accordance with this order **on or before October 24, 2008**.  This filing shall include, among other things, the following items:

    a.      the date of Mr. Haynes's reinstatement;

    b.      the parties' agreement as to an ADA-compliant fitness for duty examination, including the date, the required medical records, the scope of the examination, and the name of an independent medical examiner;

    c.      the calculated amount of prejudgment interest on a daily basis;

    d.      the amount of back pay through reinstatement; and

     e.      the amount of the City's contribution to the pension and retirement account, or in the alternative, the amount of the lump sum payment to Mr. Haynes in lieu thereof.

Done this 6th day of October, 2008.

                /s/   W.  Keith Watkins
                UNITED STATES DISTRICT JUDGE